Hearing Date and Time: February 10, 2010 at 2:00 p.m.
Objection Deadline: February 3, 2010 at 4:00 p.m.

KATTEN MUCHIN ROSENMAN LLP
Thomas J. Leanse
Dustin P. Branch
2029 Century Park East, Suite 2600
Los Angeles, California 90067
Telephone: (310) 788-4400
Facsimile: (310) 788-4471

   -and-

Merritt A. Pardini
575 Madison Avenue
New York, New York 10022
Telephone: (212) 940-8800
Facsimile: (212) 940-8776

Attorneys for The Macerich Company

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------ x
:
In re: : Chapter 11
:
**UNO RESTAURANT HOLDINGS** :
**CORPORATION,** *et al.*, : Case No. 10-10209 (MG)
:
        Debtors. : (Jointly Administered)
:
------------------------------------------------------ x

**LIMITED OBJECTION OF THE MACERICH COMPANY TO THE MOTION OF THE
DEBTORS FOR AN INTERIM ORDER PURSUANT TO 11 U.S.C. § 105, 361, 362, 363,
364 AND 507 (1) APPROVING POSTPETITION FINANCING, (2) AUTHORIZING USE
OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING
SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING
ADEQUATE PROTECTION, (5) MODIFYING AUTOMATIC STAY, AND (6)
<u>SCHEDULING A FINAL HEARING</u>**

The Macerich Company ( the "<u>Landlord</u>") hereby files this limited objection to the

Motion Of The Debtors For An Interim Order Pursuant To 11 U.S.C. § 105, 361, 362, 363, 364

And 507 (1) Approving Postpetition Financing, (2) Authorizing Use Of Cash Collateral, (3)

Granting Liens And Providing Superpriority Administrative Expense Status, (4) Granting

Adequate Protection, (5) Modifying Automatic Stay, And (6) Scheduling A Final Hearing (the "Financing Motion"),[1] and respectfully represent as follows:

**I.     BACKGROUND FACTS**

1. Uno Restaurant Holding Corporation, and its affiliated debtor entities (collectively, the "Debtors"), filed their voluntary petitions for relief under Chapter 11 of Title 11[2] of the United States Code on January 20, 2010. The Debtors have continued to operate their businesses and manage their properties as debtor-in-possession pursuant to Sections 1107(a) and 1108.

2. The Debtors lease retail space (the "Premises") from the Landlord where they continue to operate one of their restaurants as a tenant pursuant to an unexpired lease of nonresidential real property (the "Lease"), located at the Danbury Fair Mall shopping center in Danbury, Connecticut (the "Center").

3. The Lease is a "lease of real property in a shopping center" as that term is used in Section 365(b)(3). See In re Joshua Slocum, Ltd., 922 F.2d 1081, 1086-1087 (3d Cir. 1990).

4. On January 20, 2010, the Debtors filed the Financing Motion. Also on January 20, 2010, the Court heard first day motions and entered its order approving the Financing Motion on an interim basis (the "Interim Order"). In the Interim Order, the security interest on the Lease is limited to only the proceeds of leasehold interests, and there is no direct lien on the Leases themselves. See Interim Order at ¶ 6. Additionally, the Interim Order provides that: "[n]otwithstanding anything to the contrary in this Interim DIP Order, the right of any DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, and, subject to the terms of the Intercreditor Agreement, the Indenture Trustee and Noteholders to occupy and/or use any leased

---

[1] Terms not otherwise defined herein shall have the meanings ascribed to them in the Financing Motion and related documents.

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

premises shall be limited to any rights: (A) existing under applicable non-bankruptcy law; (B) the applicable landlords provide and/or consent to in writing; and/or (C) granted by the Court on motion and notice, and with an opportunity for the landlords to respond." See Interim Order ¶ 25. To date, the Landlord has not seen a proposed final order and cannot ascertain whether the final order will continue to include these necessary protections. As a result, this objection is necessary. To the extent the above limitation on the liens on the Lease and limitations on access to the Premises are included in the final order, the Landlord will withdraw this Limited Objection.

5. To the extent that there is any attempt to modify or remove these protections, the Landlord objects to any attempt to mortgage, encumber, hypothecate, or otherwise pledge the Lease, as well as any attempt to grant access rights to the Premises beyond those granted in the Interim Order. Any attempt to encumber the Lease violates the terms of the Lease, which prohibit the Debtors from unilaterally encumbering the Lease and the Premises. In addition, there is no authority under the Bankruptcy Code to render these legitimate lease provisions invalid or unenforceable.

## II.    ARGUMENT

### A.    The Bankruptcy Code does not invalidate lease provisions that prohibit or restrict pledging, encumbering or otherwise hypothecating the Lease.

6. The Financing Motion and related documents seek authority to encumber substantially all of the Debtors' assets. Neither the Lease nor the Bankruptcy Code create a right to grant a lien against the Leases where none existed pre-petition, and neither support such wholesale voiding of Landlord's state law contractual rights. The Interim Order recognized this and did not provide for a direct lien on the Lease, limiting the lien to only the proceeds of a disposition of the Lease. See Interim Order at ¶ 6.

7. The Lease contains specific and bargained-for language that prohibits and/or restricts the Debtors' ability to grant a lien in the Lease and the Premises. The pledge of the Lease as part of the Collateral would effectively strike the "anti-pledging" language of the Lease,

or at the least, force this Court to deem the language inconsistent with the provisions of the Bankruptcy Code vis-à-vis the Debtors' request for financing. Granting the Debtors' request requires this Court to ignore these specific prohibitions, negotiated at arms-length, and which are enforceable under state law.

8. Provisions that restrict the ability to encumber leases are critical to Landlord's ability to control its property, to comply with its own financing and investment covenants, and any compromise of these provisions detract from the marketability of the Center as a whole.

9. Given the sweeping remedies granted under the financing documents, in the event that the Debtors default under their obligations, a grant of a security interest in the Lease, and any attendant exercise of remedies following a default, creates a de facto assignment of the Lease. There is no authority for the proposition that such an assignment (under the guise of pledging the Lease as collateral), independent of the safeguards of Sections 365(b)(3) and (f)(2), is permissible.[3]

10. This Court must not allow the Debtors to jettison the anti-pledging restrictions of the Lease, while enjoying the benefits of continued use of the properties during the course of their reorganization efforts. The Lease's provisions controlling the transfer of an interest in the Lease are material, negotiated at arms-length, and enforceable under the Bankruptcy Code.

11. A provision that restricts the Debtors' ability to pledge the Lease as collateral is not an anti-assignment provision and is not contrary to any bankruptcy policy. Rather, it is a reasonable and legitimate restriction that allows Landlord to preserve clear title to its Lease. As a result, the Landlord objects to any encumbrance, lien, hypothecation or other pledge of the Lease, and Landlord requests this Court exclude the Lease from the Collateral.

---

[3] Because the Lease is a shopping center lease, the Debtors must comply with the heightened protections granted to shopping center landlords in connection with any such transfer of an interest in the Lease. Therefore, section 365(b)(3) (applicable to an assignment of a lease through Section 365(f)) applies, and any assignment of the Lease requires compliance with the special adequate assurance of future performance protections set forth in Sections 365(b)(3)(A) - (D). See 11 U.S.C. § 365(b)(3).

**B.     The lenders do not need a security interest in the Lease to protect their interests.**

12.     Prior to filing for bankruptcy protection, the Debtors did not encumber the Lease because such a lien is prohibited by the Lease. There is no legitimate reason to now grant a lien that violates the Lease where no such right existed under state law and no such liens existed pre-petition. Nothing in the Bankruptcy Code gives lenders such rights where they did not exist pre-petition.

13.     Moreover, there is no need to grant a security interest in the Lease in order to permit the liquidation of the Collateral should the Debtors default. All rights to realize upon the Collateral are preserved through both the Bankruptcy Court and state law remedies, none of which contemplate granting a lien or other possessory right in the Landlord's property.

14.     The Premises and Center are owned by the Landlord, not the Debtors. The lenders have no right or need to force Landlord to relinquish control over the Premises or to accept a cloud to the Landlord's title to the Lease. The value in the Lease to the Debtors (and their lenders) is that which may be realized from their proceeds in a sale or other disposition of the leasehold interest. Granting a security interest in the Lease – even if it were not specifically prohibited by the Lease – serves no economic purpose, and should not be a component of any post-petition financing.

**C.     The Court should limit any remedies that lenders may exercise with respect to the Collateral at the Premises in accordance with the protections provided to Landlord in the Lease and Bankruptcy Code.**

15.     As set forth above, the Interim Order limited the lenders' rights to proceed against the Collateral upon a default by the Debtor. See Interim Order at ¶ 25. The Court should order that these limitations carry over to any Final Order.

16.     If these limitations are not maintained, the lenders receive unfettered access and occupancy rights with respect to the Premises to liquidate the Collateral and conduct going out-of-business sales. The granting of such rights though a financing order is excessive and inappropriate. Any grant of the right to conduct store closing sales should be pursuant to a noticed motion and provide Landlord a meaningful opportunity to object and protect its interests.

- 5 -

To the extent that a liquidation of the Collateral would include any attempt to conduct any sale at the Premises, such use or sales are governed by the Lease, and the Debtors and any assignee (including a foreclosing lender) are bound by the terms of the Lease.  See 11 U.S.C. §§ 365(b)(3) and (d)(3).  Only the Bankruptcy Court can authorize the Debtors to conduct such sale, and it may do so only after carefully weighing the competing interests of the landlords and the debtor-tenant through a separate motion by the Debtors.  See, e.g., In re Ames Department Stores, Inc., 136 B.R. 357 (Bankr. S.D.N.Y. 1992). The wholesale disregard of the terms of the Lease is simply not supportable by the Bankruptcy Code or any caselaw.  The Debtors have not, and cannot, justify exempting their lenders from the restrictions in the Lease, or the explicit requirements of the Bankruptcy Code.

17. Any request for authority to enter onto the Center for an indeterminate amount of time also exposes the Landlord and the Center to unnecessary prejudice.  The lenders are not a party to the Lease and have no right to occupy and use Landlord's property.  If this Court is inclined to grant any ability to enter onto the Premises other than as previously set forth in the Interim Order, it should be specifically circumscribed as follows:

- Only after ten (10) days written notice to the Landlord;

- For the limited purpose of collecting and removing the Collateral;

- Pursuant to a written agreement on terms acceptable to the Landlord and in accordance with the Lease;

- Lenders are responsible for the charges coming due under the Lease, monthly in advance, for any period of occupancy;

- Lenders, their agents, or any entering party must provide Landlord with a certificate of insurance with respect to such entry, which certificate shall list the Landlord as an additional named insured, which insurance covers both personal injury and property damage;

- Lenders are subject to any provision of the Lease regarding re-imbursement and/or indemnification of the Landlord; and

- Access to the Premises shall be limited to a period not to exceed thirty (30) days.

18. As stated above, the Debtors do not own the Premises and the Lease explicitly prohibits and/or restricts this attempted usurpation of Landlord's property rights. The Landlord provides the Debtors a right to occupy certain space in the Center which is specifically circumscribed by the terms of the Lease. The Debtors possess no right to use the Premises beyond those rights granted within the Lease. The lenders are not a party to the Lease and have no contractual or possessory right to enter the Center or the Premises.

19. Finally, the lenders must bear full financial responsibility, not only for all charges arising under the Lease going forward, but also for prior unpaid rent or other charges for any limited access to the Premises. To the extent the lenders seek authority to essentially step into the shoes of the Debtors following a default, there is no reason to allow the lenders to exercise rights which would otherwise be prohibited by the Lease and "assume" the Lease for an indeterminate period of time without being required to cure outstanding post-petition defaults. The lenders should not, on the one hand, receive a superpriority administrative claim, and on the other hand be relieved from liability for the Debtors' failure to remain current on post-petition rent obligations while the lenders attempts to realize upon their collateral. This result compels Landlord to continue to suffer as an involuntary post-petition creditor, the very result that Section 365(d)(3) was intended to counteract. See In re Warehouse Club, Inc., 184 B.R. 316, 318 (Bankr. N.D. Ill. 1994).

20. In addition to the foregoing, and to the extent not inconsistent with the relief sought herein, the Landlord also joins in the objection(s) of other real property lessors to the relief proposed by the Financing Motion, and any final financing order.

### III. CONCLUSION

The Debtors provide no authority for, and demonstrates no necessity to, disregard the terms of the Lease and the protections that the Bankruptcy Code and the Lease provide to Landlord. The Landlord did not create Debtors' financial maladies, and should not bear the consequences of this bankruptcy through loss of their contractual rights. The Court should limit any lien with respect to the Lease to only the proceeds obtained through the sale or other

disposition of the Lease, should circumscribe the lenders' collateral access rights with respect to the Premises as set forth in the Interim Order, and grant such other and further relief that it deems just and proper.

Dated:  February 2, 2010                    **KATTEN MUCHIN ROSENMAN LLP**
                                            Attorneys for The Macerich Company

                                            By:___/s/ Merritt A. Pardini_____

                                            Thomas J. Leanse
                                            Dustin P. Branch
                                            2029 Century Park East, Suite 2600
                                            Los Angeles, California  90067
                                            Phone: (310) 788-4400
                                            FAX: (310) 788-4471

                                            Merritt A. Pardini
                                            575 Madison Avenue
                                            New York, New York 10022
                                            Phone: (212) 940-8800
                                            FAX: (212) 940-8776