**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------

|   |   |   |
|---|---|---|
| In re: | ) | **Chapter 11** |
|  | ) |  |
| **UNO RESTAURANT HOLDINGS** | ) | **Case No. 10-10209 (MG)** |
| **CORPORATION**, *et al.* | ) |  |
|  | ) | **(Jointly Administered)** |
| Debtors. | ) |  |

--------------------------------------------------------------

## FINAL ORDER PURSUANT TO 11 U.S.C. §§ 105, 361, 362, 363, 364 AND 507 (1) APPROVING POSTPETITION FINANCING, (2) AUTHORIZING USE OF CASH COLLATERAL, (3) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE EXPENSE STATUS, (4) GRANTING ADEQUATE PROTECTION, AND (5) MODIFYING AUTOMATIC STAY

THIS MATTER having come before the Court upon the motion (the "<u>DIP Motion</u>") of

Uno Restaurant Holdings Corp. ("<u>Uno</u>"), and its direct and indirect subsidiaries (collectively, the

"<u>Borrowers</u>"),[1] each as a debtor and debtor in possession (collectively the "<u>Debtors</u>") in the

---

[1] The other Borrowers are:  8250 International Drive Corporation, Aurora Uno, Inc., B.S. of Woodbridge, Inc., Fairfax Uno, Inc., Kissimmee Uno, Inc., Marketing Services Group, Inc., Newport News Uno, Inc., Newton Takery, Inc., Paramus Uno, Inc., Pizzeria Uno corporation, Pizzeria Uno of 86th Street, Inc., Pizzeria Uno of Albany Inc., Pizzeria Uno of Bay Ridge, Inc., Pizzeria Uno of Bay Side, Inc., Pizzeria Uno of Bethesda, Inc., Pizzeria Uno of Brockton, Inc., Pizzeria Uno of Columbus Avenue, Inc., Pizzeria Uno of East Village Inc., Pizzeria Uno of Fair Oaks, Inc., Pizzeria Uno of Fairfield, Inc., Pizzeria Uno of Forest Hills, Inc., Pizzeria Uno of Kingston, Inc., Pizzeria Uno of Lynbrook Inc., Pizzeria Uno of Reston, Inc., Pizzeria Uno of South Street Seaport, Inc., Pizzeria Uno of Springfield, Inc., Pizzeria Uno of Syracuse, Inc., Pizzeria Uno of Union Station, Inc., Plizzettas of Concord, Inc., SL Properties, Inc., SL Uno Burlington, Inc., SL Uno Ellicott City, Inc., SL Uno Franklin Mills, Inc., SL Uno Frederick, Inc., SL Uno Greece, Inc., SL Uno Gurnee Mills, Inc., SL Uno Hyannis, Inc., SL Uno Maryville, Inc., SL Uno Portland, Inc., SL Uno Potomac Mills, Inc., SL Uno University Blvd., Inc., SL Uno Waterfront, Inc., SLA Brockton, Inc., SLA Due, Inc., SLA Lake Mary, Inc., SLA Mail II, Inc., SLA Mail, Inc., SLA Norfolk, Inc., SLA SU Casa, Inc., SLA Uno, Inc., Saxet Corporation, UR of Bel Air MD, Inc., UR of Bowie MD, Inc., UR of Columbia MD, Inc., UR of Danbury CT, Inc., UR of Dover NH, Inc., UR of Fairfield CT, Inc., UR of Inner Harbor MD, Inc., UR of Keene NH, Inc., UR of Landover MD, Inc., UR of Methuen MA, Inc., UR of Milford CT, Inc., UR of Paoli PA, Inc., UR of Wrentham MA, Inc., Uno Enterprises, Inc., Uno Foods Inc., Uno Restaurant Holdings Corporation, Uno Restaurant of Columbus, Inc., Uno Restaurant of St. Charles, Inc., Uno Restaurant of Woburn, Inc., Uno of America, Inc., Uno of Astoria, Inc., Uno of Aurora, Inc., Uno of Bangor, Inc., Uno of Concord Mills, Inc., Uno of Crestwood, Inc., Uno of Daytona, Inc., Uno of Dulles, Inc., Uno of Falls Church, Inc., Uno of Georgesville, Inc., Uno of Hagerstown, inc., Uno of Haverhill, Inc., Uno of Henrietta, Inc., Uno of Indiana, Inc., Uno of Kingstowne, Inc., Uno of Kirkwood, Inc., Uno of Lombard, Inc., Uno of Manassas, inc., Uno of Manchester, Inc., Uno of Massachusetts, Inc., Uno of New York, Inc., Un of Providence, Inc.,  Uno of Schaumburg, inc., Uno of Smithtown, Inc., Uno of Victor, Inc., Waltham Uno, Inc., Westminster Uno, Inc., Uno Restaurants II, LLC, UR of Attleboro MA, LLC, UR of Clay NY, LLC, UR of Fayetteville NY, LLC, UR of Fredericksburg VA, LLC, UR of Gainesville VA, LLC, UR of Millbury MA, LLC, UR of Nashua NH, LLC, UR of New Hartford NY, LLC, UR of Newington NH, LLC, UR of Plymouth MA, LLC, UR of Swampscott MA, LLC, UR of Taunton MA, LLC, UR of Tilton NH,

above-captioned chapter 11 cases (collectively, with any successor cases, the "Cases"), pursuant to sections 105, 361, 362, 363, 364(c)(1), 364(c)(2), 364(c)(3), 364(d) and 507 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "Bankruptcy Code"), Rules 2002, 4001 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 4001-2 of the Local Bankruptcy Rules for the Southern District of New York, seeking entry of a final order (this "Final Order") *inter alia*:

(i)     authorizing the Debtors to obtain secured, superpriority postpetition financing (the "DIP Facility") pursuant to the terms and conditions of that certain Debtor in Possession Credit Agreement (as may be amended, supplemented, restated, or otherwise modified from time to time, the "DIP Agreement") by and among the Borrowers, Wells Fargo Capital Finance, Inc. as Arranger and Administrative Agent (in such capacity, together with it successors in such capacity, the "DIP Agent"), for and on behalf of itself and the other lenders party thereto from time to time (collectively, including the DIP Agent, the "DIP Lenders"), substantially in the form of Exhibit A attached to the DIP Motion;

(ii)    authorizing the Debtors on a final basis to perform under the DIP Agreement and other related loan documents (collectively with all documents comprising the DIP Facility, the "DIP Documents") and to perform such other acts as may be necessary or desirable in connection with the DIP Documents;

(iii)   granting to the DIP Agent and the DIP Lenders allowed superpriority administrative expense claims in each of the Cases and any Successor Cases (as defined herein) for the DIP Facility and all obligations owing thereunder and under the DIP Documents

---

LLC, UR of Virginia Beach VA, LLC, UR of Webster NY, LLC, UR of Winter Gardens FL, LLC, URC, LLC, Uno Restaurants, LLC, URC II, LLC, Pizzeria Uno of Westfarms, LLC, Uno Foods International LLC, UR of Merritt Island FL, LLC, UR of Melbourne FL, LLC.

(collectively, and including all "Obligations" as described in the DIP Agreement, the "DIP Obligations"), subject to the priorities set forth in paragraph 8 below;

(iv)     granting to the DIP Agent, for the benefit of itself and the DIP Lenders automatically perfected security interests in and liens on all of the DIP Collateral (as defined herein), including, without limitation, all property constituting "cash collateral" (as defined in section 363(a) of the Bankruptcy Code, "Cash Collateral"), which liens shall be subject to the priorities set forth in paragraph 7 below;

(v)     authorizing and directing the Debtors to pay the principal, interest, fees, expenses and other amounts payable under each of the DIP Documents as they become due, including, without limitation, letter of credit fees (including issuance and other related charges), closing fees, extension fees, servicing fees, unused line fees, appraisal fees, administrative agent's fees, continuing commitment fees, the fees and disbursements of each DIP Agent's attorneys, advisers, accountants, and other consultants, and the legal expenses of the DIP Lenders, all to the extent provided by and in accordance with the terms of the respective DIP Documents;

(vi)     authorizing the Debtors' use of the Cash Collateral of the Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders (each as defined herein);

(vii)     providing adequate protection to the Prepetition Agent and Prepetition Lenders (to the extent any Prepetition Obligations remain outstanding), and the Indenture Trustee and Noteholders for any Diminution in Value (as defined herein) of their respective interests in the Prepetition Collateral (as defined herein), including the Cash Collateral; and

(viii)  vacating and modifying the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of the DIP Documents and this Final Order.

The Court having considered the DIP Motion, the Affidavit of Louie Psallidas Pursuant to Local Bankruptcy Rule 1007-2 in Support of First Day Motions and Applications (the "Psallidas Affidavit"), the exhibits attached thereto, the DIP Documents, and the evidence submitted or adduced and the arguments of counsel made at the interim hearing held on January 20, 2010 (the "Interim Hearing"), and the final hearing held on February 10, 2010 (the "Final Hearing"); and the Court having entered on January 20, 2010 an interim order authorizing funding on an interim basis and granting adequate protection on account of the interests of certain holders of liens on the property of the estates on which liens are to be granted; and adequate notice of the Final Hearing having been provided accordance with Bankruptcy Rules 2002, 4001(b), (c) and (d), and 9014; and the Final Hearing to consider the relief requested in the DIP Motion having been held and concluded; and all objections, if any, to the entry of this Final Order approving the DIP Motion and the DIP Documents having been withdrawn, resolved or overruled by the Court; and after due deliberation and consideration, and for good and sufficient cause appearing therefor;

BASED UPON THE RECORD ESTABLISHED AT THE INTERIM AND FINAL HEARINGS BY THE DEBTORS, THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:

A.    *Petition Date:*  On January 20, 2010 (the "Petition Date"), each of the Debtors filed a separate voluntary petition under chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York commencing these Cases (the "Court").

A/73278328.10

B.     *Debtors in Possession*.  The Debtors are continuing in the management and operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No trustee or examiner has been appointed in these Cases.

C.     *Jurisdiction and Venue*.  This Court has jurisdiction, pursuant to 28 U.S.C. §§ 157(b) and 1334, over these proceedings, and over the persons and property affected hereby.  Consideration of the DIP Motion constitutes a core proceeding under 28 U.S.C. § 157(b)(2).  Venue for the Cases and proceedings on the DIP Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

D.     *Statutory Committee*.  On January 27, 2010, the United States Trustee (the "U.S. Trustee") appointed an official committee of unsecured creditors in these Cases pursuant to section 1102 of the Bankruptcy Code (the "Statutory Committee").  The Statutory Committee consists of the following members:  (i) Circle Associates, (ii) Angelo Luppino, Jr. and Nancy Luppino, (iii) Amelia Island Plantation, (iv) NSTAR Electric Company and NSTAR Gas Company, and (v) Stone Ridge Construction Services.

E.     *Interim Order*.  Based upon the DIP Motion, the Psallidas Affidavit, the DIP Documents and the evidence submitted by the Debtors at the Interim Hearing, the Court approved the Debtors' entry into and performance under the DIP Documents and DIP Facility, and on January 20, 2010, entered that certain Interim Order Pursuant to 11 U. S. C. §§ 105, 361, 362, 363, 364 and 507 (1) Approving Postpetition Financing, (2) Authorizing Use of Cash Collateral, (3) Granting Liens and Providing Superpriority Administrative Expense Status, (4) Granting Adequate Protection, (5) Modifying Automatic Stay, and (6) Scheduling a Final Hearing (the "Interim Order").  Pursuant to the Interim Order and Bankruptcy Rule 4001, the Debtors were authorized, among other things, to incur secured borrowings from the DIP Lenders

pursuant to the terms of the DIP Documents and the Interim Order pending the Final Hearing on the DIP Motion. Pursuant to the Interim Order, the Final Hearing was scheduled for February 10, 2010.

F. _Debtors' Stipulations_. After consultation with their attorneys and financial advisors, and without prejudice to the rights of parties in interest as set forth in paragraph 31 herein, the Debtors (on behalf of and for themselves and their estates) admit, stipulate, acknowledge and agree that (collectively, paragraphs F(i) through F(viii) below are referred to herein as the "Debtors' Stipulations"):

(i) _Prepetition Facility:_ Pursuant to that certain Credit Agreement dated as of February 22, 2005 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Prepetition Credit Agreement," and together with all other loan and security documents executed in connection therewith, the "Prepetition Credit Documents"), among the Borrowers, Wells Fargo Foothill, Inc. as Arranger and Administrative Agent (the "Prepetition Agent"), and the lenders that are parties thereto from time to time (collectively, together with the Prepetition Agent, the "Prepetition Lenders"), the Prepetition Lenders provided credit and letter of credit facilities to the Borrowers and provided other financial accommodations to or for the benefit of the Borrowers (collectively, the "Prepetition Facility").

(ii) _Prepetition Obligations:_ The Prepetition Facility provided the Borrowers with (a) up to $32,000,000 in aggregate maximum principal amount of revolving commitments, including letter of credit and swingline loan commitments, with a sublimit for letters of credit of $20,000,000, and (b) up to $14,250,000 in aggregate principal amount of term loan commitments. As of the Petition Date, the outstanding principal amount of all loans under the Prepetition Credit Agreement was $33,900,000, and the face amount of issued and outstanding

letters of credit was $9,775,000 (collectively, together with any amounts paid, incurred or accrued prior to the Petition Date in accordance with the Prepetition Credit Documents, principal, accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever arising, due or owing in respect thereof, the "Prepetition Obligations").  The Prepetition Obligations are guaranteed by Uno Holdings II, LLC and other affiliates of the Borrowers party to that certain General Continuing Guaranty dated February 22, 2005 (as amended, supplemented, restated, or otherwise modified prior to the Petition Date).

(iii)     *Prepetition Indenture Obligations*:  Pursuant to that certain Indenture dated as of February 22, 2005 (as amended, supplemented, restated or otherwise modified prior to the Petition Date, the "Indenture," and together with all other loan and security documents executed in connection therewith, the "Indenture Documents"), among Uno, as issuer, certain of Uno's domestic subsidiaries and Uno Holdings II, LLC as guarantors, and U.S. Bank National Association as collateral agent and trustee (in such capacities, the "Indenture Trustee"), Uno incurred indebtedness to certain holders (collectively, the "Noteholders") for certain notes issued pursuant to the Indenture in an initial aggregate principal amount at maturity of $142,000,000 (the "Notes," and together with accrued and unpaid interest, any fees, expenses, and disbursements (including, without limitation, attorneys' fees, related expenses and disbursements), indemnification obligations and other charges of whatever nature, whether or not contingent, whenever rising, due or owing in connection with the Indenture, the "Indenture Obligations").

(iv)     *Prepetition Liens and Prepetition Collateral.*  As more fully set forth in the Prepetition Credit Documents and Indenture Documents, prior to the Petition Date, the Borrowers granted security interests in and liens on, among other things, substantially all assets of the Borrowers (collectively, the "Prepetition Collateral") to:  (a) the Prepetition Agent, for itself and the Prepetition Lenders (the "Prepetition Facility Liens"); and (b) the Indenture Trustee, for the benefit of the Noteholders (the "Indenture Liens", and together with the Prepetition Facility Liens, the "Prepetition Liens").  The Indenture Liens on the Prepetition Collateral are subordinate to the Prepetition Facility Liens on the Prepetition Collateral in accordance with the Intercreditor Agreement (as defined herein).

(v)     *Priority of the Prepetition Liens; Intercreditor Agreement*.  The Debtors, Prepetition Agent, Indenture Trustee and the informal group of holders of the Debtors' 10% senior secured notes (the "Noteholder Group") stipulate, acknowledge and agree that the Prepetition Agent and Indenture Trustee entered into that certain Intercreditor and Lien Subordination Agreement dated February 22, 2005 (as amended, supplemented or modified prior to the Petition Date, the "Intercreditor Agreement") to govern the respective rights, interests, obligations, priority, and the positions of the Prepetition Agent, on behalf of itself and the Prepetition Lenders, and Indenture Trustee, on behalf of itself and the Noteholders, with respect to the assets and properties of the Borrowers and other obligors, which Intercreditor Agreement remains in full force and effect and binding on the parties thereto.

(vi)     *Validity, Perfection and Priority of Prepetition Liens, Prepetition Obligations and Indenture Obligations*.  Subject to the provisions of paragraph 31 of this Final Order, the Debtors (for themselves and their estates), the Prepetition Agent, for itself and the Prepetition Lenders, and the Indenture Trustee, for itself and the Noteholders, acknowledge and

agree that: (a) as of the Petition Date, the Prepetition Liens on the Prepetition Collateral were valid, binding, enforceable, non-avoidable and properly perfected; (b) as of the Petition Date, the Prepetition Facility Liens were senior in priority over any and all other liens on the Prepetition Collateral, subject only to certain liens otherwise permitted by the Prepetition Credit Documents (to the extent any such permitted liens were valid, properly perfected, non-avoidable and senior in priority to the Prepetition Facility Liens as of the Petition Date, the "Permitted Prior Liens");[2] (c) as of the Petition Date, the Indenture Liens were junior and subordinate to the Prepetition Facility Liens and Permitted Prior Liens, and otherwise had priority over any and all other liens on the Prepetition Collateral; (d) the Prepetition Obligations and Indenture Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (e) no offsets, challenges, objections, defenses, claims or counterclaims of any kind or nature to any of the Prepetition Facility Liens, Prepetition Obligations, Indenture Liens or Indenture Obligations exist, and no portion of the Prepetition Facility Liens, Prepetition Obligations, Indenture Liens or Indenture Obligations is subject to any challenge or defense including, without limitation, avoidance, disallowance, disgorgement, recharacterization, or subordination (whether equitable or otherwise, provided that as set forth in the Intercreditor Agreement, the Indenture Liens are subordinated to the Prepetition Liens) pursuant to the Bankruptcy Code or applicable non-bankruptcy law; (f) the Debtors and their estates have no claims, objections, challenges, causes of actions, and/or choses in action, including without limitation, avoidance claims under chapter 5 of the Bankruptcy Code, against any of the Prepetition Agent, Prepetition Lenders,

---

[2] Nothing herein shall constitute a finding or ruling by this Court that any such Permitted Prior Liens are valid, senior, enforceable, prior, perfected or non-avoidable. Moreover, nothing shall prejudice the rights of any party in interest including, but not limited, to the Debtors, the Prepetition Agent, the Prepetition Lenders, the Indenture Trustee, the Noteholders, the DIP Agent, the DIP Lenders, and the Statutory Committee to challenge the validity, priority, enforceability, seniority, avoidability, perfection or extent of any such Permitted Prior Lien and/or security interest.

Indenture Trustee, Noteholders or any of their respective affiliates, agents, attorneys, advisors, professionals, officers, directors and employees; (g) as of the Petition Date, the value of the Prepetition Collateral securing the Prepetition Obligations exceeded the amount of those obligations, and accordingly the Prepetition Obligations are allowed secured claims within the meaning of section 506 of the Bankruptcy Code, in a principal amount (and including the face amount of issued and outstanding letters of credit) of not less than $43,675,000, together with accrued and unpaid interest, fees (including, without limitation, attorneys' fees and related expenses), and any and all other charges of whatever nature owing in respect of such Prepetition Obligations; and (h) any payments made on account of the Prepetition Obligations to or for the benefit of the Prepetition Agent or the Prepetition Lenders prior to the Petition Date were on account of amounts in respect of which the Prepetition Agent and the Prepetition Lenders were oversecured, were payments out of the Prepetition Collateral, and such payments did not diminish any property otherwise available for distribution to unsecured creditors.

(vii)     *Cash Collateral*.  The Debtors represent that all of the Debtors' cash, including the cash in their deposit accounts, wherever located, whether as original collateral or proceeds of other Prepetition Collateral, constitute the Cash Collateral of the Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders.

(viii)    *Default by the Debtors*.  The Debtors acknowledge and stipulate that the Debtors are in default of their debts and obligations under the Prepetition Credit Documents and the Indenture Documents.

G.     *Findings Regarding the Postpetition Financing*.

(i)     *Need for Postpetition Financing and Use of Cash Collateral*.  Since the Petition Date, the Debtors' need to obtain credit pursuant to the DIP Facility and to use Cash

Collateral has been and continues to be immediate and critical in order to enable the Debtors to continue operations and to administer and preserve the value of their estates. The ability of the Debtors to finance their operations, maintain business relationships with their vendors, suppliers and customers, to pay their employees, and to otherwise finance their operations has required and continues to require the availability of working capital from the DIP Facility and the use of Cash Collateral, the absence of either of which would immediately and irreparably harm the Debtors, their estates, their creditors and equity holders, and the possibility for a successful reorganization. The Debtors have not had and do not have sufficient available sources of working capital and financing to operate their businesses or maintain their properties in the ordinary course of business without the DIP Facility and authorized use of Cash Collateral.

(ii) *No Credit Available on More Favorable Terms.* Given their current financial condition, financing arrangements, and capital structure, the Debtors have been unable to obtain financing from sources other than the DIP Lenders on terms more favorable than the DIP Facility. The Debtors have been unable to obtain unsecured credit allowable under Bankruptcy Code section 503(b)(1) as an administrative expense. The Debtors have also been unable to obtain credit: (a) having priority over that of administrative expenses of the kind specified in sections 503(b), 507(a) and 507(b) of the Bankruptcy Code; (b) secured by a lien on property of the Debtors and their estates that is not otherwise subject to a lien; or (c) secured solely by a junior lien on property of the Debtors and their estates that is subject to a lien. Financing on a postpetition basis is not otherwise available without granting the DIP Agent, for the benefit of itself and the DIP Lenders, (1) perfected security interests in and liens on (each as provided herein) all of the Debtors' existing and after-acquired assets with the priorities set forth

in paragraph 7 hereof, (2) superpriority claims with the priorities set forth in paragraph 8, and (3) the other protections set forth in this Final Order.

   (iii) *Priming of the Prepetition Facility Liens and Indenture Liens.*  The priming of the Prepetition Facility Liens and Indenture Liens on the Prepetition Collateral pursuant to section 364(d) of the Bankruptcy Code, as further described below, enabled the Debtors to obtain the DIP Facility and to continue to operate their businesses for the benefit of their estates and creditors.  The Prepetition Agent and Prepetition Lenders consent, and the Indenture Trustee and Noteholders consent or are deemed to consent to such priming liens and are entitled to receive adequate protection as set forth in this Final Order, pursuant to sections 361, 363 and 364 of the Bankruptcy Code, for any diminution in the value of their interests in the Prepetition Collateral (including Cash Collateral) resulting from, among other things, the subordination to the Carve Out (as defined herein) and to the DIP Liens, the Debtors' use, sale or lease of such Prepetition Collateral, and the imposition of the automatic stay (collectively, and solely to the extent of any such diminution in value, the "Diminution in Value").

   (iv) *Use of Proceeds of the DIP Facilities; Payment of Prepetition Obligations.*  As a condition to the entry into the DIP Agreement, the extension of credit under the DIP Facility and the agreement for the use of Cash Collateral, the DIP Agent and DIP Lenders required, and the Debtors agreed that proceeds of the DIP Facility shall be used, in each case in a manner consistent with the terms and conditions of the DIP Documents, including any covenant (the "Budget Compliance Covenant") contained therein pertaining to compliance with the Budget (as defined in the DIP Documents and as the same may be modified from time to time in accordance with the consents required under the DIP Documents), solely for (a) payment

in full of the Prepetition Obligations, (b) working capital, letters of credit, and other general corporate purposes, (c) permitted payment of costs of administration of the Cases (subject to the limitations of the Carve Out (as defined herein)), (d) payment of fees and expenses due under the DIP Facility, (e) payment of any authorized Adequate Protection Payments, and (f) payment of such prepetition expenses, in addition to the Prepetition Obligations permitted to be so paid in accordance with the consents required under the DIP Documents, and as approved by the Court. Payment of the Prepetition Obligations in accordance with the Interim Order, and the ratification and confirmation of such payment pursuant to this Final Order, was and is necessary as the DIP Agent and DIP Lenders will not otherwise consent to providing the DIP Facility and extending credit to the Debtors thereunder, and the Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders will not otherwise consent to the use of their Cash Collateral and other Prepetition Collateral or the subordination of their liens to the DIP Liens and Carve Out. Such payment will not prejudice the Debtors or their estates, because payment of such amounts is on account of the Prepetition Agent and the Prepetition Lenders being oversecured and remains subject to the rights of parties in interest under paragraph 31 herein.

(v)     *Committee Objection Resolved.*  On February 4, 2010, the Committee filed an objection to the DIP Motion and entry of this Final Order (the "Committee Objection").  On February 8, 2010, each of the Debtors, the Noteholder Group, the Prepetition Agent and the DIP Agent filed a reply to the Committee Objection, and the Indenture Trustee filed a joinder to the reply of the Noteholder Group.  The Committee Objection has been resolved by agreement of the parties, as read into the record at the Final Hearing, and has been withdrawn.

H.     *Application of Proceeds of Collateral.*  As a condition to the entry into the DIP Documents, the extension of credit under the DIP Facility and the authorization to use Cash

Collateral and other Prepetition Collateral, the Debtors agreed that the Debtors shall apply the proceeds of DIP Collateral as set forth in the DIP Documents.

I. *Adequate Protection*.  The Prepetition Agent, for the benefit of itself and the Prepetition Lenders (to the extent any Prepetition Obligations remain outstanding), and the Indenture Trustee, for the benefit of itself and the Noteholders, are each entitled to receive adequate protection on account of their respective interests in the Prepetition Collateral pursuant to sections 361, 362, 363 and 364 of the Bankruptcy Code to the extent of any Diminution in Value of their respective interests in the Prepetition Collateral (including the Cash Collateral). Pursuant to sections 361, 363, 364 and 507(b), as adequate protection:  (i) the Prepetition Agent, for the benefit of itself and the Prepetition Lenders, will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 herein, (b) current payments of interest, fees and other amounts due under the Prepetition Credit Documents as more fully set forth in paragraph 14 herein and subject to footnote 5 hereof, and (c) ongoing payment of the reasonable fees, costs and expenses, including, without limitation, legal fees and expenses, of the Prepetition Agent and Prepetition Lenders as more fully set forth in paragraph 14 herein; and (ii) the Indenture Trustee, for the benefit of itself and the Noteholders, will receive (a) adequate protection liens and superpriority claims, as more fully set forth in paragraphs 12 and 13 herein, (b) reimbursement of the reasonable fees and expenses of Akin Gump Strauss Hauer & Feld LLP ("Akin Gump"), counsel to the Noteholder Group, as more fully set forth in paragraph 14, and (c) reimbursement of the all costs and expenses of the Indenture Trustee (including attorneys' and consultant's fees), as more fully set forth in paragraph 14 herein.

J. *Interim Borrowing*.  After the Interim Hearing, and pursuant to the Interim Order, the Court authorized, among other things (i) $27 million under the Term Loan (as defined in the

DIP Documents) and (ii) up to an aggregate principal amount of $11.9 million at any one time outstanding, including a sublimit for letters of credit up to $20 million under the Revolver Commitment (as defined in the DIP Documents) (together, the "Interim Financing"). Based upon the record of the Interim Hearing, the Court authorized and empowered the Debtors to execute and deliver the DIP Documents and authorized, empowered and directed the Debtors after execution to perform all of the DIP Obligations in accordance with the terms of the Interim Order and DIP Documents, including, without limitation the payment of fees, expenses and other amounts described in the DIP Documents as such became due. On January 21, 2010, the DIP Documents were executed, and the Borrowers were authorized to borrow on the terms and conditions set forth in the DIP Documents and the Interim Order.

K. *Sections 506(c) and 552(b)*. In light of (i) the DIP Agent's and DIP Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out and to the current payment of administrative expenses of the Debtors' estates in accordance with the Budget and Budget Compliance Covenant; (ii) the Prepetition Agent's and Prepetition Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out, DIP Liens and DIP Superpriority Claims; (iii) the Indenture Trustee's and Noteholders' agreement to subordinate their liens and superpriority claims to the Carve Out, DIP Liens, DIP Superpriority Claims, Credit Facility Adequate Protection Liens and Credit Facility Superpriority Claims (each capitalized term as defined herein), each of the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders are entitled to a waiver of the provisions of section 506(c) of the Bankruptcy Code. The Debtors, Committee, DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders agree that they shall not assert the "equities of the case" exception under section 552(b) of the Bankruptcy Code with

respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

L.    _Good Faith of the DIP Agent and the DIP Lenders._

(i)    _Willingness to Provide Financing._  The DIP Lenders each have indicated a willingness to provide financing to the Debtors subject to:  (a) the entry of the Interim Order and this Final Order; (b) approval of the terms and conditions of the DIP Facility and the DIP Documents; and (c) entry of findings by this Court that such financing is essential to the Debtors' estates, that the DIP Agent and DIP Lenders are extending credit to the Debtors pursuant to the DIP Documents in good faith, and that the DIP Agent's and DIP Lenders' claims, superpriority claims, security interests, liens, rights, and other protections granted pursuant to the Interim Order, this Final Order and the DIP Documents will have the protections provided in section 364(e) of the Bankruptcy Code and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of the Interim Order, this Final Order, or any other order.

(ii)    _Business Judgment and Good Faith Pursuant to Section 364(e)._  The terms and conditions of the DIP Facility and the DIP Documents, and the fees paid and to be paid thereunder, are fair, reasonable, and the best available to the Debtors under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and consideration.  The DIP Facility and the use of Cash Collateral were negotiated in good faith and at arms' length among the Debtors, DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholder Group.  Use of Cash Collateral and all extensions of credit under the DIP Facility, whether made prior or subsequent to entry of this Final Order, shall be deemed to have been so allowed, advanced, made, used or extended in good faith, and for valid business

purposes and uses within the meaning of section 364(e) of the Bankruptcy Code. Accordingly, the DIP Agent and DIP Lenders are entitled to the protection and benefits of section 364(e) of the Bankruptcy Code and this Final Order and will not be affected by any subsequent reversal, modification, vacatur, amendment, reargument or reconsideration of the Interim Order, this Final Order, or any other order.

M. *Notice*. Notice of the Final Hearing and the relief requested in the DIP Motion has been provided by the Debtors in accordance with the Interim Order, whether by facsimile, email, overnight courier or hand delivery, to certain parties in interest, including: (i) the U.S. Trustee; (ii) the Securities and Exchange Commission; (iii) the Internal Revenue Service; (iv) the parties included on the Debtors' list of the thirty (30) largest unsecured creditors; (v) counsel to the Prepetition Agent for itself and for the Prepetition Lenders; (vi) the Indenture Trustee for itself and for the Noteholders; and (vii) counsel for the Noteholder Group. Such notice is good and sufficient to permit the relief set forth in this Final Order, and no other or further notice is or shall be required.

Based upon the foregoing findings and conclusions, the DIP Motion and the record before the Court with respect to the DIP Motion, and good and sufficient cause appearing therefor,

IT IS HEREBY ORDERED that:

1. Financing Approved. The DIP Motion is granted on a final basis as set forth herein, the DIP Facility is authorized and approved, and the use of Cash Collateral is authorized, subject to the terms and conditions set forth in this Final Order.

2. Objections Resolved or Overruled. All objections to the DIP Motion and entry of this Final Order, to the extent not withdrawn or resolved, are hereby overruled.

**DIP Facility Authorization**

3.      Ratification of the Interim Order and Authorization of the DIP Financing and DIP Documents.  The terms of the Interim Order are hereby ratified and confirmed, except to the extent amended or modified by this Final Order, and all borrowings and payments made under the Interim Order are ratified and confirmed on a final basis and shall be deemed made in accordance with and pursuant to this Final Order.  The DIP Documents are hereby approved on a final basis.  The Debtors are expressly and immediately authorized and empowered, on a final basis, to incur and to perform the DIP Obligations in accordance with, and subject to, the terms of this Final Order and the DIP Documents and, to the extent applicable, execute and deliver any and all additional instruments and documents which may be required or necessary for the performance by the Debtors under the DIP Facility and the creation and perfection of the DIP Liens (as defined herein) described in and provided for by this Final Order and the DIP Documents.  The Debtors are authorized and directed on a final basis to pay the principal, interest, reasonable fees, out-of-pocket expenses and other amounts described in the DIP Documents as such become due and without need to obtain further Court approval, all to the extent provided in the DIP Documents, including, without limitation, closing fees, letter of credit fees (including issuance, fronting, and other related charges), unused revolver fee, servicing fees, appraisal fees, administrative agent's fees, the fees and disbursements of the DIP Agent's and DIP Lenders' attorneys, advisers, accountants, and other consultants.[3]  All collections and

---

[3] The payment of the reasonable fees and expenses for any professionals of the DIP Agent and DIP Lenders shall not be subject to allowance by the Court.  Professionals for the DIP Agent and DIP Lenders shall not be required to file fee applications or comply with the U.S. Trustee fee guidelines.  Each professional for the DIP Agent and DIP Lenders shall provide a copy (via email or other electronic means) of its detailed invoices (redacted if necessary for privilege) to the U.S. Trustee and counsel for the Statutory Committee contemporaneously with the delivery of such fee and expense statement to the Debtors.  To the extent that the U.S. Trustee or the Statutory Committee has an objection to the fees and expenses of any such professional, it shall be afforded ten (10) days after receipt of such fee and expense

proceeds, whether from ordinary course collections, asset sales, debt or equity issuances, insurance recoveries, condemnations or otherwise, will be deposited and applied as required by this Final Order and the DIP Documents. The DIP Documents evidence the valid and binding obligations of the Debtors, which obligations shall be enforceable against each of the Debtors and their estates in accordance with the terms of the DIP Documents.

4.      <u>Authorization to Borrow</u>.  Until the earlier of (a) the Maturity Date (as defined in the DIP Agreement) and (b) the termination of obligations under the DIP Documents by the DIP Agent upon the occurrence and during the continuation of an Event of Default (as defined herein) (such earlier date, the "<u>Commitment Termination Date</u>"), and subject to the terms, conditions, limitations on availability and reserves set forth in the DIP Documents, DIP Facility, and this Final Order, the Debtors are authorized on a final basis to request extensions of credit under the DIP Facility (in the form of loans and letters of credit) of (i) $27 million under the Term Loan (as defined in the DIP Documents, and inclusive of amounts previously extended and outstanding) and (ii) up to an aggregate principal amount of $25 million at any one time outstanding, including a sublimit for letters of credit up to $20 million, under the Revolver Commitment (as defined in the DIP Documents, and inclusive of amounts previously extended and outstanding).  All letters of credit outstanding under the Prepetition Facility and Prepetition Facility Documents shall be deemed issued and outstanding under the DIP Facility and DIP Documents as of the Petition Date.

5.      <u>DIP Obligations</u>.  The DIP Documents and this Final Order shall constitute and evidence the validity and binding effect of the Debtors' DIP Obligations, which DIP Obligations shall be enforceable against the Debtors, their estates and any successors thereto, including

---

statement to raise an objection.  If any objection is raised and cannot be resolved and/or is not withdrawn within ten (10) days after such objection has been raised, the Court shall adjudicate the matter.

without limitation, any trustee or other estate representative appointed in the Cases, or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of the Cases, or in any other proceedings superseding or related to any of the foregoing (collectively, "Successor Cases"). Upon entry of this Final Order, the DIP Obligations will include all loans, letter of credit reimbursement obligations, and any other indebtedness or obligations, contingent or absolute, which may now or from time to time be owing by any of the Debtors to the DIP Agent or DIP Lenders under the DIP Documents and whether borrowed under the terms of the Interim Order or this Final Order, including, without limitation, all principal, accrued interest, costs, fees, expenses and other amounts owed pursuant to the DIP Documents. The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Commitment Termination Date, except as provided in paragraph 11 herein.

6.     DIP Liens and DIP Collateral.  Effective immediately upon the execution of the Interim Order, pursuant to sections 361, 362, 364(c)(2), 364(c)(3), and 364(d) of the Bankruptcy Code, the DIP Agent was granted, for the benefit of itself and the DIP Lenders (and such grant is hereby ratified, confirmed and approved on a final basis), continuing, valid, binding, enforceable, non-avoidable and automatically and properly perfected postpetition security interests in and liens on (the "DIP Liens") any and all presently owned and hereafter acquired personal property, real property and other assets of the Debtors, whether owned or consigned by or to, or leased from or to the Debtors, including, without limitation, the following (collectively, the "DIP Collateral")[4]:  all (i) Prepetition Collateral; (ii) Accounts; (ii) Books; (iii) Chattel Paper; (iv) Deposit Accounts, (v) Equipment and fixtures, (vi) General Intangibles, (vii) Inventory,

---

[4] All defined terms in the description of DIP Collateral shall have the meanings ascribed thereto in the DIP Documents.  All terms not specifically defined in the DIP Documents shall have the meanings ascribed to such terms in Article 8 or 9 of the Uniform Commercial Code.

(viii) Investment Related Property, (ix) Negotiable Collateral, (x) Supporting Obligations, (xi) Commercial Tort Claims, (xii) money, cash and Cash Equivalents, (xiii) proceeds of all leases and leasehold interests (<u>provided</u>, <u>however</u>, that the DIP Collateral shall not include any liens directly on any leases or leasehold interests), (xiv) owned Real Property, (xv) unencumbered assets, including proceeds of any and all lawsuits or causes of action, (xvi) all bankruptcy avoidance actions or claims arising under chapter 5 of the Bankruptcy Code and the proceeds thereof; (xvii) Patent Collateral; (xviii) Trademark Collateral; (xix) Copyright Collateral; and (xx) Proceeds.

7. <u>DIP Lien Priority</u>. The DIP Liens securing the DIP Obligations shall be junior to the (a) Carve Out, and (b) Permitted Prior Liens, and shall otherwise be senior in priority and superior to any security, mortgage, collateral interest, lien or claim on or to any of the DIP Collateral. Other than as set forth herein, the DIP Liens shall not be made subject to or *pari passu* with any lien or security interest heretofore or hereinafter granted in the Cases or any Successor Cases. The DIP Liens shall be valid and enforceable against any trustee or other estate representative appointed in the Cases or any Successor Cases, upon the conversion of any of the Cases to a case under chapter 7 of the Bankruptcy Code (or in any other Successor Case), and/or upon the dismissal of any of the Cases or Successor Cases. The DIP Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the DIP Liens.

8. <u>DIP Superpriority Claims</u>. Effective immediately upon execution of the Interim Order, the DIP Agent and DIP Lenders were granted (and such grant is hereby ratified, confirmed and approved on a final basis), pursuant to section 364(c)(1) of the Bankruptcy Code,

an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (collectively, the "DIP Superpriority Claims") for all DIP Obligations. The DIP Superpriority Claims shall be subordinate only to the Carve Out, and shall (a) otherwise have priority over any and all administrative expenses and unsecured claims against the Debtors or their estates in any of the Cases and any Successor Cases, at any time existing or arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to Bankruptcy Code sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c), 507(a), 507(b) (except as set forth herein), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114, and any other provision of the Bankruptcy Code, except as set forth herein, and (b) at all times be senior to the rights of the Debtors and their estates, and any successor trustee or other estate representative to the extent permitted by law. The DIP Superpriority Claim shall extend to avoidance actions or claims arising under chapter 5 of the Bankruptcy Code and the proceeds thereof.

9.      No Obligation to Extend Credit. None of the DIP Agent or DIP Lenders shall have any obligation to make any loan or advance under the DIP Documents, or to issue, amend, extend or renew any letters of credit issued under or deemed issued under the DIP Documents, unless all of the conditions precedent to the making of such extension of credit or the issuance of such letter of credit under the applicable DIP Documents and this Final Order have been satisfied in full or waived by the DIP Agent and the DIP Lenders, each in its sole discretion.

10.     Use of DIP Facility Proceeds; Payment of Prepetition Obligations. From and after the Petition Date, the Debtors shall use advances of credit under the DIP Facility only for the purposes specifically set forth in this Final Order, the DIP Documents and in compliance with the Budget Compliance Covenant. Notwithstanding any first-day orders entered

authorizing the Debtors to pay any prepetition or other expenses, all such payments shall be made in accordance with the Budget and Budget Compliance Covenant. A copy of the Budget is attached to this Final Order as Exhibit 1. Immediately upon the Closing Date (as defined in the DIP Documents), the Debtors were authorized and directed to draw Interim Financing under the DIP Facility to repay in full all outstanding Prepetition Obligations, which payment is hereby ratified, confirmed and approved on a final basis. The payment of the Prepetition Obligations shall be subject to the rights of parties in interest set forth in paragraph 31 of this Final Order, provided that upon expiration of the Challenge Period (as defined herein), the Debtors' payment of the Prepetition Obligations shall be deemed to be indefeasible, final and not subject to challenge.

**Authorization to Use Cash Collateral
and Adequate Protection**

11. <u>Authorization to Use Cash Collateral</u>. Subject to the terms and conditions of this Final Order and the DIP Documents, and in accordance with the Budget, the Debtors are authorized to use Cash Collateral until the Termination Declaration Date (as defined herein); provided, however, that during the five (5) days after the Termination Declaration Date, the Debtors may use Cash Collateral in accordance with the terms and provisions of the Budget solely to meet payroll and to pay expenses critical to the preservation of the Debtors and their estates with the prior written consents required under the DIP Documents. Nothing in this Final Order shall authorize the disposition of any assets of the Debtors or their estates outside the ordinary course of business, or any Debtor's use of any Cash Collateral or other proceeds resulting therefrom, except as permitted in this Final Order, the DIP Facility and/or the DIP Documents, and in accordance with the Budget.

12. <u>Adequate Protection Liens</u>.

(a)     *Credit Facility Adequate Protection Liens*.  Effective immediately upon execution of the Interim Order, and pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interests of the Prepetition Agent and Prepetition Lenders in the Prepetition Collateral (to the extent any Prepetition Obligations remain outstanding) against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors were authorized to grant and have granted to the Prepetition Agent, for the benefit of itself and the Prepetition Lenders (and such grant is hereby ratified, confirmed and approved on a final basis), continuing valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "Credit Facility Adequate Protection Liens").

(b)     *Indenture Adequate Protection Liens*.  Effective immediately upon execution of the Interim Order, and pursuant to sections 361, 363(e) and 364(d) of the Bankruptcy Code, as adequate protection of the interest of the Indenture Trustee, on behalf of the Noteholders, in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Debtors were authorized to grant and have granted to the Indenture Trustee, for the benefit of itself and the Noteholders (and such grant is hereby ratified, confirmed and approved on a final basis), continuing valid, binding, enforceable, non-avoidable and automatically perfected postpetition security interests in and liens on the DIP Collateral (the "Indenture Adequate Protection Liens", and together with the Credit Facility Adequate Protection Liens, the "Adequate Protection Liens").

(c)     *Priority of Adequate Protection Liens*

(i)     The Credit Facility Adequate Protection Liens shall be junior only to the :  (A) Carve Out; (B) DIP Liens; (C) Prepetition Facility Liens; and (D)  Permitted

24

Prior Liens. The Credit Facility Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(ii)     The Indenture Adequate Protection Liens shall be junior only to the: (A) Carve Out; (B) DIP Liens; (C) Prepetition Facility Liens; (D) Credit Facility Adequate Protection Liens; (E) Indenture Liens; and (F) Permitted Prior Liens. The Indenture Adequate Protection Liens shall be senior to all other security interests in, liens on, or claims against any of the DIP Collateral.

(iii)     Except as provided herein, the Adequate Protection Liens shall not be made subject to or *pari passu* with any lien or security interest by any court order heretofore or hereafter entered in the Cases or any Successor Cases, and shall be valid and enforceable against any trustee appointed in any of the Cases or any Successor Cases, or upon the dismissal of any of the Cases or Successor Cases. The Adequate Protection Liens shall not be subject to sections 506(c), 510, 549, or 550 of the Bankruptcy Code. No lien or interest avoided and preserved for the benefit of any estate pursuant to section 551 of the Bankruptcy Code shall be made *pari passu* with or senior to the Adequate Protection Liens.

13.     Adequate Protection Superpriority Claims.

(a)     *Credit Facility Superpriority Claim*. Effective immediately upon execution of the Interim Order, as further adequate protection of the interests of the Prepetition Agent and Prepetition Lenders in the Prepetition Collateral (to the extent any Prepetition Obligations remain outstanding) against any Diminution in Value of such interests in the Prepetition Collateral, the Prepetition Agent and Prepetition Lenders were each granted (and such grant is hereby ratified, confirmed and approved on a final basis) as and to the extent

provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Credit Facility Superpriority Claims").  The Credit Facility Superpriority Claim shall extend to avoidance actions or claims arising under chapter 5 of the Bankruptcy Code and the proceeds thereof.

(b)     *Indenture Superpriority Claim.*  Effective immediately upon execution of the Interim Order, as further adequate protection of the interests of the Indenture Trustee, on behalf of the Noteholders, in the Prepetition Collateral against any Diminution in Value of such interests in the Prepetition Collateral, the Indenture Trustee, on behalf of itself and the Noteholders, were granted (and such grant is hereby ratified, confirmed and approved on a final basis) as and to the extent provided by sections 503(b) and 507(b) of the Bankruptcy Code an allowed superpriority administrative expense claim in each of the Cases and any Successor Cases (the "Indenture Superpriority Claims", and together with the Credit Facility Superpriority Claim, the "Adequate Protection Superpriority Claims").  The Indenture Superpriority Claim shall extend to avoidance actions or claims arising under chapter 5 of the Bankruptcy Code and the proceeds thereof.

(c)     *Priority of Adequate Protection Superpriority Claims.*  The Credit Facility Superpriority Claims shall be junior only to the Carve Out and DIP Superpriority Claims.  The Indenture Superpriority Claims shall be junior only to the Carve Out, the DIP Superpriority Claims, and the Credit Facility Superpriority Claims.  Except as set forth herein, the Adequate Protection Superpriority Claims shall have priority over all administrative expense claims and unsecured claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including, without limitation, administrative expenses of the kinds specified in or ordered pursuant to sections 105, 326, 328, 330, 331, 365, 503(a), 503(b), 506(c),

507(a), 507(b), 546(c), 546(d), 726 (to the extent permitted by law), 1113 and 1114 of the Bankruptcy Code.

14.  Adequate Protection Payments and Protections.

(a)  *Credit Facility Adequate Protection Payments and Protections.*  As further adequate protection, to the extent any Prepetition Obligations remain outstanding, the Debtors were authorized and directed to provide adequate protection to the Prepetition Agent and Prepetition Lenders (and such adequate protection is hereby ratified, confirmed and approved on a final basis), in the form of:  (i) monthly payments of interest, fees and other amounts due under the Prepetition Credit Documents; and (ii) ongoing payment of the Prepetition Agent's and Prepetition Lenders' reasonable fees, costs and expenses, including, without limitation, legal fees and expenses (together, the "Credit Facility Adequate Protection Payments").

(b)  *Indenture Adequate Protection Payments and Protections.*  As further adequate protection, and subject to the Intercreditor Agreement, the Debtors were authorized and directed to provide adequate protection to the Indenture Trustee, for and on behalf of itself and the Noteholders (and such adequate protection is hereby ratified, confirmed and approved on a final basis), in the form of:  (i) ongoing payment of the reasonable fees and expenses of Akin Gump, counsel to the Noteholder Group; (ii) ongoing payment of the costs and expenses of the Indenture Trustee, including attorneys' and consultant's fees (together, the "Indenture Adequate Protection Payments," and together with the Credit Facility Adequate Protection Payments, the "Adequate Protection Payments").[5]  However, following a Triggering Event (as defined in

---

[5] The payment of the reasonable fees and expenses for any professionals of the Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholder Group shall not be subject to allowance by the Court.  Professionals for the Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholder Group shall not be required to file fee applications or comply with the U.S. Trustee fee guidelines.  Each professional for the Prepetition Agent, Prepetition Lenders, Indenture Trustee or Noteholder Group shall provide a copy (via email or other electronic means) of its detailed invoices (redacted if necessary for

paragraph 29), the Indenture Adequate Protection Payments incurred in connection with the Cases or any Successor Cases shall not exceed the aggregate amount of $200,000.

15.     Section 507(b) Reservation.  Nothing herein shall impair or modify the application of section 507(b) of the Bankruptcy Code in the event that the adequate protection provided to any of the Prepetition Agent, Prepetition Lenders, Indenture Trustee and/or Noteholders hereunder is insufficient to compensate for any Diminution in Value of their respective interests in the Prepetition Collateral during the Cases or any Successor Cases.

**Provisions Common to DIP Financing**
**and Use of Cash Collateral Authorizations**

16.     Amendment of the DIP Documents.  The DIP Documents may from time to time be amended, modified or supplemented by the parties thereto without notice or a hearing if: (i) the amendment, modification, or supplement is (A) in accordance with the DIP Documents, (B) beneficial to the Debtors, and (C) not prejudicial in any material respect to the rights of third parties; (ii) a copy (which may be provided through electronic mail or facsimile) of the amendment, modification or supplement is provided to counsel for the Statutory Committee and the U.S. Trustee upon three (3) business days notice; and (iii) the amendment, modification or supplement is filed with the Court; provided, however, that consent of the Statutory Committee or the U.S. Trustee, and approval of the Court is not necessary to effectuate any such amendment, modification or supplement.  Except as otherwise provided in this paragraph 16, no waiver, modification, or amendment of any of the provisions of any DIP Document shall be

_____

privilege) to the U.S. Trustee and counsel for the Statutory Committee contemporaneously with the delivery of such fee and expense statement to the Debtors.  To the extent that the U.S. Trustee or the Statutory Committee has an objection to the fees and expenses of any such professional, it shall be afforded ten (10) days after receipt of such fee and expense statement to raise an objection.  If any objection is raised and cannot be resolved and/or is not withdrawn within ten (10) days after such objection has been raised, the Court shall adjudicate the matter.

A/73278328.10

effective unless set forth in writing, signed on behalf of the Debtors and with the necessary consents required under and executed in accordance with the DIP Documents, and approved by the Court on notice.

17.     Budget Maintenance.  The Budget and any modification to, or amendment or update of, the Budget shall be in form and substance acceptable to and approved by the DIP Agent and DIP Lenders, each in its sole discretion.  The Budget may be amended or modified in writing from time to time only with the written consents required under the DIP Documents. The Debtors shall update the Budget from time to time (provided that any update shall be in form and substance acceptable to the DIP Agent and DIP Lenders, each in its sole discretion), but in any event not less than every four fiscal weeks, commencing February 21, 2010 (with delivery to the DIP Agent, DIP Lenders, Indenture Trustee, Noteholder Group and Statutory Committee thereafter within five (5) business days after the end of each such fourth fiscal week).

18.     Modification of Automatic Stay.  The automatic stay imposed under Bankruptcy Code section 362(a) is hereby modified as necessary to effectuate all of the terms and provisions of this Final Order, including, without limitation, to:  (a) permit the Debtors to grant the DIP Liens, Adequate Protection Liens, DIP Superpriority Claims, and Adequate Protection Superpriority Claims; (b) permit the Debtors to perform such acts as the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee, or Noteholder Group each may request in its sole discretion to assure the perfection and priority of the liens granted herein; (c) permit the Debtors to incur all liabilities and obligations to the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders under the DIP Documents, the DIP Facility and this Final Order; (d) authorize the Debtors to pay, and the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders

to retain and apply, payments made in accordance with the terms of the Interim Order and this Final Order; and (e) permit the Debtors to pay the Prepetition Obligations, to the extent any amounts remain outstanding, consistent with the terms of the Interim Order and this Final Order.

19.     <u>Perfection of DIP Liens and Adequate Protection Liens</u>.  This Final Order shall be sufficient and conclusive evidence of the validity, perfection, and priority of the DIP Liens and Adequate Protection Liens without the necessity of filing or recording any financing statement or other instrument or document which may otherwise be required under the law or regulation of any jurisdiction or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable non-bankruptcy law) the DIP Liens and Adequate Protection Liens, or to entitle the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders to the priorities granted herein.  Notwithstanding the foregoing, each of the DIP Agent, Prepetition Agent and Indenture Trustee is authorized to file, as it deems necessary in its sole discretion, such financing statements, mortgages, notices of liens and other similar documents to perfect in accordance with applicable non-bankruptcy law or to otherwise evidence the applicable DIP Liens and/or Adequate Protection Liens, and all such financing statements, mortgages, notices and other documents shall be deemed to have been filed or recorded as of the Petition Date; <u>provided</u>, <u>however</u>, that no such filing or recordation shall be necessary or required in order to create or perfect the DIP Liens and/or the Adequate Protection Liens.  The Debtors are authorized and directed to execute and deliver promptly upon demand to the DIP Agent, Prepetition Agent, and Indenture Trustee all such financing statements, mortgages, notices and other documents as any of the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders or Indenture Trustee may reasonably request.  The DIP Agent, Prepetition Agent, and Indenture

Trustee, each in its discretion, may file a photocopy of this Final Order as a financing statement with any filing or recording office or with any registry of deeds or similar office, in addition to or in lieu of such financing statements, notices of lien or similar instrument.

20.     <u>Proceeds of Subsequent Financing</u>.  If the Debtors, any trustee, any examiner with enlarged powers, any responsible officer or any other estate representative subsequently appointed in these Cases or any Successor Cases, shall obtain credit or incur debt pursuant to Bankruptcy Code sections 364(b), 364(c) or 364(d) in violation of the DIP Documents at any time prior to the repayment in full of all DIP Obligations, the cancellation, backing or cash collateralization of letters of credit under the DIP Facility, and the termination of the DIP Agent's and DIP Lenders' obligation to extend credit under the DIP Facility, including subsequent to the confirmation of any plan with respect to any or all of the Debtors and the Debtors' estates, then all the cash proceeds derived from such credit or debt shall immediately be turned over to the DIP Agent to be applied as set forth in the DIP Documents.

21.     <u>Maintenance of DIP Collateral</u>.  Until the payment in full in cash of all DIP Obligations, the cancellation, backing, or cash collateralization of letters of credit under the DIP Facility, and the termination of the DIP Lenders' obligations to extend credit under the DIP Facility, the Debtors shall:  (a) insure the DIP Collateral as required under the DIP Facility; and (b) maintain the cash management system which has first been agreed to by the required consents under the DIP Documents, or as otherwise required by the DIP Documents.

22.     <u>Disposition of DIP Collateral; Rights of DIP Agent and DIP Lenders</u>.  The Debtors shall not sell, transfer, lease, encumber or otherwise dispose of any portion of the DIP Collateral other than as permitted in the DIP Documents without the prior written consents as required under the DIP Documents (and, other than as set forth in the Intercreditor Agreement,

31

no such consent shall be implied, from any other action, inaction or acquiescence by the DIP

Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee, Noteholder

Group or Noteholders, or an order of this Court).

23. <u>DIP Termination</u>. On the Commitment Termination Date, (a) all DIP Obligations

shall be immediately due and payable, all commitments to extend credit under the DIP Facility

will terminate, and all letters of credit outstanding shall be cash collateralized, backed or

cancelled, and (b) all authority to use Cash Collateral shall cease, <u>provided</u>, <u>however</u>, that for the

five (5) days after the Termination Declaration Date, the Debtors may use Cash Collateral solely

as set forth in paragraph 11 herein.

24. <u>Events of Default</u>. The occurrence of an "Event of Default" under the DIP

Agreement, including, among other things, the failure of the Debtors to perform the obligations

as set forth on and when required by Exhibit 2 attached hereto (subject to any extensions or

waivers as permitted under the DIP Documents), shall constitute an event of default under this

Final Order, unless expressly waived in writing in accordance with the consents required in the

DIP Documents (collectively, the "<u>Events of Default</u>").

25. <u>Rights and Remedies Upon Event of Default</u>. Immediately upon the occurrence

and during the continuation of an Event of Default, (a) the DIP Agent, as directed by the required

DIP Lenders as provided in the DIP Documents, may declare (i) all DIP Obligations owing under

the DIP Documents to be immediately due and payable, (ii) the termination, reduction or

restriction of any further commitment to extend credit to the Debtors to the extent any such

commitment remains, (iii) the termination of the DIP Agreement and any other DIP Document as

to any future liability or obligation of the DIP Agent and the DIP Lenders, but without affecting

any of the DIP Liens or the DIP Obligations, and/or (iv) a termination, reduction or restriction on

the ability of the Debtors to use Cash Collateral, except as provided in paragraph 11 hereof; and (b) to the extent any Prepetition Obligations remain outstanding, the Prepetition Agent may declare a termination, reduction or restriction of the ability of the Debtors to use any Cash Collateral, except as provided in paragraph 11 (any such declaration by the DIP Agent or the Prepetition Agent, shall be referred to herein as a "Termination Declaration"). The Termination Declaration shall be given by email (or other electronic means) to counsel to the Debtors, counsel to the Prepetition Agent, counsel to the Indenture Trustee, counsel to the Noteholder Group, counsel to the Statutory Committee, and the U.S. Trustee (the earliest date any such Termination Declaration is made shall be referred to herein as the "Termination Declaration Date"). The DIP Obligations shall be due and payable, without notice or demand, and the use of Cash Collateral shall automatically cease on the Termination Declaration Date, except as provided in paragraph 11. Any automatic stay otherwise applicable to the DIP Agent or the DIP Lenders is hereby modified so that seven (7) days after the Termination Declaration Date (the "Remedies Notice Period"), (x) the DIP Agent and the DIP Lenders shall be entitled to exercise all rights and remedies against the DIP Collateral in accordance with the DIP Documents and this Final Order and shall be permitted to satisfy the DIP Obligations and DIP Superpriority Claims, subject to the Carve Out, (y) the Prepetition Agent and the Prepetition Lenders shall be entitled to exercise their rights and remedies to satisfy the Prepetition Obligations, Credit Facility Superpriority Claims, and Credit Facility Adequate Protection Payments, subject to the Carve Out, and (z) subject to the terms of the Intercreditor Agreement, the Indenture Trustee, for the benefit of itself and the Noteholders, shall be entitled to exercise its rights and remedies to satisfy the Indenture Obligations, Indenture Superpriority Claims, and Indenture Adequate Protection Payments, subject to the Carve Out. Notwithstanding anything to the contrary, during the

Remedies Notice Period, the Debtors and/or the Statutory Committee shall be entitled to seek an emergency hearing with the Court for the sole purpose of contesting whether an Event of Default has occurred and/or is continuing. Unless the Court determines during the Remedies Notice Period that an Event of Default has not occurred and/or is not continuing, the automatic stay shall automatically be terminated at the end of the Remedies Notice Period without further notice or order, and the Debtors shall no longer have the right to use or seek to use Cash Collateral, and the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, and, subject to the terms of the Intercreditor Agreement, the Indenture Trustee and Noteholders, shall be permitted to exercise all remedies set forth herein, in the DIP Agreement, the DIP Documents, Prepetition Credit Agreement, Prepetition Credit Documents, Indenture, or Indenture Documents, as applicable, and as otherwise available at law against the DIP Collateral and/or Prepetition Collateral, without any further order of or application or motion to the Court, and without restriction or restraint by any stay under sections 362 or 105 of the Bankruptcy Code, or otherwise, against the enforcement of the liens and security interest in the DIP Collateral or any other rights and remedies granted to the DIP Agent and DIP Lenders with respect thereto pursuant to the DIP Agreement, DIP Documents, or this Final Order. Notwithstanding anything to the contrary in this Final Order, the right of any DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, and, subject to the terms of the Intercreditor Agreement, the Indenture Trustee and Noteholders to occupy and/or use any leased premises shall be limited to any rights: (A) existing under applicable non-bankruptcy law; (B) the applicable landlords provide and/or consent to in writing; and/or (C) granted by the Court on motion and notice, and with an opportunity for the landlords to respond.

26. <u>Good Faith Under Section 364(e) of the Bankruptcy Code; No Modification or</u>

Stay of this Final Order. The DIP Agent and DIP Lenders each have acted in good faith in connection with negotiating the DIP Documents, extending credit under the DIP Facility, allowing use of Cash Collateral and their reliance on the Interim Order and Final Order was and is in good faith. Based on the findings set forth in this Final Order and the record made during the Interim Hearing and Final Hearing, and in accordance with section 364(e) of the Bankruptcy Code, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, amended or vacated by a subsequent order of this Court or any other court, the DIP Agent and DIP Lenders are each entitled to the protections provided in section 364(e) of the Bankruptcy Code. Any such reversal, modification, amendment or vacatur shall not affect the validity, perfection, priority, allowability, enforceability or non-avoidability of any advances previously made or made hereunder, or lien, claim or priority authorized or created previously or hereby. Any liens or claims granted to the DIP Agent or DIP Lenders hereunder arising prior to the effective date of any such reversal, modification, amendment or vacatur of this Final Order shall be governed in all respects by the original provisions of this Final Order, including entitlement to all rights, remedies, privileges and benefits granted herein.

27. Indemnification of DIP Agent and DIP Lenders. The Debtors shall indemnify and hold harmless the DIP Agent and each DIP Lender and their respective shareholders, directors, agents, officers, subsidiaries and affiliates, successors and assigns, attorneys and professional advisors, in their respective capacities as such, from and against any and all damages, losses, settlement payments, obligations, liabilities, claims, actions or causes of action, whether groundless or otherwise, and reasonable costs and expenses incurred, suffered, sustained or required to be paid by an indemnified party of every nature and character arising out of or related to the DIP Documents, or the DIP Facility or the transactions contemplated thereby and by this

Final Order, whether such indemnified party is party thereto, as provided in and pursuant to the terms of the DIP Documents and as further described therein and herein, except to the extent resulting from such indemnified party's gross negligence or willful misconduct as determined by a final non-appealable order of a court of competent jurisdiction. The indemnity includes indemnification for the DIP Agent's and each DIP Lender's exercise of discretionary rights granted under the DIP Facility. In all such litigation, or the preparation therefor, the DIP Agent and each DIP Lender shall be entitled to select its own counsel and, in addition to the foregoing indemnity, the Debtors agree to promptly pay the reasonable fees and expenses of such counsel.

28. <u>Rights of Access and Information</u>. Without limiting the rights of access and information afforded the DIP Agent and DIP Lenders under the DIP Documents, the Debtors shall be, and hereby are, required to afford representatives, agents and/or employees of the DIP Agent and DIP Lenders reasonable access to the Debtors' premises and their books and records in accordance with the DIP Documents, and shall reasonably cooperate, consult with, and provide to such persons all such information as may be reasonably requested. In addition, the Debtors authorize their independent certified public accountants, financial advisors, investment bankers and consultants to cooperate, consult with, and provide to the DIP Agent and DIP Lenders all such information as may be reasonably requested with respect to the business, results of operations and financial condition of any Borrower.

29. <u>Carve Out</u>.

(a) *Carve Out*. As used in this Final Order, the "<u>Carve Out</u>" shall encompass the following expenses: (a) following the occurrence of a Triggering Event, (i) an aggregate amount incurred upon and after the occurrence of such Triggering Event not to exceed $1,500,000 (the "<u>Carve Out Amount</u>") for all (A) allowed fees, and reimbursement for

disbursements of, professionals retained by the Debtors and/or the Statutory Committee (the "Professional Fee Payments") and (B) reasonable expenses of members of the Statutory Committee in each case incurred in such member's capacity as a member of the Statutory Committee in connection with the Cases; (ii) fees pursuant to 28 U.S.C. § 1930 and any fees payable to the clerk of the Bankruptcy Court; and (iii) fees payable to a chapter 7 trustee in an aggregate amount not to exceed $50,000 and (b) without reducing the Carve Out Amount, all Professional Fee Payments allowed, or subsequently allowed, and payable under sections 330 and 331 of the Bankruptcy Code, to the extent incurred prior to such Triggering Event (the "Pipeline Period").  The Carve Out Amount shall be funded with proceeds of the Term Loan (as defined in the DIP Agreement) and segregated in an interest bearing deposit account.  As used in this paragraph 29, the term "Triggering Event" shall mean the earlier to occur of (a) the date the DIP Agent provides to the Borrowers, with a copy to the Borrowers' counsel and the Statutory Committee's counsel, a notice of (i) an Event of Default and (ii) termination of the Pipeline Period for purposes of the Carve Out or (b) the date upon which the failure of the Borrowers to notify the DIP Agent of the occurrence of a Default (as defined in the DIP Documents) or Event of Default constitutes a failure to comply with the requirement to give such a notice under the DIP Documents.

(b)     *No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees*.  The DIP Agent and DIP Lenders shall not be responsible for the direct payment or reimbursement of any fees or disbursements of any professionals retained by the Debtors and/or any statutory committee appointed incurred in connection with the Cases or any Successor Cases.  Nothing in this Final Order or otherwise shall be construed (i) to obligate the DIP Agent or DIP Lenders, in any way to pay compensation to or to reimburse expenses of any

professionals retained by the Debtors and/or any statutory committee appointed, or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement; (ii) to increase the Carve Out Amount if actual Professional Fee Payments incurred after a Triggering Event exceed the Carve Out Amount; (iii) as consent to the allowance of any professional fees or expenses of any professionals retained by the Debtors and/or any statutory committee appointed; or (iv) to affect the right of the Prepetition Agent, Prepetition Lenders, DIP Agent, DIP Lenders or Indenture Trustee to object to the allowance and payment of such fees and expenses.

30.    <u>Limitations on the DIP Facility, DIP Collateral, Cash Collateral, and Carve Out</u>. The DIP Facility, DIP Collateral, Cash Collateral, and Carve Out may not be used:  (a) in connection with or to finance in any way any action, suit, arbitration, proceeding, application, motion or other litigation of any type (i) adverse to the interests of the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee, Noteholders, or their rights and remedies under the DIP Documents, Prepetition Credit Documents, Indenture Documents or this Final Order, as applicable, including, without limitation, for the payment of any services rendered by the professionals retained by the Debtors, the Statutory Committee or any other statutory committee appointed in connection with the assertion of or joinder in any claim, counterclaim, action, proceeding, application, motion, objection, defense or other contested matter, the purpose of which is to seek, or the result of which would be to obtain, any order, judgment determination, declaration or similar relief (ii) invalidating, setting aside, avoiding or subordinating, in whole or in part, the DIP Obligations, Prepetition Obligations or Indenture Obligations, (iii) for monetary, injunctive or other affirmative relief against any DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lender, Indenture Trustee, or Noteholder, or their respective collateral, or (iv) preventing, hindering or otherwise delaying the exercise by the DIP

Agent or any DIP Lender of any rights and/or remedies under this Final Order, the DIP Documents, or applicable law, or the enforcement or realization (whether by foreclosure, credit bid, further order of the Court or otherwise) by the DIP Agent or DIP Lenders upon any of the DIP Collateral; (b) to make any distribution under a plan of reorganization in any of the Cases; (c) to make any payment in settlement of any claim, action or proceeding, before any court, arbitrator or other governmental body without the prior written consents required under the DIP Documents; (d) to pay any fees or similar amounts to any person who has proposed or may propose to purchase interests in any of the Debtors without the prior written consents required under the DIP Documents, (e) subject to the limited use of Cash Collateral set forth in paragraph 11 above, objecting to, contesting, or interfering with in any way the DIP Agent's or DIP Lenders' enforcement or realization upon any of the DIP Collateral once an Event of Default has occurred; (f) using or seeking to use Cash Collateral or selling or otherwise disposing of DIP Collateral without the consents required under the DIP Documents; (g) using or seeking to use any insurance proceeds constituting DIP Collateral without the consents required under the DIP Documents; (h) incurring Indebtedness (as defined in the DIP Agreement) outside the ordinary course of business without the prior consents required under the DIP Documents; (i) objecting to or challenging in any way the claims, liens, or interests (including interests in the Prepetition Collateral or DIP Collateral) held by or on behalf of any DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lender, Indenture Trustee or Noteholder; (j) asserting, commencing or prosecuting any claims or causes of action whatsoever, including, without limitation, any actions under chapter 5 of the Bankruptcy Code, against any DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lender, Indenture Trustee, or Noteholder; (k) prosecuting an objection to, contesting in any manner, or raising any defenses to, the validity, extent, amount,

perfection, priority, or enforceability of any of the Prepetition Obligations, Indenture

Obligations, Prepetition Liens, DIP Obligations or DIP Liens or any other rights or interests of

any of the Prepetition Agent, Prepetition Lenders, Indenture Trustee, Noteholders, DIP Agent or

DIP Lender; or (l) preventing, hindering or otherwise delaying the exercise by any DIP Agent,

DIP Lender, Prepetition Agent, Prepetition Lender, or Indenture Trustee of any rights and

remedies granted under this Final Order.  Notwithstanding the foregoing, an aggregate amount

not to exceed $50,000 of the DIP Facility, DIP Collateral, Cash Collateral and Carve Out may be

used by the Statutory Committee to investigate the Prepetition Facility Liens or Indenture Liens

within the Challenge Period (as defined herein).

31.    <u>Reservation of Certain Third Party Rights and Bar of Challenges and Claims</u>.

Nothing in this Final Order or the DIP Documents shall prejudice the rights of the Statutory

Committee, if granted standing by the Court, to seek, solely in accordance with the provisions of

this paragraph 31, to assert claims against the Prepetition Agent, Prepetition Lenders, Indenture

Trustee or Noteholders on behalf of the Debtors or Debtors' creditors or interest holders or to

otherwise challenge the Debtors' Stipulations, including, but not limited to those in relation to:

(a) the validity, extent, priority, or perfection of the mortgages, security interests, and liens of

any Prepetition Agent, Prepetition Lender or Indenture Trustee; (b) the validity, allowability,

priority, fully secured status or amount of the Prepetition Obligations; (c) the validity,

allowability, priority, or amount of the Indenture Obligations; or (d) any liability of the

Prepetition Agent and/or Prepetition Lenders with respect to anything arising from the

Prepetition Facility, or of the Indenture Trustee or Noteholders with respect to anything arising

from the Indenture.  The Statutory Committee must, after obtaining Court-approved standing,

commence a contested matter or adversary proceeding raising such claim, objection or challenge,

including, without limitation, any claim or cause of action against any Prepetition Agent, Prepetition Lender, Indenture Trustee or Noteholder (each, a "Challenge") within sixty (60) calendar days following the date of entry of this Final Order (the "Challenge Period"). The Challenge Period may only be extended with the written consent of the applicable Prepetition Agent, Prepetition Lender, Indenture Trustee, or Noteholder, or by order of the Court for cause shown prior to the expiration of the Challenge Period. Only those parties in interest who commence a Challenge within the Challenge Period may prosecute such Challenge. As to (A) any parties in interest, including the Statutory Committee, who fail to file a Challenge within the Challenge Period, or, if any such Challenge is filed and overruled or (B) any and all matters that are not expressly the subject of a timely Challenge: (1) any and all such Challenges by any party (including, without limitation, the Statutory Committee, any chapter 11 trustee, and/or any examiner or other estate representative appointed in these Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed in any Successor Case), shall be deemed to be forever waived and barred, (2) all of the findings, Debtors' Stipulations, waivers, releases, affirmations and other stipulations as to the priority, extent, and validity as to the Prepetition Agent's, each Prepetition Lender's, Indenture Trustee's and each Noteholder's claims, liens, and interests shall be of full force and effect and forever binding upon the Debtors, the Debtors' bankruptcy estates and all creditors, interest holders, and other parties in interest in these Cases and any Successor Cases, and (3) any and all claims or causes of action against any of the Prepetition Agent, Prepetition Lenders, Indenture Trustee and/or Noteholder relating in any way to the Debtors shall be released by the Debtors' estates, all creditors, interest holders and other parties in interest in these Cases and any Successor Cases.

32. <u>No Third Party Rights</u>. Except as explicitly provided for herein, this Final Order

A/73278328.10

does not create any rights for the benefit of any third party, creditor, equity holder or any direct, indirect, or incidental beneficiary.

33.     Continued Effectiveness of Intercreditor Agreement.  The Intercreditor Agreement shall continue in full force and effect and be binding on the Indenture Trustee and Noteholders, to the same extent as it was prior to the Petition Date and the entry of this Final Order, and shall inure to the benefit of the DIP Agent and DIP Lenders with the same force and effect to the DIP Agent as it currently does to the Prepetition Agent as if the DIP Agent were originally named therein as the "Original Senior Agent" and as if the DIP Lenders were originally named therein as the "Senior Lenders" named therein.  Except as expressly set forth in the prior sentence, nothing in this Final Order or the DIP Documents shall (a) modify or amend any terms of the Intercreditor Agreement or (b) affect the validity or effectiveness of the Intercreditor Agreement.  In the event of any direct conflict between the terms and conditions of the Intercreditor Agreement and this Final Order or the DIP Documents, the provisions of this Final Order and the DIP Documents shall govern and control, except with respect to provisions of this Final Order that are expressly subject to the terms of the Intercreditor Agreement (in which case, the terms of the Intercreditor Agreement shall govern and control).

34.     Section 506(c) Claims.  No costs or expenses of administration which have been or may be incurred in the Cases or any Successor Cases at any time shall be charged against any DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lender, Indenture Trustee or Noteholder, or any of their respective claims or the DIP Collateral or Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code, or otherwise, without the prior written consent of the applicable DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lender, Indenture Trustee

or Noteholders and no such consent shall be implied from any other action, inaction, or acquiescence by any such agents or lenders.

35. <u>No Marshaling/Applications of Proceeds</u>. The DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders shall not be subject to the equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP Collateral or the Prepetition Collateral, as the case may be, and proceeds shall be received and applied pursuant to the DIP Documents.

36. <u>Section 552(b)</u>. The Debtors, Committee, DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders agree that they shall not assert the "equities of the case" exception under section 552(b) of the Bankruptcy Code with respect to proceeds, product, offspring or profits of any of the Prepetition Collateral.

37. <u>Section 363 Sale Proceeds</u>. In the event that any, all, or substantially all of the Debtors' assets are sold pursuant to section 363 of the Bankruptcy Code, distribution and application of the proceeds of any such sale shall be governed by the order approving such sale or such other order entered by the Court governing the distribution and application of sale proceeds.

38. <u>Joint and Several Liability</u>. Nothing in this Final Order shall be construed to constitute a substantive consolidation of any of the Debtors' estates, it being understood, however, that the Debtors shall be jointly and severally liable for the obligations hereunder and in accordance with the terms of the DIP Facility and the DIP Documents.

39. <u>Discharge Waiver</u>. The Debtors expressly stipulate, and the Court finds and adjudicates that, the DIP Obligations shall not be discharged by the entry of an order confirming any plan of reorganization, notwithstanding the provisions of section 1141(d) of the Bankruptcy

A/73278328.10

Code, unless the DIP Obligations have been paid in full in cash on or before the effective date of a confirmed plan of reorganization. None of the Debtors shall propose or support any plan of reorganization or sale of all or substantially all of the Debtors' assets or entry of any confirmation order or sale order that is not conditioned upon the payment in full in cash, on the effective date of such plan of reorganization or sale, of all DIP Obligations and the cancellation, backing, or cash collateralization of all letters of credit issued under the DIP Documents.

40. <u>Rights Preserved</u>. Other than as expressly set forth in this Final Order, any other rights, claims or privileges (whether legal, equitable or otherwise) of the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders are preserved.

41. <u>No Waiver by Failure to Seek Relief</u>. The failure of any DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lender, Indenture Trustee or Noteholder to seek relief or otherwise exercise its rights and remedies under this Final Order, the DIP Documents, the Prepetition Credit Documents, the Indenture Documents, or applicable law, as the case may be, shall not constitute a waiver of any of the rights hereunder, thereunder, or otherwise of the applicable DIP Agent, DIP Lender, Prepetition Agent, Prepetition Lender, Indenture Trustee or Noteholder.

42. <u>Binding Effect of Interim Order</u>. Immediately upon entry by this Court (notwithstanding any applicable law or rule to the contrary), the terms and provisions of this Final Order shall become valid and binding upon and inure to the benefit of the Debtors, DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee, Noteholders, all other creditors of any of the Debtors, the Statutory Committee or any other committee appointed by the Court in the Cases, and all other parties in interest and their respective successors and

A/73278328.10

assigns, including any trustee or other fiduciary hereafter appointed in any of the Cases, any Successor Cases, or upon dismissal of any Case or Successor Case.

43.     <u>No Modification of Interim Order</u>.  Until and unless the DIP Obligations and Prepetition Obligations (to the extent any Prepetition Obligations remain outstanding) have been indefeasibly paid in full in cash, and all letters of credit under the DIP Facility and Prepetition Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof (such payment being without prejudice to any terms or provisions contained in the DIP Facility which survive such discharge by their terms), and all commitments to extend credit under the DIP Facility have been terminated, the Debtors irrevocably waive the right to seek and shall not seek or consent to, directly or indirectly:  (a) without the prior written consents required in the DIP Documents, the Prepetition Agent (until the Prepetition Facility is indefeasibly repaid in full) and Indenture Trustee (to the extent permitted or required under the Intercreditor Agreement) (i) any modification, stay, vacatur or amendment to this Final Order; (ii) a priority claim for any administrative expense or unsecured claim against the Debtors (now existing or hereafter arising of any kind or nature whatsoever, including, without limitation any administrative expense of the kind specified in sections 503(b), 507(a) or 507(b) of the Bankruptcy Code) in any of the Cases or Successor Cases, equal or superior to the DIP Superpriority Claims, other than the Carve Out, or (iii) any other order allowing use of Cash Collateral; and (b) without the prior written consents required under the DIP Documents, any lien on any of the DIP Collateral with priority equal or superior to the DIP Liens.  The Debtors irrevocably waive any right to seek any amendment, modification or extension of this Final Order without the prior written consent, as provided in the foregoing, of the DIP Agent, Prepetition Agent and Indenture Trustee, as applicable, and no such consent shall be implied by

A/73278328.10

any other action, inaction or acquiescence of the applicable DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, or Indenture Trustee.

44.    <u>Final Order Controls</u>.  In the event of any inconsistency between the terms and conditions of the DIP Documents or this Final Order, the provisions of this Final Order shall govern and control.

45.    <u>Survival</u>.  The provisions of this Final Order and any actions taken pursuant hereto shall survive entry of any order which may be entered:  (a) confirming any plan of reorganization in any of the Cases; (b) converting any of the Cases to a case under chapter 7 of the Bankruptcy Code; (c) dismissing any of the Cases or any Successor Cases; or (d) pursuant to which this Court abstains from hearing any of the Cases or Successor Cases.  The terms and provisions of this Final Order, including the claims, liens, security interests and other protections granted to the DIP Agent, DIP Lenders, Prepetition Agent, Prepetition Lenders, Indenture Trustee and Noteholders pursuant to this Final Order and/or the DIP Documents, notwithstanding the entry of any such order, shall continue in the Cases, in any Successor Cases, or following dismissal of the Cases or any Successor Cases, and shall maintain their priority as provided by this Final Order until all DIP Obligations have been indefeasibly paid in full and all letters of credit under the DIP Facility shall have been cancelled, backed, or cash collateralized in accordance with the terms thereof and all commitments to extend credit under the DIP Facility are terminated.  The terms and provisions concerning the indemnification of the DIP Agent and/or DIP Lenders shall continue in the Cases, in any Successor Cases, following dismissal of the Cases or any Successor Cases, following termination of the DIP Documents and/or the repayment of the DIP Obligations.

46.     <u>Retention of Jurisdiction</u>.  The Court has and will retain jurisdiction to enforce this Final Order according to its terms.

SO ORDERED by the Court this 18th day of February, 2010.

/s/ Martin Glenn

HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE

A/73278328.10

**<u>Exhibit 1</u>**

**<u>Exhibit 2</u>**