UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------x
                             :

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| UNO RESTAURANT HOLDINGS | : | Case No. 10-10209 (MG) |
| CORPORATION, *et al.*, | : | |
| Debtors. | : | (Jointly Administered) |
| | : | |

---------------------------------------------------------------x

## MEMORANDUM OF LAW
### (A) IN SUPPORT OF CONFIRMATION
### OF FIRST AMENDED JOINT CONSOLIDATED
### PLAN OF REORGANIZATION UNDER CHAPTER 11
### OF THE BANKRUPTCY CODE OF UNO RESTAURANT HOLDINGS
### CORPORATION AND ITS AFFILIATED DEBTORS AND DEBTORS IN
### <u>POSSESSION DATED AS OF MAY 7, 2010 AND (B) RESPONSE TO OBJECTIONS</u>

WEIL, GOTSHAL & MANGES LLP
Joseph H. Smolinsky
767 Fifth Avenue
New York, New York, 10153
(212) 310-8000

*Attorneys for Debtors and*
*Debtors in Possession*

AKIN GUMP STRAUSS HAUER & FELD LLP
Michael S. Stamer, Esq.
Philip C. Dublin, Esq.
One Bryant Park
New York, New York  10036
(212) 872-1000

*Counsel for the Majority Noteholder Group*

Dated: June 17, 2010

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

FACTS ................................................................................................................... 4

ARGUMENT .......................................................................................................... 6

I.    THE PLAN PROPONENTS WILL SATISFY THEIR BURDEN OF
      PROOF UNDER SECTION 1129 OF THE BANKRUPTCY CODE ................ 6

II.   THE PLAN SATISFIES THE REQUIREMENTS UNDER SECTION
      1129(A) OF THE BANKRUPTCY CODE ...................................................... 7

      A.    Section 1129(a)(1):  The Plan Complies With All Applicable
            Provisions of the Bankruptcy Code ........................................................ 7

      B.    Section 1129(a)(2): The Plan Proponents Have Complied With the
            Provisions of the Bankruptcy Code ...................................................... 18

      C.    Section 1129(a)(3): The Plan Has Been Proposed in Good Faith
            and Not by Any Means Forbidden by Law ............................................ 22

      D.    Section 1129(a)(4): The Plan Provides that Payments Made by the
            Debtors for Services or Costs and Expenses Are Subject to Court
            Approval ............................................................................................... 24

      E.    Section 1129(a)(5): The Plan Proponents Will Have Disclosed All
            Necessary Information Regarding Directors, Officers, and Insiders
            Prior to the Confirmation Hearing ........................................................ 25

      F.    Section 1129(a)(6): The Plan Does Not Contain Rate Changes
            Subject to the Jurisdiction of Any Governmental Regulatory
            Commission .......................................................................................... 27

      G.    Section 1129(a)(7): The Plan is in the Best Interests of the
            Debtors' Creditors and Interest Holders ................................................ 28

      H.    Section 1129(a)(8): The Plan Has Been Accepted by Impaired
            Classes, and, as to Such Classes, the Requirements of Section
            1129(a)(8) Have Been Satisfied ............................................................ 31

      I.    Section 1129(a)(9): The Plan Provides for Payment in Full of All
            Allowed Priority Claims ....................................................................... 33

      J.    Section 1129(a)(10): At Least One Class of Impaired Claims Has
            Accepted the Plan ................................................................................. 35

      K.    Section 1129(a)(11): The Plan Is Not Likely to Be Followed by
            Liquidation or the Need for Further Financial Reorganization ............... 35

      L.    Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid ...... 38

M.    Section 1129(a)(13) Is Inapplicable ........................................................... 39

N.    Sections 1129(a)(14), (15) and (16) Are Inapplicable ............................. 39

O.    Section 1146: The Debtors are not required to pay a stamp tax or any similar tax to the extent the Plan (i) issues, transfers, or exchanges any security or (ii) delivers of an instrument of transfer ........ 39

III.   THE PLAN SATISFIES THE "CRAM DOWN" REQUIREMENTS WITH RESPECT TO CLASS SEVEN CLAIMANTS BECAUSE THE PLAN DOES NOT DISCRIMINATE UNFAIRLY AND IS FAIR AND EQUITABLE ................................................................................................ 40

A.    The Plan Does Not Discriminate Unfairly ................................................ 41

B.    The Plan Is Fair and Equitable .................................................................. 42

IV.   THE RELEASE, EXCULPATION, AND INJUNCTION PROVISIONS OF THE PLAN SHOULD BE APPROVED ........................................................ 43

A.    The Releases of the Released Parties, the Exculpation, and the Injunction ................................................................................................... 43

B.    Standards for Approving the Releases, Exculpation, and Injunction ...... 45

C.    The Releases, the Exculpation, and the Injunction Are Reasonable and Should Be Approved ........................................................................... 49

V.    RESPONSE TO OBJECTIONS .......................................................................... 53

EXHIBIT A   Omnibus Response to Objections to the First Amended Joint Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Uno Restaurant Holdings Corporation and Its Affiliated Debtors and Debtors In Possession

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------x
                                               :

| | | |
|---|---|---|
| In re | : | **Chapter 11** |
| | : | |
| **UNO RESTAURANT HOLDINGS** | : | **Case No. 10-10209 (MG)** |
| **CORPORATION**, *et al.*, | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

--------------------------------------------------------------x

<div align="center">

**MEMORANDUM OF LAW
(A) IN SUPPORT OF CONFIRMATION
OF FIRST AMENDED JOINT CONSOLIDATED
PLAN OF REORGANIZATION UNDER CHAPTER 11
OF THE BANKRUPTCY CODE OF UNO RESTAURANT HOLDINGS
CORPORATION AND ITS AFFILIATED DEBTORS AND DEBTORS IN
POSSESSION DATED AS OF MAY 7, 2010 AND (B) RESPONSE TO OBJECTIONS**

**PRELIMINARY STATEMENT**

</div>

        1.      Uno Restaurant Holdings Corporation and its debtor affiliates, as debtors and debtors in possession (collectively, the **"Debtors"**), in the above-captioned chapter 11 cases (the **"Chapter 11 Cases"**), along with an informal group of the Debtors' prepetition senior secured noteholders (the **"Majority Noteholder Group"** and, together with the Debtors, the **"Plan Proponents"**), submit this Memorandum of Law in support of confirmation of the *First Amended Joint Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code of Uno Restaurant Holdings Corporation and Its Affiliated Debtors and Debtors In Possession* [Doc. No. 449] dated as of May 7, 2010 (the **"Plan"**), pursuant to section 1129 of title 11 of the United States Code (the **"Bankruptcy Code"**)[1], along with the Debtors' response to objections to the Plan.

---

[1] Capitalized terms used, but not otherwise defined herein, shall have the meanings ascribed to them in the Plan or the Disclosure Statement, as the case may be.

2.      The Plan is the culmination of extensive, good-faith negotiations among the Debtors, the Majority Noteholder Group, the official committee of unsecured creditors (the **"Creditors' Committee"**), the Senior Secured Notes Indenture Trustee, Centre Partners, the Prepetition Lenders, the Prepetition Administrative Agent, the DIP Lenders, and the DIP Agent and numerous other parties.  As described in greater detail in the *First Amended Disclosure Statement For The First Amended Joint Consolidated Plan Of Reorganization Under Chapter 11 Of the Bankruptcy Code For Uno Restaurant Holdings Corporation And Its Affiliated Debtors And Debtors In Possession* [Doc. No. 450] (the **"Disclosure Statement"**), the Debtors commenced their Chapter 11 Cases after extensive discussions among the Debtors and the Majority Noteholder Group.  The discussions resulted in the Debtors and the Majority Noteholder Group (along with Centre Partners) entering into the Restructuring Support Agreement, dated as of January 19, 2010 (as amended), pursuant to which the members of the Majority Noteholder Group agreed to support the Restructuring Transactions contemplated by the Plan and to vote to accept the Plan.  Under the Restructuring Support Agreement, the Plan Proponents agreed to sponsor a chapter 11 plan that allowed the Debtors to emerge from the Chapter 11 Cases as a going concern.  Under the Restructuring Support Agreement, the parties agreed that, among other things, (i) the Debtors' financial restructuring would be effectuated through a pre-negotiated chapter 11 case, (ii) the Debtors would use their best efforts to adhere to a negotiated timeline in an attempt to move expeditiously through the restructuring process, and (iii) subject to certain conditions, the parties to the Restructuring Support Agreement would support a proposed postpetition financing arrangement and consummation of the Plan.

3.	Following the Commencement Date, the Debtors engaged in extensive, arms'-length negotiations with the Creditors' Committee regarding the treatment of general unsecured claims under the Plan, among other things.  As a result of these negotiations, the Plan is supported by the Creditors' Committee.

4.	On May 11, 2010, this Court entered an order approving the Disclosure Statement (the **"Disclosure Statement Order"**) and ruled that the Disclosure Statement contains adequate information of a kind and in sufficient detail to enable a hypothetical investor of the relevant Classes under the Plan to make an informed judgment whether to accept or reject the Plan [Doc. No. 456].  Thereafter, the Debtors commenced their solicitation of votes to accept or reject the Plan.  As evidenced by the Vote Certification (defined below), the Classes of Claims entitled to vote on the Plan (the **"Claims"**) have, as a Class, overwhelmingly voted to accept the Plan.  The table below summarizes the certified results from the Plan solicitation process:

| CLASSES | TOTAL BALLOTS RECEIVED* | | | |
|---|---|---|---|---|
| | ACCEPT | | REJECT | |
| | AMOUNT | NUMBER | AMOUNT | NUMBER |
| **Class 4 – Senior Unsecured Notes Claims** | $69,991,797.28 | 11 | $0.00 | 0 |
| **Class 5 – General Unsecured Claims** | $64,313,096.22 | 222 | $31,108.93 | 17 |

* The results described in this chart are preliminary and are subject to final verification in the Vote Certification.

5.	Of all the creditors and parties in interest in these cases, the Debtors have received only three objections (one of which has since been withdrawn) to confirmation of the Plan (collectively, the **"Objections"**).  The Objections were filed by:

(a) The New York State Department of Taxation and Finance (Docket No. 435), withdrawn (Docket No. 441); (b) The Commonwealth of Pennsylvania, Department of Revenue (Docket No. 486); and (c) Carousel Center Company, L.P. and Cr ossgates Mall Company NewCo, LLC (Docket No. 492).[2]

6.     As discussed below and in the Omnibus Response to Objections to the First Amended Joint Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Uno Restaurant Holdings Corporation and Its Affiliated Debtors and Debtors In Possession, dated June 17, 2010 annexed hereto at Exhibit A (the **"Response"**), and as will be further demonstrated at the Confirmation Hearing, the Plan satisfies all of the confirmation requirements of the Bankruptcy Code, including sections 1122, 1123, 1125, 1126, and 1129.  Therefore, the Objections should be overruled to the extent not resolved prior to the Confirmation Hearing and the Plan should be confirmed.

**FACTS**

7.     The relevant facts regarding the Debtors' chapter 11 cases and the Plan are set forth in the Disclosure Statement, the Plan, in the declaration of Richard Klein of Jefferies & Company, Inc., in support of confirmation of Plan (the **"Klein Declaration"**) to be filed prior to the Confirmation Hearing, and in the testimony that may be adduced at the Confirmation Hearing.  These documents, and the testimony

---

[2] In addition, the Debtors have received seven objections to the specified Cure Amounts from Inland US Management, LLC (Docket No. 487); The Macerich Company (Docket No. 491); Woodfield Restaurant Court, L.L.C. (Docket No. 494); Simon Property Group, Inc. (Docket No. 495); General Growth Properties, Inc. (Docket No. 497); 107-18 Realty, LLC, 1775 Washington Street Holdings, LLC, and Union Station Investco, LLC (Docket No. 498); and R&F Clay, LLC (Docket No. 499).

adduced at the Confirmation Hearing, are hereby expressly incorporated by reference as if set forth fully and at length herein.

<center>**ARGUMENT**</center>

<center>**I.**</center>

<center>**THE PLAN PROPONENTS WILL SATISFY THEIR BURDEN OF
PROOF UNDER SECTION 1129 OF THE BANKRUPTCY CODE**</center>

8.      To obtain confirmation of the Plan, the Plan Proponents must

demonstrate that the Plan satisfies the applicable provisions of section 1129 of the

Bankruptcy Code by a preponderance of the evidence.  As set forth by the United States

Court of Appeals for the Fifth Circuit in *Heartland Federal Savings & Loan Ass'n v.*

*Briscoe Enter., Ltd. II* (*In re Briscoe Enter., Ltd. II*):

> The combination of legislative silence, Supreme Court
> holdings, and the structure of the [Bankruptcy] Code leads
> this Court to conclude that preponderance of the evidence
> is the debtor's appropriate standard of proof under both §
> 1129(a) and in a cramdown.

994 F.2d 1160, 1165 (5th Cir. 1993).  Courts in this jurisdiction follow this ruling by the

Fifth Circuit.  *See, e.g. In re Spiegel, Inc.*, No. 03-11540 (BRL), 2005 WL 1278094, at *4

(Bankr. S.D.N.Y. May 25, 2005) ("The Debtors, as proponents of the Plan, have met their

burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a

preponderance of the evidence."); *In re WorldCom, Inc.*, Case No. 02-13533 (AJG), 2003

Bankr. LEXIS 1401, at *136 (Bankr. S.D.N.Y. Oct. 31, 2003) ("A debtor, as the

proponent of the Plan, bears the burden of proof under section 1129 of the Bankruptcy

Code.  A debtor must meet this burden by a preponderance of the evidence."); *see also In*

*re Penn Traffic Co.*, No. 03-22945 (ASH), 2005 Bankr. LEXIS 785, at *10 (Bankr.

S.D.N.Y. Mar. 11, 2005) ("The Debtors, as proponents of the Plan, have met their burden

of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code . . . by a

preponderance of the evidence, which is the applicable evidentiary standard in this Court

for confirmation of the Plan."); *In re Kent Terminal Corp.*, 166 B.R. 555, 561 (Bankr. S.D.N.Y. 1994) ("Notwithstanding this time-sensitive evidentiary burden, the final burden of proof at both the relief from stay and confirmation hearings remains a preponderance of the evidence."); 5 *Collier on Bankruptcy* ¶ 1129.02[4], at 1129-22 (15th rev. ed. 1993) ("[T]he proponent bears the burden of both introduction of evidence and persuasion that each subsection of section 1129(a) has been satisfied.").

9.     Through filings with the Bankruptcy Court and testimonial evidence which may be adduced at the Confirmation Hearing, the Plan Proponents will demonstrate, by a preponderance of the evidence, that all subsections of section 1129 of the Bankruptcy Code have been satisfied with respect to the Plan.

## II.
### THE PLAN SATISFIES THE REQUIREMENTS
### UNDER SECTION 1129(A) OF THE BANKRUPTCY CODE

**A.     Section 1129(a)(1):  The Plan Complies With
All Applicable Provisions of the Bankruptcy Code**

10.     Pursuant to section 1129(a)(1), a plan must "compl[y] with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(l).[3]     As demonstrated below, the Plan complies fully with the requirements of sections 1122 and 1123, as well as with all other provisions of the Bankruptcy Code.

**1.     Section 1122: Classification of Claims and Interests**

11.     Section 1122, in pertinent part, provides:

---

[3]     *In re Johns-Manville Corp.*, 68 B.R. 618, 629 (Bankr. S.D.N.Y. 1986), *aff'd in part, rev'd in part on other grounds*, 78 B.R. 407 (S.D.N.Y. 1987), *aff'd, Kane v. Johns-Manville Corp.*, 843 F.2d 636 (2d Cir. 1988); *In re Toy & Sports Warehouse, Inc.*, 37 B.R. 141, 149 (Bankr. S.D.N.Y. 1984).  The legislative history of section 1129(a)(1) explains that this provision encompasses the requirements of sections 1122 and 1123 governing classification of claims and contents of the plan, respectively.  *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978).

(a) Except as provided in subsection (b) of this section, a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.

11 U.S.C. § 1122(a).  Under this section, a plan may provide for multiple classes of Claims or interests as long as each Claim or interest within a class is substantially similar to other Claims or interests in that class.

12.  The Plan provides for the separate classification of Claims and Interests against the Debtors.  Collectively, the Plan designates seven Classes based upon differences in the legal nature and/or priority of such Claims and Interests. Administrative Expense Claims, DIP Financing Claims, Professional Compensation and Reimbursement Claims, and Priority Tax Claims (the **"Unclassified Claims"**) are not classified and are separately treated.  The other Classes are as follows:

- **Class 1**.  Class 1, "Priority Non-Tax Claims," provides for the separate classification of Claims that are entitled to priority in payment under the Bankruptcy Code other than Administrative Expense Claims and Priority Tax Claims.  The Debtors estimate that on the Effective Date, there will be no allowed Claims in Class 1.

- **Class 2**.  Class 2, "Secured Tax Claims," provides for the separate classification of Secured Claims that, absent their secured status, would be entitled to priority in right of payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.  The Debtors estimate that on the Effective Date, there will be no allowed Claims in Class 2.

- **Class 3**.  Class 3, "Other Secured Claims," provides for the separate classification of all Secured Claims other than Secured Tax Claims, Prepetition Credit Agreement Claims or Senior Note Claims.  The Debtors estimate that on the Effective Date, the allowed amount of these Claims will aggregate approximately $41,133,944.

- **Class 4**.  Class 4, "Senior Secured Notes Claims," provides for the separate classification of Secured Claims held by Senior Secured Noteholders arising under that certain Indenture, dated as of February 22, 2005, among URHC, Holdings II, U.S. Bank National Association, as

Trustee and other parties thereto. The Debtors estimate that on the Effective Date, the allowed amount of these Claims will aggregate approximately $82,139,134.

- **Class 5**. Class 5, "General Unsecured Claims," provides for the separate classification of any and all Claims against the Debtors other than Unclassified Claims, Priority Non-Tax Claims, Secured Tax Claims, Other Secured Claims, Senior Secured Notes Claims, Subordinated Claims, Intercompany Claims, Intercompany Interests, and Interest. The Debtors estimate that on the Effective Date, the allowed amount of these claims will aggregate approximately $74,885,653.

- **Class 6**. Class 6, "Subordinated Claims," provides for the separate classification of all Allowed Subordinated Claims. The Debtors estimate that on the Effective Date, there will be no allowed Claims in Class 6.

- **Class 7**. Class 7, "Intercompany Claims," provides for the separate classification of all Allowed Intercompany Claims. The Debtors estimate that on the Effective Date, there will be no allowed Claims in Class 7.

- **Class 8**. Class 8, "Intercompany Interests," provides for the separate classification of all Allowed Intercompany Interests. The Debtors estimate that on the Effective Date, there will be no allowed Claims in Class 8.

- **Class 9**. Class 9, "Interests," provides for the separate classification of all Allowed Interests. The Debtors estimate that on the Effective Date, the Allowed Interests will aggregate approximately 50,452.908 shares and 6,022.285 units of warrants.

13. Each of the Claims or Interests in each particular Class is substantially similar to the other Claims or Interests in such class. Accordingly, the Plan Proponents' classification of Claims and Interests does not prejudice the rights of holders of such Claims and Interests. *See In re Holywell Corp.*, 913 F.2d 873, 880 (11th Cir. 1990) (plan proponent allowed considerable discretion to classify Claims and Interests according to facts and circumstances of case so long as classification scheme does not violate basic priority rights or manipulate voting). The Plan Proponents submit that they, as plan proponents, have considerable discretion to classify Claims. For example, the Plan Proponents' classification of general unsecured claims, regardless of origin, is

within their discretion. The classification of Claims and Interests in the Plan complies with section 1122 of the Bankruptcy Code.

**2.      Section 1123: Contents of the Plan**

14.      Section 1123(a) sets forth seven requirements applicable to the Plan.[4]  11 U.S.C. § 1123(a).  As demonstrated herein, the Plan complies fully with each such requirement.  Section 1123(b) sets forth the permissive provisions that may be incorporated into a chapter 11 plan.  11 U.S.C. § 1123(b).  Each such provision of the Plan is consistent with section 1123(b).

**a.      Section 1123(a)(1): Designation of Classes of Claims and Interests**

15.      Section 1123(a)(1) requires that the Plan must designate classes of claims and Interests subject to section 1122 of the Bankruptcy Code.  11 U.S.C. § 1123(a)(1).  As discussed above, Article VI of the Plan designates Classes of Claims and Classes of Interests subject to section 1122.  Section 1123(a)(1) excludes Claims specified in sections 507(a)(2), 507(a)(3), and 507(a)(8) of the Bankruptcy Code from the classification requirement.  Accordingly, the unclassified Claims set forth in the Plan need not be classified and must only be designated.  *See In re Armstrong World Indus., Inc.*, 348 B.R. 136 (D. Del. 2006) (Section 1123(a)(1) does not require a plan to designate classes of administrative expenses and priority tax claims).  Accordingly, the unclassified Claims are designated in Article VI.B.1 of the Plan.

---

[4]      The eighth requirement set forth in section 1123 of the Bankruptcy Code is only applicable to individual debtors and does not apply to the Plan.

### b. Section 1123(a)(2): Classes that Are Not Impaired Under the Plan

16. Section 1123(a)(2) requires the Plan to specify which classes of claims or interests are unimpaired under the Plan. 11 U.S.C. § 1123(a)(2). Article VI.B of the Plan specifies that Classes 1, 2, 3, 7 and 8, each of which separately classifies Claims against or Interests in the Debtors, are Unimpaired under the Plan.

### c. Section 1123(a)(3): Treatment of the Classes that Are Impaired Under the Plan

17. Section 1123(a)(3) requires that the plan specify how the classes of claims or interests that are impaired under the plan will be treated. 11 U.S.C. § 1123(a)(3). Article VI.B.2 of the Plan sets forth the treatment of each Class of Claims and Interests that is Impaired under the Plan as required by section 1123(a)(3).

### d. Section 1123(a)(4): Equal Treatment Within Each Class

18. Section 1123(a)(4) requires that the Plan provide the same treatment for each claim or interest against the Debtors within a particular class unless such claim or interest holder agrees to receive less favorable treatment than other class members. 11 U.S.C. § 1123(a)(4). It is well established that "[e]quality of treatment has two aspects. Absent consent to accept less favorable treatment, all members of the class must receive equal value. In addition, each member of the class must pay the same consideration for its distribution." *In re Quigley Co.*, 377 B.R. 110, 116 (Bankr. S.D.N.Y. 2007).

19. In either case, section 1123(a)(4) focuses solely upon the treatment of claims belonging to creditors within a single class. This provision does **not** affect claims or defenses belonging to the estate. Accordingly, a plan need not treat every claim

within a class as fully liquidated and undisputed before it satisfies the "same treatment" standard. *In re Dow Corning Corp.*, 244 B.R. 634, 667-668 (Bankr. E.D. Mich. 1999); *see also Bustop Shelters of Louisville, Inc. v. Classic Homes, Inc.*, 914 F.2d 810, 814 n.7 (6th Cir. 1990) (escrowing one class member's payments pending the outcome of disputes over the claim's validity does not violate section 1123(a)(4)).

20.     Under the Plan, the treatment of each Claim against or Interest in each Debtor, in each respective Class, is the same as the treatment of each other Claim or Interest in such Class.

**e.     <u>Section 1123(a)(5): Adequate Means for Implementation</u>**

21.     Section 1123(a)(5) requires that chapter 11 plans provide adequate means for their own implementation. 11 U.S.C. § 1123(a)(5). The Plan, together with the documents and agreements included in the Plan Supplement, provides the means for implementation of the Plan as required by section 1123(a)(5) of the Bankruptcy Code. Specifically, Article VI.C of the Plan provides for, among other things: (i) the Claims Purchase; (ii) the substantive consolidation of the Debtors for Plan purposes only; (iii) the Restructuring Transactions; (iv) certain corporate actions; (v) the Rights Offering; (vi) the issuance of New Second Lien Notes; (vii) the issuance of New Common Stock; (viii) the entry into New First Lien Credit Agreement; (ix) the cancellation of existing notes, instruments, and equity interests; (x) consummation of the Management Incentive Plan; (xi) the cancellation of Liens; (xii) the compromise of controversies; and (xiii) the payment of the costs and expenses of reorganization.

22.     Finally, Section VI.H of the Plan provides all property in the Debtors' Estates, including Retained Causes of Action, and any property acquired by any

of the Debtors pursuant to the Plan shall vest in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens, if any, expressly granted pursuant to the Plan). On and after the Effective Date, the Reorganized Debtors may operate their businesses and may use, acquire, or dispose of property and compromise or settle any Causes of Action or interests without supervision or approval by the Bankruptcy Court and free of any restrictions of the Bankruptcy Code or Bankruptcy Rules.

23.     In addition, the Plan Supplement, filed on or about June 4, 2010 (as may be amended, modified or supplemented from time to time), includes certain documents and agreements necessary to consummate the terms of the Plan including, without limitation: (i) the Claims Purchase Schedule; (ii) the Claims Purchasing Agreement; (iii) a schedule of executory contracts and unexpired leases to be rejected; (iv) a schedule of executory contracts and unexpired leases to be assumed and related Cure Amounts; (v) the Master Restructuring Agreement; (vi) certain exit financing terms; (vii) the Stockholders' Agreement; (viii) the Amended and Restated Certificate of Incorporation of New Uno; (ix) the Amended and Restated Bylaws of New Uno; (x) the Consulting Agreement; (xi) the Management Incentive Plan; (xii) the Advisory Services Agreement with Twin Haven Capital Partners; (xiii) the Advisory Services Agreement with Coliseum Capital Management, LLC; and (xiv) a list of members of Initial Board of Directors for New Uno. Section 1123(a)(5) specifically contemplates the consolidation of the Debtor with one or more persons. Here, the Plan provides for the consolidation, for Plan purposes only, of all of the Debtors. This substantive consolidation is essential for the administrative ease of these cases, but as will be demonstrated in the Klein

Declaration, the mechanism provides the means for implementation of the Plan with no adverse consequences on the individual creditors of any particular estate. Accordingly, the Plan, combined with the Plan Supplement, satisfies the requirements of section 1123(a)(5).

### f. Section 1123(a)(6): Amendment of the Reorganized Debtors' Charters

24. Section 1123(a)(6) prohibits the issuance of nonvoting equity securities and requires amendment of the Debtors' charters to so provide. 11 U.S.C. § 1123(a)(6). The Amended and Restated Certificate of Incorporation of New Uno and the Amended and Restated Bylaws of New Uno, as provided in the Plan Supplement, conform to section 1123(a)(6)'s prohibition on the issuance of nonvoting equity securities and do not permit New Uno to issue nonvoting equity securities to the extent disallowed by section 1123(a)(6). No other Reorganized Debtor will issue securities under the Plan and therefore section 1123(a)(6) is inapplicable as to those entities. In any event, the charter of each Reorganized Debtor that is a corporation will be revised to prohibit the issuance of non-voting securities. Consequently, the applicable postconfirmation organizational documents comply with the requirements of section 1123(a)(6) of the Bankruptcy Code.

### g. Section 1123(a)(7): The Plan's Provisions Regarding Director and Officer Selection Are Consistent with Public Policy

25. Section 1123(a)(7) provides that chapter 11 plans must set forth provisions for the selection of officers and directors for the reorganized entities consistent with the interests of creditors and equity security holders. 11 U.S.C. § 1123(a)(7). Section VI.C.4 of the Plan sets forth provisions regarding the manner of selection of New

Board that are consistent with the interests of creditors, equity security holders, and public policy in accordance with section 1123(a)(7). Pursuant to Section VI.C.4 of the Plan, the board of directors of New Uno shall consist of seven (7) directors, one of whom shall be Frank Guidara (so long as he remains the chief executive officer of New Uno), four (4) directors selected by Twin Haven, one (1) director selected by Coliseum, and one (1) director selected by Newport. On the Effective Date, the current members of Uno Restaurant Holdings Corporation's board of directors not identified as members of the New Board shall resign. The Plan Supplement, at Schedule 14, identifies the list of initial board members of New Uno. Prior to the Confirmation Hearing, a full list of directors of the New Board will be disclosed, satisfying the standards of section 1123(a)(7). The board of directors of each of the Reorganized Debtors, other than New Uno, will remain as they were as of the Petition Date. With respect to officers of the Reorganized Debtors, Article V Section 5.3(d) of the Plan provides that the officers of each Reorganized Debtor shall remain as they were as of the Petition Date.

### h. Section 1123(b)(1): The Plan Impairs Certain Classes and Leaves Others Unimpaired

26. Section 1123(b)(1) provides that a plan may "impair or leave unimpaired any class of claims, secured or unsecured, or of interests." 11 U.S.C. § 1123(b)(1). The Plan is consistent with section 1123(b)(1) of the Bankruptcy Code. Articles II.A and VI.B of the Plan list Classes 1, 2, 3, 7 and 8 as Unimpaired and Classes 4, 5, 6, and 9 as Impaired.

### i. Section 1123(b)(2): Treatment of Executory Contracts and Unexpired Leases

27.     Section 1123(b)(2) allows a Plan to provide for assumption, assumption and assignment, or rejection of executory contracts and unexpired leases pursuant to section 365 of the Bankruptcy Code.  11 U.S.C. § 1123(b)(2).  Section VI.F of the Plan provides for the assumption of all executory contracts and unexpired leases that exist between the Debtors and any other person or entity prior to the Commencement Date except for contracts and leases that are expressly rejected under the circumstances described in Section VI.F.1 of the Plan.  Schedule 3 of the Plan Supplement identifies executory contracts and unexpired leases to be rejected by the Debtors pursuant to the Plan, and Schedule 4 of the Plan Supplement identifies executory contracts and unexpired leases to be assumed by the Debtors pursuant to the Plan.

**j.      Section 1123(b)(3): Settlement or
Retention of Claims or Interests**

28.     Section 1123(b)(3) provides that a plan may provide for settlement or retention of any claim or interest belonging to the debtor.  11 U.S.C. § 1123(b)(3).  Article V Section 10.7 provides that, except with respect to Released Actions, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or the relinquishment of any rights of Causes of Action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of their respective Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law.  Except with respect to Released Actions, the Plan also provides at Article V Section 10.7 that nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or relinquishment of any Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately

prior to the Petition Date, against or with respect to any Claim left Unimpaired by the Plan.

29.     The Plan also provides for the Claims Purchase, a settlement of potential claims that the Creditors' Committee may be able to assert on behalf of the Debtors' Estates against the Senior Secured Noteholders.  This settlement is exactly what was contemplated by 11 U.S.C. § 1223(b)(3).

### k.     <u>Section 1123(b)(6): Other Appropriate Provisions</u>

30.     Section 1123(b)(6) is a catchall provision which permits inclusion of any appropriate provision as long as it is consistent with applicable provisions of the Bankruptcy Code.  11 U.S.C. § 1123(b)(6).  Article VI.I of the Plan provides that, among other things, the Court shall retain jurisdiction as to all matters involving the Plan and the Claims allowance and distribution process.  These provisions are appropriate because the Court would have otherwise had jurisdiction over all of these matters during the pendency of the Debtors' chapter 11 cases.  Moreover, case law establishes that a bankruptcy court may retain jurisdiction over the debtor or the property of the estate following confirmation.  *See Universal Oil Ltd. v. Allfirst Bank* (*In re Millenium Seacarriers, Inc.*), 419 F.3d 83, 96 (2d Cir. 2005) ("a bankruptcy court retains post-confirmation jurisdiction to interpret and enforce its own orders, particularly when disputes arise over a bankruptcy plan of reorganization.") (quoting *In re Petrie Retail*, 304 F.3d 223 (2d Cir. 2002)).  Accordingly, the continuing jurisdiction of the Court is consistent with applicable law and therefore permissible under section 1123(b)(6) of the Bankruptcy Code.

31.     Based upon the foregoing, the Plan complies fully with the requirements of sections 1122 and 1123 of the Bankruptcy Code, as well as with all other provisions of the Bankruptcy Code, and thus satisfies the requirement of section 1129(a)(1) of the Bankruptcy Code.

**B.      Section 1129(a)(2): The Plan Proponents Have
Complied With the Provisions of the Bankruptcy Code**

32.     Section 1129(a)(2) requires that the plan proponent comply "with the applicable provisions of [the Bankruptcy Code]." 11 U.S.C. § 1129(a)(2).[5] The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, including the provisions of sections 1125 and 1126 regarding disclosure and plan solicitation.

**1.      Compliance with Section 1125**

33.     Section 1125, in pertinent part, provides:

(b)      An acceptance or rejection of a plan may not be solicited after the commencement of the case under [the Bankruptcy Code] from a holder of a claim or interest with respect to such claim or interest, unless, at the time of or before such solicitation, there is transmitted to such holder the plan or a summary of the plan, and a written disclosure statement approved, after notice and a hearing, by the court as containing adequate information. . . .

(c)      The same disclosure statement shall be transmitted to each holder of a claim or interest of a particular class, but there may be transmitted different

---

[5]      *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 723, 759 (Bankr. S.D.N.Y. 1992). The legislative history to section 1129(a)(2) reflects that this provision is intended to encompass the disclosure and solicitation requirements under sections 1125 and 1126; *See* H.R. Rep. No. 95-595, at 412 (1977); S. Rep. No. 95-989, at 126 (1978) ("Paragraph (2) [of § 1129(a)] requires that the proponent of the plan comply with the applicable provisions of chapter 11, such as section 1125 regarding disclosure.").

> disclosure statements, differing in amount, detail, or kind of information, as between classes.

11 U.S.C. § 1125.   The Court, in the Disclosure Statement Order, approved the Disclosure Statement pursuant to section 1125(b) of the Bankruptcy Code as containing "adequate information" of a kind and in sufficient detail to enable hypothetical, reasonable investors typical of the Debtors' creditors and equity interest holders to make an informed judgment whether to accept or reject the Plan.

34.    Accordingly, on May 11, 2010, the Debtors commenced their solicitation of votes to accept or reject the Plan.   The manner in which votes were solicited in respect of the Plan are described in the *Affidavit of Service of Shakira L. Ferguson* with respect to Plan and Disclosure Statement [Docket No. 476] (the **"Solicitation Affidavit"**).   Specifically, the Solicitation Affidavit states that (i) the Disclosure Statement (which includes as an exhibit a copy of the Plan), together with the additional solicitation materials approved by the Court in the Disclosure Statement Order, were transmitted to each creditor or interest holder that was entitled to vote to accept or reject the Plan (the **"Solicitation Package"**); and (ii) certain non-voting materials approved by the Court in the Disclosure Statement Order were provided to holders of Claims and Interests that were not entitled to vote to accept or reject the Plan, in compliance with the Disclosure Statement Order.   The Debtors did not solicit acceptance of the Plan by any creditor or equity interest holder prior to the transmission of the Solicitation Packages.

35.    The deadline for voting to accept or reject the Plan (the **"Voting Deadline"**) was June 14, 2010,[6] and, Kurtzman Carson Consultants LLC (**"KCC"**), the Debtors' solicitation agent, will shortly be filing a declaration certifying the ballots accepting or rejecting the Plan (the **"Vote Certification"**).  The Vote Certification will describe the methodology for the tabulation and results of voting with respect to the Plan. The results of the vote in respect of the Plan are discussed in more detail below.

### 2.    Compliance With Section 1126

36.    Section 1126 specifies the requirements for acceptance of a plan of reorganization.  Under section 1126, only holders of allowed claims and allowed equity interests in impaired classes of claims or equity interests that will receive or retain property under a plan on account of such claims or equity interests may vote to accept or reject such plan.  As set forth in section 1126:

(a)    The holder of a claim or interest allowed under section 502 of [the Bankruptcy Code] may accept or reject a plan. . . .

(f)    Notwithstanding any other provision of this section, a class that is not impaired under a plan, and each holder of a claim or interest of such class, are conclusively presumed to have accepted the plan, and solicitation of acceptances with respect to such class from the holders of claims or interests of such class is not required.

(g)    Notwithstanding any other provision of this section, a class is deemed not to have accepted a plan if such plan provides that the claims or interests of such class do not entitle the holders of such claims or interests to receive or retain any property under the plan on account of such claims or interests.

---

[6]  The Debtors reserve the right to request the acceptance of certain ballots that were received subsequent to the Voting Deadline.

11 U.S.C. §§ 1126(a), (f) and (g).

37.     As set forth in the Disclosure Statement Order and the Vote Certification, in accordance with section 1126 of the Bankruptcy Code, the Debtors solicited acceptances of the Plan from the holders of all Claims against the Debtors, in each Class of Impaired Claims.  The Impaired Classes entitled to vote under the Plan are Classes 4 and 5.  The Plan reflects that Classes 1, 2, 3, 7 and 8 are Unimpaired, and thus, are conclusively presumed to have accepted the Plan, and (ii) Classes 6 and 9 are Impaired and will not receive or retain any interest or property under the Plan, and thus, are deemed to have rejected the Plan.  Consequently, Classes 1, 2, 3, 6, 7 and 9 are not entitled to vote.  Based upon the foregoing, the Debtors have satisfied the requirements of section 1129(a)(2) as they relate to the nonvoting Classes.

38.     As to impaired classes entitled to vote to accept or reject a plan of reorganization, section 1126(c) of the Bankruptcy Code specify the requirements for acceptance of a plan by classes of Claims:

>     (c)     A class of claims has accepted a plan if such plan has been accepted by creditors, other than any entity designated under subsection (e) of this section, that hold at least two-thirds in amount and more than one-half in number of the allowed claims of such class held by creditors, other than any entity designated under subsection (e) of this section, that have accepted or rejected such plan.

11 U.S.C. § 1126(c).

39.     As evidenced in the Vote Certification, the Plan has been accepted by creditors holding well in excess of two-thirds in amount and one-half in number of the Allowed Claims voted in each of the Classes of Claims against the Debtors.

40.     As set forth above, the holders of Claims and Interests in Classes 6 and 9 will receive no recoveries under, and thus are deemed to have rejected, the Plan. Nevertheless, as set forth below, pursuant to section 1129(b) of the Bankruptcy Code, the Plan may be confirmed over the deemed rejection of Classes 7 and 9 because the Plan does not discriminate unfairly and is fair and equitable with respect to such Class. *See* 11 U.S.C. §1129(b).

41.     Based upon the foregoing, the Plan Proponents submit that the requirements of section 1129(a)(2) of the Bankruptcy Code have been satisfied.

### C.     Section 1129(a)(3): The Plan Has Been Proposed in Good Faith and Not by Any Means Forbidden by Law

42.     Section 1129(a)(3) requires that a plan be "proposed in good faith and not by any means forbidden by law." 11 U.S.C. § 1129(a)(3). The Second Circuit has defined the good-faith standard as requiring a showing that "the plan was proposed with honesty and good intentions." *Kane v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 843 F.2d 636, 649 (2d Cir. 1988) (citing *Koelbl v. Glessing* (*In re Koelbl*), 751 F.2d 137, 139 (2d Cir. 1984)) (quoting *Manati Sugar Co. v. Mock*, 75 F.2d 284, 285 (2d Cir. 1935). In the context of a chapter 11 plan, courts have held that "a plan is proposed in good faith if there is a likelihood that the plan will achieve a result consistent with the standards prescribed under the Code." *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 at *151-152; *see also In re Leslie Fay Cos.*, 207 B.R. 764, 781 (Bankr. S.D.N.Y. 1997) (quoting *In re Texaco Inc.*, 84 B.R., 893, 907 (Bankr, S.D.N.Y.), *appeal dismissed*, 92 B.R. 38 (S.D.N.Y. 1988), *overruled on other grounds*, 438 U.S. 1 (1987)); *In re Zenith Elecs. Corp.*, 241 B.R. 92, 107 (Bankr. D. Del. 1999). Moreover, "[w]here the plan is proposed with the legitimate and honest purpose to reorganize and has a reasonable hope

of success, the good faith requirement of section 1129(a)(3) is satisfied." *In re Sun Country Dev., Inc.*, 764 F.2d 406, 408 (5th Cir. 1985). The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a chapter 11 plan. *Id.*

43. Each Debtor is the proponent for the Plan with respect to each Debtor's Estate. Each Debtor has met its good faith obligation under the Bankruptcy Code. Each Debtor has proposed the Plan with the honest purpose of reorganizing and expeditiously distributing value to creditors. The Plan (including all documents necessary to effectuate the Plan, including, but not limited to, those contained in the Plan Supplement) is the result of extensive arms'-length negotiations among the Plan Proponents, the Creditors' Committee, the Senior Secured Notes Indenture Trustee, Centre Partners, the Prepetition Lenders, the Prepetition Administrative Agent, the DIP Lenders, and the DIP Agent. All of these parties support confirmation of the Plan. The Plan provides for a distribution of the value of the Debtors' Estates to their creditors in accordance with the priorities and provisions of the Bankruptcy Code.

44. Moreover, the Plan achieves the primary objectives underlying a chapter 11 bankruptcy – the reorganization of the debtor and the distribution of value to creditors for amounts owing. *See N.L.R.B. v. Bildisco & Bildisco*, 465 U.S. 513, 528 (1984) ("The fundamental purpose of reorganization is to prevent a debtor from going into liquidation, with an attendant loss of jobs and possible misuse of economic resources."); *Pereira v. Foong* (*In re Ngan Gung Rest.*), 254 B.R. 566, 570 (Bankr. S.D.N.Y. 2000) (stressing the importance of payment of creditors in chapter 11 cases).

45.     The Plan accomplishes these goals by providing the means through which each Debtor may continue to operate as a viable entity and effectuate prompt distributions to its creditors.  Inasmuch as the Plan promotes the rehabilitative objectives and purposes of the Bankruptcy Code and has garnered the overwhelming support of all of the parties voting on the Plan, the Plan, and all documents necessary to effectuate the Plan, including, but not limited to, the Plan Supplement, have been filed in good faith and each Debtor has satisfied its obligations under section 1129(a)(3).

**D.     Section 1129(a)(4): The Plan Provides that Payments Made by the Debtors for Services or Costs and Expenses Are Subject to Court Approval**

46.     Section 1129(a)(4) requires that certain professional fees and expenses paid by the plan proponent, the debtor, or a person receiving distributions of property under the plan, be subject to approval by the Court.  11 U.S.C. § 1129(a)(4). Section 1129(a)(4) requires that all payments of professional fees that are made from estate assets are subject to review and approval as to their reasonableness by the Court. *See In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 760; *In re Johns-Manville Corp.*, 68 B.R. at 632; 5 *Collier on Bankruptcy* ¶ 1129.02[4], at 1129-33 (15th ed. rev. 1993).

47.     Pursuant to the interim application procedures established in these chapter 11 cases and section 331 of the Bankruptcy Code, the Court has authorized and approved the payment of certain fees and expenses of professionals retained in these chapter 11 cases.  All such fees and expenses, as well as all other accrued fees and expenses of professionals through the Effective Date, remain subject to final review by the Court for reasonableness under section 330.  In addition, pursuant to sections

503(b)(3) and (4), the Court must review any application for substantial contribution to ensure compliance with the statutory requirements and that the fees requested are reasonable.

48.     Section VI.B.1 of the Plan requires that all entities seeking an award of compensation or reimbursement through the Confirmation Date pursuant to sections 330, 331, or 503(b)(2), (3), (4), or (5) of the Bankruptcy Code for services rendered or reimbursement of expenses incurred through and including the Effective Date must file their final applications for allowance of such compensation or reimbursement no later than 45 days after the Effective Date of the Plan.

49.     The foregoing procedures for the Court's review and ultimate determination of the fees and expenses to be paid by the Debtors satisfy the objectives of section 1129(a)(4).  *See In re Elsinore Shore Assocs.*, 91 B.R. 238, 268 (Bankr. D.N.J. 1988) (requirements of section 1129(a)(4) satisfied where plan provided for payment of only "allowed" administrative expenses); *In re Future Energy Corp.*, 83 B.R. 470, 488 (Bankr. S.D. Ohio 1988) ("Court approval of payments for services and expenses is governed by various Code provisions -- e.g., §§ 328, 329, 330, 331, and 503(b) -- and need not be explicitly provided for in a Chapter 11 plan."); 5 *Collier on Bankruptcy* ¶ 1129.02[4], at 1129-33, 1129-34 (15th ed. rev. 1993).  Based upon the foregoing, the Plan complies with the requirements of section 1129(a)(4) of the Bankruptcy Code.

**E.      Section 1129(a)(5): The Plan Proponents
Will Have Disclosed All Necessary Information Regarding
Directors, Officers, and Insiders Prior to the Confirmation Hearing**

50.     Section 1129(a)(5) requires that the plan proponent (i) disclose the identity and affiliations of the proposed officers and directors of the Reorganized

Debtors; (ii) that the appointment or continuance of such officers and directors be consistent with the interests of creditors and equity security holders and with public policy; and (iii) that there be disclosure of the identity and the nature of the compensation of any insiders to be retained or employed by the Reorganized Debtors. 11 U.S.C. § 1129(a)(5).

51. The Plan Proponents will satisfy the foregoing requirements prior to the Confirmation Hearing. The methodology for selection of the New Board is set out in Article VI.C.4 of the Plan. The Debtors filed with the Bankruptcy Court, as part of the Plan Supplement, a preliminary list of directors of New Uno. In accordance with Article VI.C.4 of the Plan, the board of directors of New Uno will consist of seven (7) directors, including Frank Guidara, four (4) directors selected by Twin Haven, one (1) director selected by Coliseum, and one (1) director selected by Newport. Such disclosure complies with section 1129(a)(5)(A)(i) of the Bankruptcy Code. *See, e.g. In re W.E. Parks Lumber Co.*, 19 B.R. 285, 290-91 (W.D. La. 1982) (The bankruptcy court confirmed a plan in which the identity of three directors on the postconfirmation board would be nominated by a creditor, and the identity of the other four members of the board were revealed at the confirmation hearing). Prior to the Confirmation Hearing, the Plan Proponents will file a supplemental list disclosing all directors of the board of directors of New Uno. The boards of directors of each of the other Debtors shall remain as they were as of the Petition Date. With respect to officers of the Reorganized Debtors, Article V Section 5.3(d) of the Plan provides that all existing executive officers of URHC are expected to serve in their existing capacities as officers of New Uno. The officers of

each Reorganized Debtor other than New Uno shall remain as they were as of the Petition Date.

52. The employment of the officers is consistent with the interests of creditors and is essential to the ongoing viability of the Debtors' businesses. The current, continuing officers of the Debtors are intimately familiar with the Debtors' businesses and are necessary to maintain critical business relationships with lenders, suppliers, customers, and other parties.

53. Pursuant to Article V Section 5.11 of the Plan, as of the Effective Date, New Uno shall establish the Management Incentive Plan, which shall provide for 10% of the New Common Stock (on a fully diluted basis) to be available for issuance to the officers and key employees of the Reorganized Debtors and its affiliates. "Section 1129(a)(5)(B) requires a plan to disclose the identity of any 'insider' to be employed or retained by the reorganized debtor and the 'nature of compensation' for such insider." *In re Drexel Burnham Lambert Group*, 138 B.R. 723, 760 (Bankr. S.D.N.Y. 1992). Therefore, the Plan Proponents need not disclose the nature of compensation for those directors and officers of the Reorganized Debtors who are not insiders of the Debtors under section 1129(a)(5). The Management Incentive Plan, at Schedule 11 to the Plan Supplement, further describes the nature of compensation that will be made available to officers and other employees of the Reorganized Debtors, including insiders if any. Consequently, the Plan Proponents have satisfied the requirements of section 1129(a)(5) of the Bankruptcy Code.

**F.** **Section 1129(a)(6): The Plan Does Not Contain**
**Rate Changes Subject to the Jurisdiction**
**of Any Governmental Regulatory Commission**

54.     Section 1129(a)(6) requires that any regulatory commission having

jurisdiction over the rates charged by the reorganized debtor in the operation of its

businesses approve any rate change provided for in the plan.  11 U.S.C. § 1129(a)(6).

This provision is inapplicable to the Debtors, whose rates are not subject to the

jurisdiction of any governmental regulatory agency.

**G.** **Section 1129(a)(7): The Plan is in the Best**
**Interests of the Debtors' Creditors and Interest Holders**

55.     Section 1129(a)(7) requires that a plan be in the best interests of

creditors and stockholders.  Specifically, section 1129(a)(7)(A) provides:

> With respect to each impaired class of claims or
> interests – (A) each holder of a claim or interest of
> such class –
>
> (i)      has accepted the plan; or
>
> (ii)     will receive or retain under the plan on
>          account of such claim or interest property of
>          a value, as of the effective date of the plan,
>          that is not less than the amount that such
>          holder would so receive or retain if the
>          debtor were liquidated under chapter 7 of
>          this title on such date.

11 U.S.C. § 1129(a)(7)(A).

56.     The best interests test focuses on individual dissenting parties

rather than classes of claims.  *See Bank of Am. Nat'l Trust & Sav. Ass'n v. 203 N. LaSalle*

*St. P'ship*, 526 U.S. 434 (1999).  The test requires that each holder of a claim or equity

interest either accept the plan or receive or retain under the plan property having a present

value, as of the effective date, not less than the amount such holder would receive or retain if the debtor were liquidated under chapter 7 of the Bankruptcy Code.

57.     Under the best interests test, the court must find that each non-accepting creditor will receive or retain value that is not less than the amount he would receive if the debtor were liquidated.  *See N. LaSalle St. P'ship*, 526 U.S. at 442; *see also United States v. Reorganized CF&I Fabricators of Utah, Inc.*, 518 U.S. 213, 228 (1996). As section 1129(a)(7) makes clear, this liquidation analysis applies only to non-accepting impaired claims or equity interests.  If a class of claims or equity interests unanimously accepts the plan, the best interests test automatically is deemed satisfied for all members of that class.

58.     Under the Plan, Classes 1, 2, 3, 7 and 8 are Unimpaired and deemed to accept the Plan.  The best interests test, therefore, is inapplicable to such Classes.

59.     The best interests test is, however, applicable to holders of claims and equity interests (i) that are impaired and that have voted to reject the plan or (ii) that are fully impaired and, as a result, are deemed to have rejected the plan.  Accordingly, the best interests test is applicable only those (a) holders of Claims that voted to reject the Plan in Classes 4, and 5, and (b)  Classes 6 and 9, which will not receive or retain any property under the Plan, and therefore, are deemed to have rejected the Plan.

60.     The starting point in determining whether the Plan meets the "best interests" test is a determination of the amount of proceeds that would be generated from the liquidation of the Debtors in the context of chapter 7 of the Bankruptcy Code.  A chapter 7 liquidation of the Debtors' Estates would result in a substantial reduction in the

ultimate proceeds available for distribution to all creditors and equity interest holders in these cases. For example, the Debtors anticipate that in the context of a chapter 7 liquidation, the Debtors' Senior Secured Noteholders would not be paid in full and unsecured creditors would consequently receive no recovery.

61.     Moreover, the value of the Debtors' assets in a chapter 7 case would be substantially eroded as a result of the compressed liquidation of such assets that might be required under chapter 7 and the consequent "forced sale" atmosphere. Similarly, the increased costs associated with a liquidation under chapter 7 would substantially reduce the proceeds available for distribution. These costs would include, among other things, administrative fees and costs payable to a trustee in bankruptcy and professional advisors to such trustee and substantial increases in claims that would be satisfied on a priority basis or on parity with creditors in these cases. In the context of the erosion of asset value and the increased costs and delay associated with a chapter 7 case, confirmation of the Plan provides each non-accepting Claim or Interest holder with a recovery that is not less than such holder would receive in a liquidation of the Debtors under chapter 7 of the Bankruptcy Code.

62.     Exhibit C to the Disclosure Statement sets forth the liquidation analysis for the Debtors (the **"Liquidation Analysis"**). The Liquidation Analysis reflects the estimated cash proceeds of liquidation-related costs that would be realized if each Debtor were liquidated in accordance with chapter 7 of the Bankruptcy Code. The Liquidation Analysis demonstrates that each holder of an Impaired Claim against or Interest in the Debtors either has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of the Effective Date,

that is not less than the amount that such holder would receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code.  *See* Discl. Stmt., Ex C (Liquidation Analysis summary showing a 100% recovery to the first lien DIP Lenders, a 48.2% recovery to the second lien DIP Lenders, a 0% to 0.1% recovery to Secured Noteholder Claims, a 0% recovery to Administrative Claims, a 0% recovery to Priority Tax Claims, and a 0% recovery to General Unsecured Claims).

63.     As set forth in the Disclosure Statement and as will be further developed in the Klein Declaration as a result of the floating lien of the Senior Secured Noteholders and the *de minimis* value of unencumbered assets, if any, the best interest analysis is unaffected by the substantive consolidation of the Debtors' Estates. Therefore, even if the Plan contained separate classes for creditors of each individual Debtor, the Senior Secured Noteholders would receive a substantially lower recovery on a liquidation basis and the general unsecured creditors of each Estate would receive no distribution on their Claims.

64.     The Plan satisfies the best interests test as to each Impaired Class because each Impaired Class will receive a distribution under the Plan that is not less than such Class would receive in a chapter 7 liquidation of the Debtors' Estates.  Based upon the foregoing, the Plan satisfies the requirements of section 1129(a)(7).

**H.      Section 1129(a)(8): The Plan Has Been Accepted by Impaired Classes, and, as to Such Classes, the <u>Requirements of Section 1129(a)(8) Have Been Satisfied</u>**

65.     Section 1129(a)(8) requires that each class of impaired claims or interests accept the plan, as follows:  "With respect to each class of claims or interests -

(A) such class has accepted the plan; or (B) such class is not impaired under the plan." 11 U.S.C. § 1129(a)(8).

66.    Holders of Claims and Interests in Classes 1, 2, 3, 7 and 8 are Unimpaired under the Plan and, pursuant to section 1126(f) of the Bankruptcy Code, are conclusively presumed to have voted to accept the Plan.  Thus, the requirements of section 1128(a)(8) have been satisfied by the Debtors.

67.    As to the impaired classes entitled to vote to accept or reject a plan, sections 1126(c) and 1126(d) of the Bankruptcy Code specify the requirements for acceptance of the plan by classes of claims and classes of equity interests, respectively. Classes 4 and 5 are the Impaired Classes of Claims eligible to vote on the Plan.  The holders of Claims in Classes 4 and 5 affirmatively have voted to accept the Plan as follows:

| CLASSES | TOTAL BALLOTS RECEIVED* | | | |
|---|---|---|---|---|
| | ACCEPT | | REJECT | |
| | AMOUNT | NUMBER | AMOUNT | NUMBER |
| **Class 4 – Senior Secured Notes Claims** | $69,991,797.28 | 11 | $0.00 | 0 |
| **Class 5 – General Unsecured Claims** | $64,313,096.22 | 222 | $31,108.93 | 17 |

\* The results described in this chart are preliminary and are subject to final verification in the Vote Certification.

68.     The tabulation of votes is discussed in more detail in the Vote Certification.  As to these Unimpaired Classes and Impaired and Accepting Classes, the requirements of section 1128(a)(8) of the Bankruptcy Code have been satisfied.

69.     As previously stated, holders of Claims in Classes 6 and 9 will not receive any distributions under the Plan and therefore are deemed to have rejected the Plan.  Nonetheless, as set forth below, as to such Classes, the Plan may be confirmed under the "cram down" provisions of section 1129(b) of the Bankruptcy Code.

**I.      Section 1129(a)(9): The Plan Provides for
         Payment in Full of All Allowed Priority Claims**

70.     Section 1129(a)(9) requires that entities holding allowed claims entitled to priority under section 507(a)(1) – (8) receive specified treatment under a plan.  Here, the Plan provides the treatment required by section 1129(a)(9) for each of the various Claims specified in section 507(a)(1) – (8).

71.     In accordance with sections 1129(a)(9)(A) and (B), Article II Section 2.1 of the Plan provide that all Allowed Administrative Expense Claims under section 503(b) of the Bankruptcy Code and all Allowed Other Priority Claims under section 507(a) (excluding Priority Tax Claims under section 507(a)(8) described below)

will be paid in full in Cash on the later of the Effective Date and the date such Claim becomes Allowed (or as soon thereafter as is practicable).

72. Allowed Administrative Expense Claims relating to compensation of the professionals retained by the Debtors or the Creditors' Committee, unless otherwise agreed by the claimant or provided for in the Plan, will be paid in full, in Cash, on the date on which an order allowing such Administrative Expense Claim is entered (or as soon thereafter as is practicable).

73. In addition, Administrative Expense Claims relating to ordinary course of business transactions will be paid in full and performed by the Debtors or Reorganized Debtors, as the case may be, in the ordinary course of business and subject to the conditions of the agreements governing or relating to such obligations. Thus, Article II of the Plan satisfies the requirements of sections 1129(a)(9)(A) and (B) of the Bankruptcy Code.

74. The Plan also satisfies the requirements of sections 1129(a)(9)(C) and (D) of the Bankruptcy Code with respect to the treatment of Priority Tax Claims and Secured Tax Claims under section 507(a)(8). Pursuant to Article II Section 2.4 of the Plan, and except as otherwise may be agreed, holders of Allowed Priority Tax Claims and Allowed Secured Tax Claims will be paid, at the sole option of the Debtors or the Reorganized Debtors, either (a) in full on the Effective Date in an amount equal to such Allowed Claims or (b) in equal semi-annual Cash payments with interest over a period commencing on the Effective Date and continuing over a period not exceeding five years from and after the Commencement Date. The Debtors will pay all Allowed Priority Tax Claims and Allowed Secured Tax Claims that are not due and payable on or before the

Effective Date, if any, in the ordinary course of business as they come due.  Based upon the foregoing, Article II of the Plan satisfies the requirements of sections 1129(a)(9), and 507(a)(8) of the Bankruptcy Code.

J.       **Section 1129(a)(10): At Least One Class**
            **of Impaired Claims Has Accepted the Plan**

75.     Section 1129(a)(10) requires the affirmative acceptance of the Plan by at least one class of impaired claims, ". . . determined without including any acceptance of the plan by any insider."  11 U.S.C. § 1129(a)(10).  As demonstrated below, and as will be further demonstrated at the Confirmation Hearing, the Plan satisfies this requirement.

76.     As discussed above, the Plan Impaired the holders Intercompany Claims in the Debtors in Class 7 and Interests in Class 9; however, only holders of Claims in Classes 4 and 5 were entitled to vote to accept or reject the Plan.  Each such voting Class received Ballots that entitled eligible voters to vote on the Plan.  The voting results demonstrate that, despite their impairment under the Plan, Classes 4, and 5 voted to accept the Plan in accordance with section 1126 of the Bankruptcy Code.  These Classes, therefore, qualify as Impaired accepting Classes and satisfy the requirement of section 1129(a)(10).

K.       **Section 1129(a)(11): The Plan Is Not Likely to Be Followed**
            **by Liquidation or the Need for Further Financial Reorganization**

77.     Section 1129(a)(11) requires that, as a condition precedent to confirmation, the Court determine that the Plan is feasible, meaning:

> Confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor or any successor to the debtor under the plan,

> unless such liquidation or reorganization is proposed in the
> plan.

11 U.S.C. § 1129(a)(11). As described below, and as will be demonstrated at the

Confirmation Hearing, the Plan is feasible within the meaning of this provision. The

feasibility test set forth in section 1129(a)(11) requires the Court to determine whether

the Plan is workable and has a reasonable likelihood of success. *See United States v.*

*Energy Res. Co., Inc.*, 495 U.S. 545, 549 (1990); *In re Johns-Manville Corp.*, 843 F.2d at

649.

78. The Second Circuit has stated that "the feasibility standard is

whether the plan offers a reasonable assurance of success. Success need not be

guaranteed." *Id.*; *see In re U.S. Truck Co.*, 47 B.R. 932, 944 (E.D. Mich. 1985), *aff'd*,

800 F.2d 581 (6th Cir. 1986) ("'Feasibility' does not, nor can it, require the certainty that

a reorganized company will succeed."); *see also In re WorldCom, Inc.*, 2003 Bankr.

LEXIS 1401 at *168 (Bankr. S.D.N.Y. Oct. 31, 2003) ("The feasibility test set forth in

section 1129(a)(11) requires the Court to determine whether the Plan is workable and has

a reasonable likelihood of success."); *In re One Times Square Assocs. Ltd. P'ship*, 159

B.R. 695, 709 (Bankr. S.D.N.Y. 1993) ("It is not necessary that the success be

guaranteed, but only that the plan present a workable scheme of reorganization and

operation from which there may be a reasonable expectation of success.") (quoting 5

*Collier on Bankruptcy* ¶ 1129.02[11], at 1129-54 (15th ed. 1992)). The Reorganized

Debtors will be able to generally pay bills as they come due. *In re Texaco Inc.*, 84 B.R.

at 910 ("All that is required is that there be reasonable assurance of commercial

viability."); *In re Prudential Energy Co.*, 58 B.R. 857, 862 (Bankr. S.D.N.Y. 1986)

("Guaranteed success in the stiff winds of commerce without the protection of the [Bankruptcy] Code is not the standard under § 1129(a)(11).").

79.    The key element of feasibility is whether there exists a reasonable probability that the provisions of the plan can be performed.  The purpose of the feasibility test is to protect against visionary or speculative plans.  *In re Kent Terminal*, 166 B.R. at 560.  "Just as speculative prospects of success cannot sustain feasibility, speculative prospects of failure cannot defeat feasibility.  The mere prospect of financial uncertainty cannot defeat confirmation on feasibility grounds." *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 762.

80.    Applying the foregoing standards of feasibility, courts have identified the following factors as probative:

(1)    the adequacy of the capital structure;

(2)    the earning power of the business;

(3)    economic conditions;

(4)    the ability of management;

(5)    the probability of the continuation of the same management; and

(6)    any other related matters which will determine the prospects of a sufficiently successful operation to enable performance of the provisions of the plan.

*See In re Leslie Fay Cos., Inc.*, 207 B.R. at 789 (citing 7 *Collier on Bankruptcy* ¶ 1129.LH[2], at 1129-82 (15th ed. rev. 1996)); *see also In re Texaco, Inc.*, 84 B.R. at 910; *Prudential Energy*, 58 B.R. at 862-63.  The foregoing list is neither exhaustive nor exclusive.  *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 763.  As the Plan

Proponents will demonstrate in the Klein Declaration and at the Confirmation Hearing, the Plan satisfies these standards of feasibility.

81. For purposes of determining whether the Plan satisfies the above-described feasibility standards, the Debtors have analyzed their ability to fulfill their obligations under the Plan. As part of this analysis, the Debtors have prepared (i) a business plan and (ii) Financial Projections of their financial performance for the five-year period through the end of fiscal year 2014 (the **"Projections"**). The Projections are annexed as <u>Exhibit B</u> to the Disclosure Statement and are discussed in detail in Article VII of the Disclosure Statement. Based upon the information contained in the Disclosure Statement and the Projections, the Debtors anticipate that their cash on hand upon emergence, along with the cash and availability provided by the exit facility, will provide sufficient liquidity to make all required payments under the Plan and to satisfy ongoing working capital requirements.

82. Based upon the foregoing, the Plan is feasible, there is a reasonable likelihood that the Reorganized Debtors will meet their financial obligations under the Plan in the ordinary course of business, and confirmation of the Plan is not likely to be followed by the liquidation or need for further financial reorganization of the Reorganized Debtors. Therefore the Plan satisfies the feasibility standard of section 1129(a)(11) of the Bankruptcy Code.

**L.    Section 1129(a)(12): All Statutory Fees Have Been or Will Be Paid**

83. Section 1129(a)(12) requires the payment of "[a]ll fees payable under section 1930 [title 28, the United States Code], as determined by the court at the hearing on confirmation of the plan…." 11 U.S.C. § 1129(a)(12). Section 507 provides

that "any fees and charges assessed against the estate under [section 1930,] chapter 123 of title 28" are afforded priority as administrative expenses. *Id.* at § 507(a)(2). In accordance with sections 507 and 1129(a)(12) of the Bankruptcy Code, Article II Section 2.1 of the Plan provides that all such fees and charges payable have been or will be paid in cash on the Effective Date and thereafter as may be required. Thus, the Plan satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

### M. Section 1129(a)(13) Is Inapplicable

84. Section 1129(a)(13) requires a plan to provide for retiree benefits at levels established pursuant to section 1114 of the Bankruptcy Code. 11 U.S.C. § 1129(a)(13). The Debtors do not believe that there are any existing retiree benefits that require funding by the Reorganized Debtors. Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable to these chapter 11 cases.

### N. Sections 1129(a)(14), (15) and (16) Are Inapplicable

85. The Debtors are not required by a judicial or administrative order, or by statute, to pay a domestic support obligation. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these chapter 11 cases. Likewise, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these chapter 11 cases because the Debtors are not individuals. Lastly, the Debtors are not corporations or trusts that are not moneyed, business or commercial corporations or trusts. Therefore, section 1129(a)(16) of the Bankruptcy Code is inapplicable to these chapter 11 cases.

**O.** **Section 1146: The Debtors are not required to pay a stamp tax or any similar tax to the extent the Plan (i) issues, transfers, or exchanges any security or (ii) delivers of an instrument of transfer**

86.     Section 1146(a) prohibits a stamp tax, or any similar tax, upon the "issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under a plan confirmed under section 1129 of this title. . . ." 11 U.S.C. § 1146(a).   Pursuant to Article V of the Plan and the documents contained in the Plan Supplement, certain Restructuring Transactions will occur on the Effective Date as well as the pledge of collateral to the exit financing lenders.  No stamp taxes or similar taxes should be assessed in connection with these transactions.   Should the Reorganized Debtors discover that any such taxes have been assessed, the Proposed Findings of Fact and Conclusions of Law, and Proposed Form of Confirmation Order (the **"Proposed Confirmation Order"**) will expressly reserve the Reorganized Debtors' rights to request a determination of the tax effects of the Plan.  11 U.S.C. § 1146(b).

## III.

### The Plan Satisfies the "Cram Down" Requirements With Respect to Class Seven Claimants Because the Plan Does Not Discriminate Unfairly and Is Fair and Equitable

87.     Section 1129(b) provides a mechanism for confirmation of a plan in circumstances where the plan is not accepted by all impaired classes of claims and equity interests.  11 U.S.C. § 1129(b).  This mechanism is commonly referred to as "cram down."  Section 1129(b) provides in pertinent part:

> Notwithstanding section 510(a) of [the Bankruptcy Code], if all of the applicable requirements of [section 1129(a) of the Bankruptcy Code] other than [the requirement contained in section 1129(a)(8) that a plan must be accepted by all impaired classes] are met with respect to a plan, the court, on request of the proponent of the plan,

shall confirm the plan notwithstanding the requirements of such paragraph *if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.*

11 U.S.C. § 1129(b)(1) (emphasis added). Thus, under section 1129(b) of the Bankruptcy Code, the Court may "cram down" a plan over the deemed rejection by impaired classes of claims or equity interests that receive no distributions under the plan as long as the plan does not "discriminate unfairly" and is "fair and equitable" with respect to such classes.

### A. The Plan Does Not Discriminate Unfairly

88. Section 1129(b)(1) does not prohibit discrimination between classes; it prohibits only discrimination that is *unfair. In re 11,111, Inc.*, 117 B.R. 471, 478 (Bankr. D. Minn. 1990). The weight of judicial authority holds that a plan unfairly discriminates in violation of section 1129(b) of the Bankruptcy Code only if similar classes are treated differently without a reasonable basis for the disparate treatment. *See In re Buttonwood Partners, Ltd.*, 111 B.R. 57 (Bankr. S.D.N.Y. 1990); *see generally In re Johns-Manville Corp.*, 68 B.R. at 618. Accordingly, as between two classes of claims or two classes of equity interests, there is no unfair discrimination if (i) the classes are comprised of dissimilar claims or interests, or (ii) taking into account the particular facts and circumstances of the case, there is a reasonable basis for such disparate treatment. *See, e.g., In re Johns-Manville Corp.*, 68 B.R. at 636 (classes comprised of dissimilar claims and interests); *see als*o *In re Buttonwood Partners, Ltd.*, 111 B.R. at 63 (providing disparate treatment but on a reasonable basis); *In re Rivera Echevarria*, 129 B.R. 11, 13 (Bankr. D.P.R. 1991) (same).

89.    Under the foregoing standards, the Plan does not "discriminate unfairly" with respect to Classes 7 and 9, which are deemed to have rejected the Plan. The holders of the Intercompany Interests in Class 7 and the holders of Interests in Class 9 will receive no property in respect of such interests.

90.    The Plan does not discriminate unfairly and is fair and equitable with respect to Classes 7 and 9 because there is no holder of any Claim or Interest in the Debtors that is junior or equal to this rejecting Class that will be receiving distributions from the Debtors. The holders of Claims against the Debtors in Classes that are senior to Classes 7 and 9 are receiving distributions, the value of which is less than 100% of the Allowed amount of their Claims.

B.    <u>**The Plan Is Fair and Equitable**</u>

Section 1129(b) defines the phrase "fair and equitable" as follows:

(a)    As to secured creditors: Either (i) each impaired secured creditor retains its liens securing its secured claim and receives on account of its secured claim deferred cash payments having a present value equal to the amount of its allowed secured claim, (ii) each impaired secured creditor realizes the "indubitable equivalent" of its allowed secured claim or (iii) the property is sold free and clear of liens with such liens to attach to the proceeds of the sale and the treatment of such liens on proceeds is provided in clause (i) or (ii) of this subparagraph.

(b)    As to unsecured creditors: Either (i) each impaired unsecured creditor receives or retains under the plan property of a value equal to the amount of its allowed claim or (ii) the holders of claims and interests that are junior to the claims of the dissenting class will not receive any property under the plan.

(c)    As to equity interest holders: Either (i) each holder of an equity interest will receive or retain under the

> plan property of a value equal to the greatest of the fixed liquidation preference to which such holder is entitled, the fixed redemption price to which such holder is entitled, or the value of the interest, or (ii) the holder of an interest that is junior to the nonaccepting class will not receive or retain any property under the plan.

11 U.S.C. § 1129(b)(2). In the instant case, the "fair and equitable" rule is satisfied as to the holders of Class 7.

91. Under the Plan, General Unsecured Claims against the Debtors, which are classified in Class 5, will not be paid in full. Interests – Class 9 claimants – are afforded the lowest priority in distribution from a debtor's estate and will receive no distribution under the Plan. There are no creditors in Classes junior to Class 9, consequently, there is no junior Class that will receive or retain any property under the Plan. Accordingly, the Plan satisfies the absolute priority rule of section 1129(b)(2)(C) of the Bankruptcy Code with respect to Class 9, and is "fair and equitable" in all respects.

## IV.

### The Release, Exculpation, and Injunction
### Provisions of the Plan Should Be Approved

A.      **The Releases of the Released
Parties, the Exculpation, and the Injunction[7]**

1.      **Releases**

92. Article V Section 10.9 of the Plan creates a set of limited releases (the **"Releases"**). The Releases provide that the Debtors and the Reorganized Debtors shall and shall be deemed to completely and forever release, waive, void, extinguish, and

---

[7]      This section is a summary of these provisions and is qualified in its entirety by the language of the Plan and the Disclosure Statement.

discharge all Released Actions, _provided_, _however_, that all Released Actions shall be retained in connection with the defense against any Claim asserted against the Debtors, provided that the retention of such Released Actions shall not result in any affirmative recovery for the Debtors or the Reorganized Debtors nor affect the Claims Purchase; and _provided_, _further_, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct, intentional fraud, or criminal conduct of any Entity as determined by a Final Order entered by a court of competent jurisdiction.

93.    Article V Section 10.10 further creates limited releases for the Debtors and the Reorganized Debtors from the holder of Claims that votes to accept the Plan (or are deemed to accept the Plan) and who agree to provide third party releases of the Released Parties under the Plan in connection with the Claims Purchase.

## 2.    **Exculpation**

94.    Article V Section 10.6 of the Plan (the **"Exculpation"**) provides that, as of the Effective Date, none of Debtors, the Reorganized Debtors, the Majority Noteholder Group, the Senior Secured Notes Indenture Trustee, the Creditors' Committee, Centre Partners, the Prepetition Lenders, the Prepetition Administrative Agent, the DIP Lenders, the DIP Agent, their professionals, or their representatives shall incur any liability related to acts taken in connection with, _inter alia_ (i) the Chapter 11 Cases; (ii) the process of creating, administering, and distributing property under, the Plan; or (iii) any document or other agreement related thereto.  Such Exculpation would not allow any Exculpated Party to avoid liability from acts or omissions constituting willful misconduct or gross negligence.

### 3. Injunction

95.    Article V Section 10.4 of the Plan creates an injunction (the **"Injunction"**) against all Persons or entities who have held, hold or may hold Claims that is discharged pursuant to the Plan.  The Plan permanently enjoins such Persons or entities from establishing, perfecting, or continuing any procedure or process that obligates the Reorganized Debtors to pay upon any Claim or other debt or liability or Interests or other right or equity interest that is discharged pursuant to the Plan.   In addition, the Plan states that all injunctions or stays in existence on the Confirmation Date remain until the Effective Date, but no such injunction or stay will preclude enforcement of parties' rights under the Plan.

### B.    Standards for Approving the Releases, Exculpation, and Injunction

96.    Upon confirmation of a plan and pursuant to section 1141(d), a chapter 11 debtor receives a "discharge" of claims against it.  For those holders of Claims voting in favor of the plan, the vote itself is a voluntary release of such holder's Claim because only the most senior Unimpaired Claim holders would receive any distribution under a liquidation of the Debtors' Estates.  *See* Discl. Stmt, Ex. C.  Consequently, a vote in favor of the Plan allows each Impaired Claim holder the opportunity to receive a greater recovery – either from the Debtors or through the Claims Purchase - than any possible recovery under a liquidation of the Debtors' Estates.   *See e.g. In re Conseco, Inc.*, Case No. 02 B 49672 (Bankr. N.D. Ill. Nov. 17, 2003) ("The voluntary release of non-debtors in exchange for a distribution. . .that would otherwise go to more senior creditors does not conflict with any provision of the Bankruptcy Code.")   Section 1141(d), in part, provides:

> Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of the plan -
>
> (A) discharges the debtor from any debt that arose before the date of such confirmation. . .

11 U.S.C. § 1141(d). Section 524(e), governing the effect of discharge under the Bankruptcy Code, indicates that "except as provided in subsection (a)(3). . .discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. §524(e). Notwithstanding this express limitation of the discharge to the debtor, a debtor may settle and release its Claims against third parties. 11 U.S.C. § 1123(b)(3)(A).

97.     A plan that proposes to release a debtor's Claim is considered a "settlement" for purposes of satisfying section 1123(b)(3)(A) of the Bankruptcy Code. *See e.g., Resolution Trust Corp. v. Best Prods. Co.* (*In re Best Prods. Co.*), 68 F.3d 26, 33 (2d Cir. 1995) (the release and injunction provisions of the plan were deemed submitted for approval of the court pursuant to section 1123(b)(3)(A) and Bankruptcy Rule 9019(a)); *In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 at *117 (same); *In re Cellular Info. Sys.*, 171 B.R. 926, 947-948 (Bankr. S.D.N.Y. 1994) (same); *In re WCI Cable, Inc.*, 282 B.R. 457, 469 (Bankr. D. Ore. 2002) ("I find that the release and injunction provisions of . . . the WCI plan are submitted for approval by the court pursuant to § 1123(b)(3)(A) and [Rule 9019(a) of the Federal Rules of Bankruptcy Procedure]").

98.     In reviewing a plan settlement and releases of the Debtors' Claims pursuant to section 1123(b)(3)(A) of the Bankruptcy Code, the Court should be guided by the "reasonable business judgment" standard of Rule 9019 of the Federal Rules of Bankruptcy Procedure. *See In re WorldCom, Inc.*, 2003 Bankr. LEXIS 1401 at *117; *In*

*re Drexel Burnham Lambert Group, Inc.*, 138 B.R. at 758-760. As described below, the Plan Proponents have exercised reasonable business judgment in requesting Plan releases and exculpation of third parties, including the Released Parties.

99.     It is also clear that, subject to the debtor's reasonable business judgment, the releases may include not only claims assertable directly by the debtors, but also Claims assertable on behalf of, or derivative of the rights of, the debtors, including shareholder derivative actions, fraudulent conveyance Claims, preference actions, and other similar types of actions subject to settlement by the debtors. *See In re PWS Holding Corp*., 303 F.3d 308, 315 (3d Cir. 2002), *cert. denied*, 538 U.S. 924 (2003); *In re Texaco, Inc.*, 84 B.R. at 900; *In re Allegheny Int'l, Inc*., 118 B.R. 282, 311 (Bankr. W.D.Pa. 1990); *Huddleston v. Nelson Bunker Hunt Trust Estate*, 117 B.R. 231, 233-34 (N.D. Tex. 1990) (confirming plan containing release of claims against banks to the extent they were derivative of the debtor's claims).

100.     Where such relief represents an important step in the success of the overall plan of reorganization, a bankruptcy court is also empowered to issue permanent injunctions against or authorize releases of claims by non-debtors against non-debtors under a chapter 11 plan and pursuant to section 105(a) of the Bankruptcy Code. *See In re Johns-Manvill*e Corp., 68 B.R. at 618 (permanent injunction in favor of settling insurance company); *see also, In re A.H. Robins Co*., 880 F.2d 694, 701 (4th Cir. 1988), *cert. denied*, 493 U.S. 939 (1989) (release and permanent injunction in favor of insurance company, executives and law firms); *Greer II v. Gaston & Snow* (*In re Gaston & Snow*), Case No. 93 Civ. 8517, 8628, 1996 WL 694421 (S.D.N.Y. Dec. 4, 1996) (injunction precluding creditors who voted against the plan from asserting claims against third party

non-debtors who contributed substantial sums to the plan of reorganization); *Abel v. Shugrue* (*In re Ionosphere Clubs, Inc.*), 184 B.R. 648 (S.D.N.Y. 1995) (release of claims against individual signatories approved); *In re Texaco, Inc.*, 84 B.R. at 904 (release by debtors of potential claims against officers and directors).

101.    In the Second Circuit, bankruptcy courts frequently have approved non-debtor releases and injunctions in situations where the releases and injunctions are an integral part of the plan of reorganization, confer material benefits on the debtors' estates and their creditors, or are necessary to effectuate the plan of reorganization. *See, e.g., In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992) (bankruptcy court has jurisdiction and power to approve release and injunction in a plan, including the release of identified non-debtor third parties, where such releases play an important part in the plan of reorganization); *MacArthur Co. v. Johns-Manville Corp.* (*In re Johns-Manville Corp.*), 837 F.2d 89, 93 (2d Cir. 1988), *cert. denied*, 488 U.S. 868 (1988) (finding that section 105(a) "has been construed liberally to enjoin suits that might impede the reorganization process," and thus upholding permanent injunction issued in favor of settling insurance company, and approving release of third parties over the objection of creditors); *Shugrue*, 184 B.R. at 655 ("[C]ourts may issue injunctions enjoining creditors from suing third parties … in order to resolve finally all claims in connection with the estate and to give finality to a reorganization plan.").

102.    While there is no rigid test for determining whether third-party releases and injunctions are integral to a plan of reorganization and, therefore, should be approved, courts generally tend to "balance the equities" considering factors such as whether:

> 1. there is an identity of interest between the debtor and the third party, usually an indemnity relationship, such that a suit against the non-debtor is, in essence, a suit against the debtor or will deplete assets of the estate;
>
> 2. the non-debtor has contributed substantial assets to the reorganization;
>
> 3. the injunction is essential to reorganization, and without it, there is little likelihood of success;
>
> 4. a substantial majority of the creditors agree to such injunction, specifically, if the impacted class, or classes, has "overwhelmingly" voted to accept the proposed plan treatment; and
>
> 5. the plan provides a mechanism for the payment of all, or substantially all, of the claims of the class or classes affected by the injunction.

*In re Master Mortgage Inv. Fund, Inc.*, 168 B.R. 930, 935 (Bankr. W.D. Mo. 1994); *see also In re Continental Airlines*, 203 F.3d 203, 212 (3d Cir. 2000) (stating that the *Drexel* and *Manville* plans provided consideration to parties who would be enjoined from suing non-debtors); *Kirk v. Texaco, Inc.*, 82 B.R. 678, 685 (S.D.N.Y. 1988) (creditor's acceptance of $3 billion under the plan in satisfaction of a judgment of $10.3 billion, plus interest, represented substantial consideration because "only if an otherwise identical plan without the releases would have received the assent of [the creditor], could an argument be made that there was no consideration").

**C. The Releases, the Exculpation, and the <u>Injunction Are Reasonable and Should Be Approved</u>**

103. Pursuant to the Plan, the Plan Proponents are generally seeking to release and exculpate those parties that were instrumental to the Debtors' restructuring efforts and the formulation of the Plan. The Plan does not include broad third-party

releases outside of the Claims Purchase; rather, the Releases are limited to acts in connection with, related to, or arising out of the Chapter 11 Cases.

104. Furthermore, the Exculpation is appropriately limited to a qualified immunity for acts of negligence, but does not relieve any party of liability for gross negligence or willful misconduct. *See In re PWS Holding Corp.*, 228 F.3d 224, 246-47 (3d Cir. 2000) (similar exculpation provision reflecting Bankruptcy Code's limitation of liability did not violate third party release prohibition of section 524(e)); *In re Drexel Burnham Lambert Group, Inc.*, 138 B.R. 717, 722 (Bankr. S.D.N.Y. 1992), *aff'd*, 140 B.R. 347 (S.D.N.Y. 1992).

105. Exculpation for participating in the plan process is appropriate where plan negotiation could not have occurred without protection from liability. As recognized by the Second Circuit in *Drexel*, where a debtor's plan of reorganization requires the settlement of numerous, complex issues, protection of third parties against legal exposure may be a key component of the settlement. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 293 (2d Cir. 1992); *In re Enron Corp.*, 326 B.R. 497, 503 (S.D.N.Y. 2005) (excising similar exculpation provision would "tend to unravel the entire fabric of the Plan, and would be inequitable to all those who participated in good faith to bring it into fruition").

106. Moreover, the Exculpation is fully consistent with the holding in *Deutsche Bank AG v. Metromedia Fiber Network, Inc.* (*In re Metromedia Fiber Network, Inc.*), 416 F.3d 136 (2d Cir. 2005). In fact, a provision very similar to the Exculpation was approved and undisturbed on appeal in Metromedia's chapter 11 cases. *See* Second Amended Plan of Reorganization of Metromedia Fiber Network, Inc., et al., Case No. 02-

22736 (ASH) (Bankr. S.D.N.Y. July 1, 2003) (Docket No. 1690); Order Confirming

Second Amended Plan of Reorganization of Metromedia Fiber Network, Inc., *et al.*, Case

No. 02-22376 (ASH) (Bankr. S.D.N.Y. Aug. 21, 2003) (Docket No. 1988). *See also*

*Metromedia*, 416 F.3d at 141 (non-debtor release is appropriate where the release is

important to the success of the plan). Another similar provision was subsequently

approved in the chapter 11 cases of TL Administration Corp., et al. (f/k/a Twinlab Corp.,

*et al.*) ("Twinlab").[8] *See* First Amended Joint Plan of Liquidation of TL Administration

Corp., et al., Case No. 03-15564 (RDD) (Bankr. S.D.N.Y. Jun. 3, 2005) (Docket No.

787); Order Confirming First Amended Joint Plan of Liquidation of TL Administration

Corp., et al., Case No. 03-15564 (RDD) (Bankr. S.D.N.Y. Jul. 26, 2005) (Docket No.

846). Notably, the United States District Judge, who sat by designation on the Second

Circuit's *Metromedia* panel, presided (jointly) over the confirmation of Twinlab's chapter

11 plan. Accordingly, the Exculpation is also consistent with applicable law and satisfies

the standards of section 1123(b)(6).

---

[8]      Specifically, the Twinlab exculpation provided:

Notwithstanding anything to the contrary contained herein, as of the Effective Date, none of (i) the
Debtors and the Debtors' officers, directors, and employees, (ii) the Creditors Committee, (iii) the
Ephedra Claimants Committee, and (iv) the members, representatives, accountants, financial
advisors, investment bankers, consultants, and attorneys of the Entities described in (i) through
(iii) of this paragraph shall have or incur any liability to any person for any act taken or omission,
after the Commencement Date, in connection with or related to the Chapter 11 Cases or the
operations of the Debtors' businesses during the Chapter 11 Cases, including but not limited to (i)
formulating, preparing, disseminating, implementing, confirming, consummating or
administrating the Plan (including soliciting acceptances or rejections thereof); (ii) the Disclosure
Statement or any contract, instrument, release or other agreement or document entered into or any
action taken or omitted to be taken in connection with the Plan or the Disclosure Statement; or (iii)
any distributions made pursuant to the Plan, except for acts constituting willful misconduct or
gross negligence.

*See* Twinlab Plan § 10.4.

107.     Throughout these chapter 11 cases, the Released Parties have contributed substantial value to the Debtors and the formulation of the Plan.   The Released Parties' efforts in negotiating and ultimately formulating the Plan or providing the moneys necessary to fund the Claims Purchase enabled the Debtors to file the Plan. The recoveries negotiated by the key constituencies in the chapter 11 cases are better than would likely be available if other alternatives were pursued.

108.     In light of the foregoing, there can be no doubt that the professionals involved in these cases have enabled the Debtors to formulate a plan of reorganization that provides the greatest possible recovery to the Debtors' unsecured creditors, and enables the Debtors to emerge from chapter 11 as a viable enterprise.   It should be noted that the Releases, Exculpation, and Injunction were included in the Plan and Disclosure Statement in bold typeface to draw attention to these provisions and ensure their due consideration by holders of Claims entitled to vote on the Plan. Significantly, and as evidenced by the voting results confirmed in the Vote Certification, these provisions were approved by a substantial majority of holders of Claims voting on the Plan.

109.     The Releases, Exculpation and Injunction provisions embodied in the Plan are fair and equitable, given in exchange for valuable consideration, and are in the best interests of the Debtors and all parties in interest.   In addition, such provisions are consistent with sections 105, 1123, and 1129 of the Bankruptcy Code.

# V.

## Response to Objections

110.    The Debtors have made significant progress in their efforts to resolve objections to confirmation prior to the Confirmation Hearing.  The Debtors are hopeful that all Objections will be consensually resolved.   Many of the Objections involve cure disputes that require the exchange of substantial documentation.   Annexed hereto as Exhibit A is a summary of the three confirmation Objections and seven cure Objections that were timely filed and the current status.  The Debtors intend to update the Court on any remaining Objections prior to the Confirmation Hearing.

## CONCLUSION

The Plan complies with and satisfies all applicable requirements of section

1129 of the Bankruptcy Code, and thus, should be confirmed.

Dated:  June 17, 2010
      New York, New York

/s/ Joseph H. Smolinsky
Joseph H. Smolinsky

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:   (212) 310-8007

*Attorneys for Debtors
and Debtors in Possession*

/s/ Philip C. Dublin
Michael S. Stamer
Philip C. Dublin

AKIN GUMP STRAUSS
HAUER & FELD LLP
One Bryant Park
New York, New York  10036
Telephone:  (212) 872-1000
Facsimile:   (212) 872-1002

*Attorneys for the Majority Noteholder Group*

## EXHIBIT A

**Omnibus Response to Objections to the First Amended Joint Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Uno Restaurant Holdings Corporation and Its Affiliated Debtors and Debtors In Possession**

## Uno Restaurant Holdings Corporation
## Plan Objection Chart

### *Plan Objections*

| Date Filed | Docket No. | Objecting Party/Parties | Summary | Status | Resolution |
|---|---|---|---|---|---|
| 04/30/10 | 435 | New York State Department of Taxation and Finance | Objects to timing and interest rate of periodic priority tax distributions | Withdrawn | Withdrawn |
| 06/08/10 | 486 | Commonwealth of PA, Department of Revenue | (1) Alleges that Plan fails to provide that tax debts are not discharged until paid in full.<br><br>(2) Alleges failure for Plan to provide for interest payments at the statutory rate.<br><br>(3) Alleges that Plan releases attempt to restrict ability to exercise state court remedies against non-debtor parties. | Agreement in principle reached | Objection is resolved subject to receipt by Debtors of a confirmation that agreed terms are acceptable |

| 06/11/10 | 492 | Carousel Center Company, L.P.<br><br>Crossgates Mall Company NewCo, LLC | (1) Query as to calculation of cure amount (whether it includes charges that are not yet due).<br><br>(2) Requests language be added to confirmation order providing that Debtors will remain liable for all accrued rent and charges not forming part of cure amount.<br><br>(3) Requests that exit financing provides that lender liens attach only to proceeds of leases and not leases themselves.<br><br>(4) Requests that exit financing prohibit Lenders from occupying premises. | Objection is resolved subject to objecting party receiving exit financing documents in form and substance satisfactory to the objecting party, with respect to the specific points raised in the objection. | Confirmation order will include language substantially in the form as follows:<br><br>*Notwithstanding any other provision of the Plan or this Order, or any order establishing a Cure Amount, any accrued but unbilled charges under an assumed lease of unexpired real property prior to or after confirmation of the Plan for charges including, but not limited to, common area maintenance, insurance, and tax reconciliations or year-end adjustments shall be billed to and paid by (or, in the case of a credit balance, shall be given to) the Reorganized Debtors in compliance with the terms of each Assumed Agreement.*<br><br>Credit agreement related to exit financing to be filed prior to Confirmation Hearing. |

### *Cure Amount Objections*

| Date Filed | Docket No. | Objecting Party | Summary | Status | Resolution |
|---|---|---|---|---|---|
| 06/10/10 | 487 | Inland US Management, LLC | Objection to cure amount. | Cure Amount agreed with objecting party. | Objection resolved |
| 06/10/10 | 491 | The Macerich Company | Objection to cure amount. | Discussions are ongoing for resolution of objection. | Pending |
| 06/11/10 | 494 | Woodfield Restaurant Court, L.L.C. | Objection to cure amount. | Cure Amount agreed with objecting party. | Objection resolved |

| | | | | | |
|---|---|---|---|---|---|
| 06/14/10 | 495 | Simon Property Group, Inc. | Objection to cure amount. | Withdrawn | Withdrawn |
| 06/14/10 | 497 | General Growth Properties, Inc. | Objection to cure amount. | Discussions are ongoing for resolution of objection. | Pending |
| 06/14/10 | 498 | 107-18 Realty, LLC<br><br>1775 Washington Street Holdings, LLC<br><br>Union Station Investco, LLC | Objection to cure amount. | Agreement reached with respect to two of the three cure amounts at issue in the objection.<br><br>Discussions are ongoing for resolution of the one remaining cure dispute. | Pending |

| 06/14/10 | 499 | R&F Clay, LLC | (1) Requires confirmation order to clarify that guarantees will also be assumed.<br><br>(2) Reservation of rights with respect to post-petition charges if confirmation is extended. | Objection resolved subject to reservation of rights if confirmation is delayed significantly. | Confirmation order will provide the following language:<br><br>*50.        Except as provided in Section 8.1 of the Plan, and pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, all executory contracts and unexpired leases **(including related guarantees)** that exist between the Debtors and any person or entity shall be deemed assumed by the Debtors as of the Effective Date, except for any executory contract or unexpired lease (a) that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective Date and for which the motion was filed prior to the Confirmation Date; (b) that previously expired or terminated pursuant to its own terms; (c) as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date; or (d) that is specifically designated as a contract or lease to be rejected on the schedule in the Plan Supplement (the "Rejection Schedule") as contemplated by sections 365(a) and 1123(b)(2) of the Bankruptcy Code.* |