WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007
Joseph H. Smolinsky

Attorneys for the Debtors
and Debtors in Possession

AKIN GUMP STRAUSS HAUER & FELD LLP
Michael S. Stamer, Esq.
Philip C. Dublin, Esq.
One Bryant Park
New York, New York  10036
(212) 872-1000

Counsel for the Majority Noteholder Group

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-------------------------------------------------------------x

|  |  |  |
|---|---|---|
| | : | |
| **In re** | : | **Chapter 11** |
| | : | |
| **UNO RESTAURANT HOLDINGS** | : | **Case No. 10-10209 (MG)** |
| **CORPORATION**, *et al.*, | : | |
| Debtors. | : | **(Jointly Administered)** |
| | : | |

-------------------------------------------------------------x

**NOTICE OF PROPOSED ORDER CONFIRMING SECOND
AMENDED JOINT CONSOLIDATED PLAN OF REORGANIZATION UNDER
CHAPTER 11 OF THE BANKRUPTCY CODE FOR UNO RESTAURANT HOLDINGS
CORPORATION AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

PLEASE TAKE NOTICE that on June 29 2010, Uno Restaurant Holdings

Corporation and its debtor affiliates, as debtors and debtors in possession in the above-captioned

chapter 11 cases, and the Majority Noteholder Group, filed with the Court their proposed *Order

Confirming Second Amended Joint Consolidated Plan of Reorganization under Chapter 11 of the*

*Bankruptcy Code for Uno Restaurant Holdings Corporation and Its Affiliated Debtors and*

*Debtors in Possession.*

Dated:  June 29, 2010
      New York, New York

              WEIL, GOTSHAL & MANGES LLP
              767 Fifth Avenue
              New York, New York 10153
              Telephone: (212) 310-8000
              Facsimile:  (212) 310-8007

              *Attorneys for the Debtors*
              *and Debtors in Possession, Co-Plan Proponent*

              AKIN GUMP STRAUSS HAUER & FELD LLP
              One Bryant Park
              New York, New York 10036
              Telephone: (212) 872-1000
              Facsimile:  (212) 872-1002

              *Attorneys for the Majority*
              *Noteholder Group, Co-Plan Proponent*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------x
                                  :

**In re**                              :          **Chapter 11**
                                  :

**UNO RESTAURANT HOLDINGS**     :          **Case No. 10-10209 (MG)**
**CORPORATION,** *et al.*,            :
                   **Debtors.**     :          **(Jointly Administered)**
                                  :
------------------------------------------------------------x

**ORDER CONFIRMING SECOND AMENDED JOINT CONSOLIDATED
PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE
BANKRUPTCY CODE FOR UNO RESTAURANT HOLDINGS CORPORATION
AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION**

             Uno Restaurant Holdings Corporation and its debtor affiliates, as debtors and

debtors in possession in the above-referenced chapter 11 cases (collectively, **"Uno"** or the

**"Debtors"**) and the informal group of the Debtors' prepetition senior secured noteholders (the

**"Majority Noteholder Group"** and together with the Debtors, the **"Plan Proponents"**) having

proposed and filed the *Second Amended Joint Consolidated Plan of Reorganization under*

*Chapter 11 of the Bankruptcy Code for Uno Restaurant Holdings Corporation and Its Affiliated*

*Debtors and Debtors in Possession* [Docket No. 516], dated June 29, 2010 (as it has been or may

be subsequently amended or modified in accordance with its respective terms and the

Bankruptcy Code, the **"Plan"**)[1] and the *Amended Plan Supplement* [Docket No. 511], dated June

25, 2010 (as it has been or may be subsequently amended or modified in accordance with its

respective terms and the Bankruptcy Code, the **"Plan Supplement"** and together with the Plan,

the **"Plan Documents"**); and the Disclosure Statement, having been approved by the Court by

order, dated May 11, 2010 (the **"Disclosure Statement Order"**) [Docket No. 456]; and due

---

[1] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan.

notice of (i) entry of the Disclosure Statement Order, (ii) the hearing on confirmation of the Plan

(the **"Confirmation Hearing"**), and (iii) the deadline for voting on, and/or objecting to, the Plan

having been provided to holders of Claims against and Interests in the Debtors and other parties

in interest, as established by the certificate of service and mailing filed with the Court, in

accordance with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy

Rules; and such notice being sufficient, and no further notice being required; and a hearing

having been held before the Court on July 6, 2010 to consider confirmation of the Plan; and

based upon and after full consideration of the entire record of the Confirmation Hearing,

including (A) the Plan Documents, the Disclosure Statement, and the Disclosure Statement

Order, (B) the Debtors' memorandum of law, dated June 17, 2010, in support of confirmation of

the Plan (as amended, the **"Confirmation Brief"**), (C) the Affidavit of Richard Klein in Support

of Confirmation of the Second Amended Joint Consolidated Plan of Reorganization under

Chapter 11 of the Bankruptcy Code for Uno Restaurant Holdings Corporation and Its Affiliated

Debtors and Debtors in Possession, dated _____, 2010 (the **"Klein Affidavit"**), and (D) the

Certification of Alison M. Tearnen with Respect to the Tabulation of Votes on the Debtors'

Second Amended Joint Consolidated Plan of Reorganization under Chapter 11 of the Bankruptcy

Code of Uno Restaurant Holdings Corporation and Its Affiliated Debtors and Debtors in

Possession certifying ballots accepting or rejecting the Plan, dated _____, 2010 and filed

with the Court on _____, 2010 (the **"Vote Certification"**); and the Court having reviewed

and considered the Plan Documents, the Disclosure Statement, the Disclosure Statement Order,

the Confirmation Brief, the Klein Affidavit, and the Vote Certification; and the Court having

considered all objections to confirmation of the Plan (the **"Objections"**); and all Objections

having been withdrawn, overruled, mooted, or resolved by stipulation or otherwise denied as set

forth in the record of the Confirmation Hearing, which record is incorporated herein; and the Court being fully familiar with, and having taken judicial notice of, the entire record of the Debtors' Chapter 11 Cases; and upon the appearance of all interested parties having been duly noted on the record of the Confirmation Hearing; and upon all of the proceedings had before the Court and upon the entire record of the Confirmation Hearing, including the evidence proffered and adduced at the Confirmation Hearing, the Court having determined that the Plan should be confirmed as reflected by the Court's rulings made herein and on the record of the Confirmation Hearing; and after due deliberation and sufficient cause appearing therefor, it is hereby DETERMINED AND FOUND:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

A. <u>Findings of Fact and Conclusions of Law</u>. The findings set forth herein and on the record of the Confirmation Hearing constitute the Court's findings of fact pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B. <u>Judicial Notice</u>. The Court takes judicial notice of the docket of the Chapter 11 Cases maintained by the Clerk of the Court, including, without limitation, all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered, adduced and/or presented at the hearings held before the Court during the pendency of the Chapter 11 Cases.

C. <u>Exclusive Jurisdiction; Core Proceeding; Venue</u>. This Court has jurisdiction over the Chapter 11 Cases and to confirm the Plan pursuant to 28 U.S.C. § 1334.

Confirmation of the Plan is a core proceeding pursuant to 28 U.S.C. § 157(b). Venue is proper before this Court and in this District pursuant to 28 U.S.C. §§ 1408 and 1409.

   D. <u>Commencement and Administration of the Chapter 11 Cases</u>. On January 20, 2010 (the **"Petition Date"**), the Debtors commenced voluntary cases under chapter 11 of the Bankruptcy Code. By order of the Court, the Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to Bankruptcy Rule 2015. The Debtors have operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in these Chapter 11 Cases.

   E. <u>Official Committee of Unsecured Creditors</u>. On January 27, 2010, the Office of the United States Trustee for the Southern District of New York (the **"U.S. Trustee"**) appointed an official committee of unsecured creditors pursuant to section 1102 of the Bankruptcy Code (the **"Creditors' Committee"**).

   F. <u>Solicitation and Notice</u>. On May 11, 2010, the Court entered the Disclosure Statement Order, which, among other things, approved the Disclosure Statement, finding that it contained "adequate information" within the meaning of section 1125 of the Bankruptcy Code, and established procedures for the Debtors' solicitation of votes with respect to the Plan. As described in the Vote Certification, packages containing (a) notice of the Confirmation Hearing, (b) the Disclosure Statement Order, (c) the Disclosure Statement (with a copy of the Plan attached thereto), (d) a letter from the Creditors' Committee in support of the Plan, and (e) the appropriate ballots for voting on the Plan (the **"Ballots"**) (collectively, the **"Solicitation Packages"**) were served in compliance with the Bankruptcy Rules and the Disclosure Statement Order. The service of the Solicitation Packages, as set forth in the Vote

Certification, was adequate and sufficient under the circumstances of these Chapter 11 Cases, provided adequate and sufficient notice of the Confirmation Hearing, the Voting Deadline, and the deadline for objecting to the Plan, was in compliance with the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order, and any other applicable orders and rulings of the Court, and provided due process to all parties in interest in these Chapter 11 Cases.

G.     Voting.  Votes to accept or reject the Plan were solicited contemporaneously with a disclosure statement that contained "adequate information" as defined in section 1125 of the Bankruptcy Code.  As evidenced by the Vote Certification, votes to accept or reject the Plan have been solicited and tabulated fairly, in good faith, and in a manner consistent with the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.

H.     Plan Supplement.  On June 4, 2010, the Plan Proponents filed the Plan Supplement, which included the following documents:  the Claims Purchase Schedule; the Claims Purchasing Agreement; a schedule listing the executory contracts and unexpired leases to be rejected by the Debtors (the **"Rejection Schedule"**); a schedule listing the executory contracts and unexpired leases to be assumed by the Debtors (the **"Assumption Schedule"**) and the proposed corresponding cure amounts (the **"Cure Amounts"**); the agreement detailing the Restructuring Transactions (the **"Master Restructuring Agreement"**); a statement regarding the current status of the Debtors' efforts to obtain Exit Financing (as defined below); the Stockholders' Agreement; the New Uno Certificate of Incorporation; the New Uno Bylaws; the Consulting Agreement; the Management Incentive Plan; the advisory services agreement with Twin Haven Capital Partners; the advisory services agreement with Coliseum Capital Management, LLC; and a list of members of the initial board of directors of New Uno.  The Plan Supplement was amended on June 25, 2010 to, among other things, reflect certain amendments

to the above-listed documents and to include the following Exit Financing operative documents: the commitment letter for the $30 million New First Lien Facility; the New Second Lien Notes Indenture; the New Intercreditor Agreement; and the Backstop Commitment Agreement relating to the New Second Lien Notes. All such materials comply with, and are necessary to the implementation of, the terms of the Plan, and the filing and notice of such documents is good and proper in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order, and no other or further notice is or shall be required.

**Compliance with Section 1129 of the Bankruptcy Code**

I.  <u>Burden of Proof</u>.  The Plan Proponents have met their burden of providing the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable standard.

J.  <u>Bankruptcy Rule 3016(a)</u>.  The Plan is dated and identifies the Debtors and the Majority Noteholder Group as the Plan Proponents, thereby satisfying the requirements of Bankruptcy Rule 3016(a).

K.  <u>Plan Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1))</u>.  As set forth below, the Plan complies fully with the requirements of sections 1122 and 1123 as well as with all other applicable provisions of the Bankruptcy Code, thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

1.  <u>Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1))</u>.  As required by section 1123(a)(1) of the Bankruptcy Code, in addition to Administrative Expense Claims, DIP Financing Claims, Professional Compensation and Reimbursements Claims, and Priority Tax Claims, which need not be classified, Article III of the Plan designates seven (7) Classes of Claims and two (2) Classes of Interests:  Class 1 (Priority Non-Tax Claims), Class 2 (Secured

Tax Claims), Class 3 (Other Secured Claims), Class 4 (Senior Secured Notes Claims), Class 5 (General Unsecured Claims), Class 6 (Subordinated Claims), Class 7 (Intercompany Claims), Class 8 (Intercompany Interests), and Class 9 (Interests).  As required by section 1122(a) of the Bankruptcy Code, each of the Claims or Interests, as the case may be, in each particular Class is substantially similar to the other Claims or Interests in such Class.  Valid business, factual, and legal reasons exist for separately classifying the various Claims and Interests created under the Plan, and such Classes do not unfairly discriminate between holders of Claims and Interests or prejudice the rights of holders of such Claims and Interests.  The classification of Claims and Interests in the Plan is reasonable and necessary to implement the Plan.  The Plan adequately and properly classifies all Claims and Interests and therefore satisfies the requirements of sections 1122 and 1123(a)(1) of the Bankruptcy Code.

2.      Specified Unimpaired Classes (11 U.S.C. § 1123(a)(2)).  Articles III and IV of the Plan specify that Class 1 (Priority Non-Tax Claims), Class 2 (Secured Tax Claims), Class 3 (Other Secured Claims), Class 7 (Intercompany Claims), and Class 8 (Intercompany Interests) are Unimpaired by the Plan, thereby satisfying the requirements of section 1123(a)(2) of the Bankruptcy Code.

3.      Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)).  Articles III and IV of the Plan designate Class 4 (Senior Secured Notes Claims), Class 5 (General Unsecured Claims), Class 6 (Subordinated Claims), and Class 9 as Impaired, and Sections 4.4, 4.5, 4.6, and 4.9 of the Plan specify the treatment of Claims and Interests in such Classes, thereby satisfying the requirements of section 1123(a)(3) of the Bankruptcy Code.

4.      No Discrimination (11 U.S.C. § 1123(a)(4)).  The Plan provides for the same treatment for each Claim against or Interest in each Debtor in each respective Class

unless the holder of a particular Claim or Interest has agreed to a less favorable treatment on account of such Claim or Interest, thereby satisfying the requirements of section 1123(a)(4) of the Bankruptcy Code.  Members of Class 5 are all entitled to the benefits of the Committee Settlement and, therefore, treatment of Class 5 Claims is not discriminatory.

5.      <u>Implementation of the Plan (11 U.S.C. § 1123(a)(5))</u>.  The Plan and the documents and agreements included in the Plan Supplement provide adequate and proper means for implementation of the Plan, thereby satisfying the requirements of section 1123(a)(5) of the Bankruptcy Code.

6.      <u>Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6))</u>.  The Amended and Restated Certificate of Incorporation of New Uno and the Amended and Restated Bylaws of New Uno, included in the Plan Supplement, conform to section 1123(a)(6) of the Bankruptcy Code's prohibition on the issuance of nonvoting equity securities and do not permit New Uno to issue nonvoting equity securities to the extent disallowed by section 1123(a)(6).  In addition, the charter of each Reorganized Debtor that is a corporation will be revised to prohibit the issuance of non-voting securities.  Consequently, the applicable postconfirmation organizational documents comply with the requirements of section 1123(a)(6) of the Bankruptcy Code.

7.      <u>Officers, Directors, or Trustee (11 U.S.C. § 1123(a)(7))</u>.  Article V of the Plan sets forth provisions regarding the manner of selection of the New Board that are consistent with the interests of creditors, equity security holders, and public policy in accordance with section 1123(a)(7) of the Bankruptcy Code.  As set forth in Section 5.3(c) of the Plan, the New Board will be comprised of seven (7) directors, including Frank Guidara (so long as he remains the chief executive officer of New Uno), four (4) directors selected by Twin Haven, one

(1) director selected by Coliseum, and one (1) director selected by Newport.  The Plan

Proponents filed with the Court, as part of the Plan Supplement, a preliminary list of directors of

New Uno, and then filed a supplemental list disclosing all members of the New Board as of the

Effective Date, thereby satisfying the standards of section 1123(a)(7) of the Bankruptcy Code.

The boards of directors of each Reorganized Debtor other than New Uno shall remain as they

were as of the Petition Date.  With respect to officers of the Reorganized Debtors, Section 5.3(d)

of the Plan provides that the officers of each Reorganized Debtor, on the Effective Date, shall

remain as they were as of the Petition Date.  All existing executive officers of URHC are

expected to serve in their existing capacities as officers of New Uno.

> L.  <u>Additional Plan Provisions (11 U.S.C. § 1123(b))</u>.  The Plan's additional

provisions are appropriate and consistent with the applicable provisions of the Bankruptcy Code,

thereby satisfying section 1123(b) of the Bankruptcy Code.  The failure to specifically address a

provision of the Bankruptcy Code in this Order shall not diminish or impair the effectiveness of

this Order.

> 1.  <u>Impairment/Unimpairment of Classes of Claims and Interests (11

U.S.C. § 1123(b)(1))</u>.  Articles III and IV of the Plan list Classes 1, 2, 3, 7, and 8 as Unimpaired

and Classes 4, 5, 6, and 9 as Impaired and are therefore consistent with section 1123(b)(1) of the

Bankruptcy Code.

> 2.  <u>Assumption and Rejection of Executory Contracts and Unexpired

Leases (11 U.S.C. § 1123(b)(2))</u>.  In accordance with section 1123(b)(2) of the Plan, Section 8.1

of the Plan provides for the assumption of all of the executory contracts and unexpired leases of

the Debtors as of the Effective Date, except for any executory contract or unexpired lease (a) that

has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Effective

Date and for which the motion was filed prior to the Confirmation Date; (b) that previously expired or terminated pursuant to its own terms; (c) as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date; or (d) that is specifically designated as a contract or lease to be rejected on the Rejection Schedule, as contemplated by sections 365(a) and 1123(b)(2) of the Bankruptcy Code. Schedule 3 of the Plan Supplement (the Rejection Schedule) identifies executory contracts and unexpired leases to be rejected by the Debtors pursuant to the Plan, and Schedule 4 of the Plan Supplement (the Assumption Schedule) identifies executory contracts and unexpired leases to be specifically assumed by the Debtors pursuant to the Plan. Accordingly, the Plan satisfies the requirements of section 1123(b)(2) of the Bankruptcy Code. Moreover, the Debtors have satisfied the provisions of section 365 of the Bankruptcy Code with respect to the assumption and rejection of executory contracts and unexpired leases pursuant to the Plan.

3.      Settlement or Retention of Claims or Interests (11 U.S.C. § 1123(b)(3)). Section 10.7 of the Plan provides that, except with respect to Released Actions, nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or the relinquishment of any rights or Causes of Action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of their respective Estates under any provision of the Bankruptcy Code or any applicable nonbankruptcy law. Except with respect to Released Actions, the Plan also provides, in Section 10.7, that nothing contained in the Plan or the Confirmation Order shall be deemed to be a waiver, release, or relinquishment of any Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date, against or with respect to any Claim left Unimpaired by the Plan. The Plan also provides for the Claims Purchase, a settlement

of potential claims that the Creditors' Committee may be able to assert on behalf of the Debtors' Estates against the Senior Secured Noteholders. Such a settlement is contemplated by section 1123(b)(3) of the Bankruptcy Code.

4. Cure of Defaults (11 U.S.C. § 1123(d)). Section 8.2 of the Plan provides for the satisfaction of default claims associated with each executory contract and unexpired lease to be assumed pursuant to the Plan in accordance with section 365(b)(1) of the Bankruptcy Code. The Cure Amounts identified in the Assumption Schedule represent the amount, if any, that the Debtors propose to pay in full and complete satisfaction of such default claims. The Cure Amounts reflect a reasonable and good faith exercise of the Debtors' business judgment. Any disputed Cure Amounts will be determined in accordance with the underlying agreements and applicable bankruptcy and nonbankruptcy law. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code. There have been 6 formal objections to proposed Cure Amounts filed as well as various informal objections. The Debtors have resolved all known formal and informal objections to the proposed Cure Amounts or such objections will be addressed before the Court at a subsequent date.

M. Plan Proponents' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)). The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, thereby satisfying the requirements of section 1129(a)(2) of the Bankruptcy Code. Specifically:

1. The Debtors are proper debtors under section 109 of the Bankruptcy Code.

2. The Plan Proponents have complied with all applicable provisions of the Bankruptcy Code, including, but not limited to, the provisions of sections 1125 and 1126

regarding disclosure and plan solicitation, except as otherwise provided or permitted by orders of the Court.

   3. The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and related documents and notices and in soliciting and tabulating votes to accept or reject the Plan.

   N. <u>Plan Proposed in Good Faith and Not By Any Means Forbidden by Law (11 U.S.C. § 1129(a)(3))</u>. The Debtors and the Majority Noteholder Group, together, constitute the Plan Proponents.  The Plan Proponents have proposed and negotiated the Plan (including, without limitation, the Plan Supplement and any other documents necessary to effectuate the Plan) in good faith and not by any means forbidden by law, thereby complying with section 1129(a)(3) of the Bankruptcy Code.  The Plan Proponents' good faith is evident from the Klein Affidavit and the record of these Chapter 11 Cases, including the record of the hearing to approve the Disclosure Statement and the record of the Confirmation Hearing.  Based on the evidence proffered at the Confirmation Hearing, the Court finds and concludes that the Plan has been proposed with the legitimate and honest purpose of maximizing the return available to creditors.  Consistent with the overriding purpose of chapter 11 of the Bankruptcy Code, the Plan is designed to allow the Debtors to satisfy their obligations to the greatest extent possible.  Moreover, the sufficiency of disclosure and the arm's-length negotiations among the Plan Proponents, the Creditors' Committee, the Senior Secured Notes Indenture Trustee, Centre Partners, the Prepetition Lenders, the Prepetition Administrative Agent, the DIP Lenders, and the DIP Agent leading to the Plan's formulation all provide independent evidence of the Plan Proponents' good faith in proposing the Plan in compliance with section 1129(a)(3) of the

Bankruptcy Code and in reaching the Committee Settlement.  The Creditors' Committee and the Majority Noteholder Group support confirmation of the Plan.  The Plan provides for a distribution of the value of the Debtors' Estates to their creditors in accordance with the priorities and provisions of the Bankruptcy Code.  Further, the Plan's classification of Claims and Interests, indemnification, exculpation, release, and injunction provisions have been negotiated in good faith and at arms' length and are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1129, and 1142 of the Bankruptcy Code, and are each necessary to the Debtors' successful emergence from chapter 11.  Accordingly, the Plan and the related documents have been filed in good faith and the Plan Proponents have satisfied their obligations under section 1129(a)(3) of the Bankruptcy Code.

O.      Payments Made by the Debtors for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).  Section 2.3 of the Plan requires that all Entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 327, 328, 330, 331, and 503 or 1103 of the Bankruptcy Code must file their applications for allowance of such compensation or reimbursement no later than forty-five (45) days after the Effective Date or such other date as may be fixed by the Court.  Pursuant to the interim application procedures established in these Chapter 11 Cases and section 331 of the Bankruptcy Code, any and all payments made or to be made by the Debtors for services or costs and expenses in or in connection with the Chapter 11 Cases, or in connection with the Plan and incident to the Chapter 11 Cases, have been approved by, or are subject to the approval of, the Court as reasonable under section 330 of the Bankruptcy Code.  Therefore, the requirements of section 1129(a)(4) of the Bankruptcy Code are satisfied.

P.    Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).  The Plan

Proponents have complied with section 1129(a)(5) of the Bankruptcy Code.  As set forth in

Section 5.3(c) of the Plan, the New Board will be comprised of seven (7) directors, including

Frank Guidara (so long as he remains the chief executive officer of New Uno), four (4) directors

selected by Twin Haven, one (1) director selected by Coliseum, and one (1) director selected by

Newport.  The Plan Proponents filed with the Court, as part of the Plan Supplement, a

preliminary list of directors of New Uno, and then filed a supplemental list disclosing all

proposed members of the New Board as of the Effective Date.  The boards of directors of each

Reorganized Debtor other than New Uno shall remain as they were as of the Petition Date.  With

respect to officers of the Reorganized Debtors, Section 5.3(d) of the Plan provides that the

officers of each Reorganized Debtor, as of the Effective Date, shall remain as they were as of the

Petition Date.  All existing executive officers of URHC are expected to serve in their existing

capacities as officers of New Uno.  Such disclosure complies with section 1129(a)(5)(A)(i) of the

Bankruptcy Code, and the appointment to, or continuance in, such office of each such individual

is consistent with the interests of the holders of Claims and Interests, the Reorganized Debtors,

and public policy.  Pursuant to Section 5.11 of the Plan, as of the Effective Date, New Uno shall

establish the Management Incentive Plan, which shall provide for up to 10% of the New

Common Stock (on a fully diluted basis) to be available for issuance to the officers and key

employees of the Reorganized Debtors and its affiliates.  The Management Incentive Plan,

included as Schedule 11 in the Plan Supplement, describes the nature of compensation that will

be made available to officers and other employees of the Reorganized Debtors, including

insiders, if any, thereby satisfying the requirements of section 1129(a)(5) of the Bankruptcy

Code.

Q.     Plan Does Not Contain Rate Changes (11 U.S.C. § 1129(a)(6)).  Section

1129(a)(6) of the Bankruptcy Code is inapplicable to the Debtors, whose rates are not subject to

the jurisdiction of any governmental regulatory agency.

R.     Best Interests of Creditors and Interest Holders (11 U.S.C. § 1129(a)(7)).

Under the Plan, Classes 1, 2, 3, 7, and 8 are Unimpaired and deemed to accept the Plan; the best

interests test, therefore, is inapplicable to such Classes.  The best interests test is applicable,

however, to (a) holders of claims that voted to reject the Plan in Classes 4 and 5 and (b) Classes

6 and 9, which will not receive or retain any property under the Plan and therefore are deemed to

have rejected the Plan.  There have been no objections interposed that argue that the Plan

Proponents have failed to meet the best interests test.  The Debtors' liquidation analysis

contained in Exhibit C to the Disclosure Statement (the **"Liquidation Analysis"**) (a) is accurate

as of the time it was prepared and subsequent developments have not rendered them inaccurate

in any material respect; (b) is based upon reasonable and sound assumptions; and (c) provides a

reasonable estimate of the liquidation values upon conversion to a case under chapter 7 of the

Bankruptcy Code.  As demonstrated by the Klein Affidavit and the Liquidation Analysis, each

holder of an Impaired Claim against or Interest in the Debtors either has accepted the Plan or will

receive or retain under the Plan, on account of such Claim or Interest, property of a value, as of

the Effective Date, that is not less than the amount that such holder would receive or retain if the

Debtors were liquidated under chapter 7 of the Bankruptcy Code.  Based on the testimony and

documentary evidence presented at the Confirmation Hearing, the Court finds that the holders of

Claims against and Interests in all Classes will receive at least as much under the Plan as they

would under a chapter 7 liquidation.  No election has been made under 11 U.S.C § 1111(b), and

therefore 11 U.S.C. § 1129(a)(7)(B) is inapplicable in the Chapter 11 Cases.  As set forth in the

Klein Affidavit, the best interests analysis is unaffected by the substantive consolidation of the Debtors' Estates. Accordingly, the Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code.

S.  Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).

1.  Classes 1, 2, 3, 7, and 8 are Unimpaired by the Plan and, accordingly, holders of Claims in these Classes, if any, are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. As to these Classes, section 1129(a)(8) of the Bankruptcy Code has been satisfied.

2.  Classes 4 and 5 are impaired by the Plan. At least two-thirds in amount and more than one-half in number of the Claims held by creditors in Classes 4 and 5 have voted to accept the Plan, as established by the Vote Certification, in accordance with section 1126(c) of the Bankruptcy Code. As to these Classes, section 1129(a)(8) of the Bankruptcy Code has been satisfied.

3.  Classes 6 and 9 are Impaired by the Plan. The holders of the Claims or Interests in these Classes are not entitled to receive or retain any property under the Plan on account of their Claims or Interests and thus are deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Although the requirements of section 1129(a)(8) have not been satisfied with respect to Classes 6 and 9, the Plan is confirmable because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to such Classes.

T.  Treatment of Administrative Expense Claims, DIP Financing Claims, Professional Compensation and Reimbursement Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Tax Claims, and Other Secured Claims (11 U.S.C. § 1129(a)(9)). The treatment of Administrative Expense Claims, DIP Financing Claims, Professional Compensation

and Reimbursement Claims, Priority Tax Claims, Priority Non-Tax Claims, Secured Tax Claims, and Other Secured Claims set forth in Sections 2.1, 2.2, 2.3, 2.4, 4.1, 4.2, and 4.3, respectively, of the Plan satisfies the requirements of sections 1129(a)(9)(A), (B), (C), and (D) of the Bankruptcy Code.

U.      Acceptance By At Least One Impaired Class (11 U.S.C. § 1129(a)(10)). Class 4 (Senior Secured Notes Claims) and Class 5 (General Unsecured Claims), each of which is Impaired pursuant to the Plan and entitled to vote, voted overwhelmingly to accept the Plan by the requisite majorities, determined without including any acceptance of the Plan by any insider, in accordance with section 1126 of the Bankruptcy Code. Specifically, as set forth in the Vote Certification, Class 4 voted 100% in number and 100% in total dollar amount to accept the Plan, and Class 5 voted 92.89% in number and 99.95% in total dollar amount to accept the Plan. Classes 4 and 5 thereby qualify as Impaired accepting Classes, thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

V.      Feasibility (11 U.S.C. § 1129(a)(11)). As demonstrated by the Klein Affidavit, together with any additional evidence proffered or adduced at the Confirmation Hearing, the information provided in the Disclosure Statement (a) is persuasive and credible, (b) has not been controverted by other evidence or validly challenged in any of the Objections or at the Confirmation Hearing, and (c) establishes that confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the Reorganized Debtors because there is a reasonable likelihood that the Reorganized Debtors will meet their financial obligations under the Plan in the ordinary course of business and be able to satisfy ongoing working capital requirements. Therefore, the feasibility standard of section 1129(a)(11) of the Bankruptcy Code is satisfied.

W. <u>Payment of Fees (11 U.S.C. § 1129(a)(12))</u>. Section 13.4 of the Plan provides that all fees payable under section 1930 of title 28 of the United States Code shall be paid as and when due or otherwise pursuant to an agreement between the Reorganized Debtors and the United States Department of Justice, Office of the United States Trustee, until such time as a Chapter 11 Case for a Debtor is closed in accordance with the provisions of Section 13.17 of the Plan. Therefore, the requirements of section 1129(a)(12) of the Bankruptcy Code are satisfied.

X. <u>Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13))</u>. The Debtors do not believe that there are any existing retiree benefits that require funding by the Reorganized Debtors and are therefore not seeking to use either section 1114(e)(1)(B) or section 1114(g) to modify any retiree benefits protected by section 1114 of the Bankruptcy Code. Therefore, section 1129(a)(13) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Y. <u>No Domestic Support Obligations (11 U.S.C. § 1129(a)(14))</u>. The Debtors are not required by a judicial or administrative order, or by statute, to pay any domestic support obligations. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

Z. <u>Debtors Are Not Individuals (11 U.S.C. § 1129(a)(15))</u>. The Debtors are not individuals and, accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

AA. <u>No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))</u>. The Debtors are moneyed, business, or commercial corporations or trusts, as the case may be, and, accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

BB.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).  The

Plan Proponents have requested that the Court confirm the Plan notwithstanding that the

Subordinated Claims, if any, in Class 6 and the Interests in Class 9 (collectively, the **"Rejecting**

**Classes"**) were deemed to reject the Plan.  The Plan Proponents have satisfied the requirements

of sections 1129(b)(1) and (b)(2) of the Bankruptcy Code with respect to the Rejecting Classes.

Based on the evidence proffered, adduced, and/or presented at the Confirmation Hearing and in

the Klein Affidavit, the Plan does not discriminate unfairly and is fair and equitable with respect

to the Rejecting Classes, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code,

because there is no holder of any Claim or Interest in the Debtors junior to the Rejecting Classes

that is receiving or retaining any property under the Plan on account of such junior Claim or

Interest.  Pursuant to the valuation analyses set forth in the Disclosure Statement, as supported by

the Klein Affidavit, the enterprise value of the Debtors is insufficient to support a distribution to

holders of General Unsecured Claims and Interests under absolute priority principles.  Thus, the

Plan may be confirmed notwithstanding the deemed rejection by the Rejecting Classes.  Upon

confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the

members of the Rejecting Classes.  Under the Plan, General Unsecured Claims against the

Debtors, which are classified in Class 5, will not be paid in full.  Holders of Interests in Class 9

are afforded the lowest priority in distribution and will receive no distribution under the Plan.

There are no creditors in Classes junior to Class 9 and, as a result, there is no junior Class that

will receive or retain any property under the Plan.  Accordingly, the Plan satisfies the absolute

priority rule of section 1129(b)(2)(C) of the Bankruptcy Code with respect to Class 9 and is "fair

and equitable" in all respects.

CC.     Only One Plan (11 U.S.C. § 1129(c)).  The Plan is the only plan filed in these Chapter 11 Cases and, accordingly, section 1129(c) of the Bankruptcy Code is satisfied.

DD.     Principal Purpose of the Plan (11 U.S.C. § 1129(d)).  The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act of 1933, thereby satisfying the requirements of section 1129(d) of the Bankruptcy Code.

EE.     Not Small Business Cases (11 U.S.C. § 1129(e)).  None of the Chapter 11 Cases are small business cases, as that term is defined in the Bankruptcy Code, and, accordingly, section 1129(e) of the Bankruptcy Code is inapplicable.

FF.     Good Faith Solicitation (11 U.S.C. § 1125(e)).  Based on the record before the Court in these Chapter 11 Cases and the Vote Certification, it appears that the Plan Proponents have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including, without limitation, sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation.

GG.     Resolution of Objections.  All parties have had a full and fair opportunity to litigate all issues raised by Objections, or which might have been raised, and the Objections have been fully and fairly litigated.  As presented at the Confirmation Hearing and as provided herein, the consensual resolutions of certain Objections, responses, statements, and comments in opposition to the Plan satisfy all applicable requirements of the Bankruptcy Code and the Bankruptcy Rules and are in the best interests of the Debtors and are hereby approved.

HH.    <u>Satisfaction of Confirmation Requirements</u>.  Based upon the foregoing, the Plan satisfies the requirements for confirmation set forth in section 1129 of the Bankruptcy Code.

## Implementation and Consummation of the Plan

II.    <u>Implementation</u>.  All documents necessary to implement the Plan and all other relevant and necessary documents have been negotiated in good faith and at arms' length and shall, upon execution of the documents and upon the occurrence of the Effective Date, constitute legal, valid, binding, enforceable, and authorized obligations of the respective parties thereto and will be enforceable in accordance with their terms  Pursuant to section 1142(a) of the Bankruptcy Code, the Plan Documents will apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

JJ.    <u>Good Faith</u>.  The Plan Proponents and each of their respective officers, directors, employees, attorneys, advisors, insurers, investment bankers, consultants, managers, members, partners, agents, accountants, and other professionals, and their predecessors, successors, assigns, present and former affiliates (whether by operation of law or otherwise), and equity holders, in each case, in their respective capacities as such, as applicable, (i) have acted in good faith in negotiating, formulating, and proposing, where applicable, the Plan and agreements, compromises, settlements, transactions, and transfers contemplated thereby, and (ii) will be acting in good faith in proceeding to (a) consummate the Plan and the agreements, compromises, settlements, transactions, transfers, and documentation contemplated by the Plan Documents, including, but not limited to, the Claims Purchase and (ii) take any actions authorized and directed or contemplated by this Order.

KK.     Committee Settlement.  The Committee Settlement is above the lowest point in the range of reasonableness and satisfies the standards for approval under Bankruptcy Rule 9019 as set forth in *Protective Comm. for Indep. Stockholders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414 (1968).

LL.     Exit Financing.  The liquidity provided by the $30 million New First Lien Facility and the issuance of the New Second Lien Notes (collectively the "**Exit Financing**") is necessary to the consummation of the Plan and the operation of the Reorganized Debtors.  The terms and conditions of the Exit Financing described in the Plan Supplement and in the Klein Affidavit are fair and reasonable under the circumstances.  The execution, delivery, or performance by the Debtors or the Reorganized Debtors, as the case may be, of any documents in connection with the Exit Financing (including, but not limited to, the Escrow Agreement referenced in Section 5.5(f) of the Plan), and compliance by the Debtors or the Reorganized Debtors, as the case may be, with the terms thereof is authorized by, and will not conflict with, the terms of the Plan or this Order.  The financial accommodations to be extended pursuant to the Exit Financing documents are being extended in good faith, for legitimate business purposes, are reasonable, and shall not be subject to avoidance or recharacterization for any purposes whatsoever.  Moreover, the Exit Financing has been negotiated in good faith and at arms' length and each party thereto may rely on the provisions of this Order in closing the Exit Financing.

MM.     Securities Exempt from Registration.  The issuance of the New Common Stock and the New Second Lien Notes is or was in exchange for Claims against the Debtors, or principally in such exchange and partly for Cash or property within the meaning of section 1145(a)(1) of the Bankruptcy Code.

NN.     <u>Substantive Consolidation</u>.  Based on, among other things, the Disclosure Statement, the Klein Affidavit, and the record of the Confirmation Hearing, no class of creditors is disadvantaged in any manner by the substantive consolidation of the Debtors for Plan purposes only.  Having separate Classes for each of the 153 separate Debtors would be burdensome and would not provide any benefits to any party in interest.  Classes 1, 2, 3, 7, and 8 are Unimpaired under the Plan and will therefore not be adversely affected by substantive consolidation.  As set forth in the Klein Affidavit, holders of Class 4 Senior Secured Notes Claims hold guarantees from all of the Debtors and hold security interests in substantially all of the assets of the Debtors. The Senior Secured Noteholders have elected to exchange the Senior Secured Notes for equity of the Reorganized Debtors having a value substantially in excess of the liquidation value of their collateral and therefore are not prejudiced by substantive consolidation.  Also as set forth in the Klein Affidavit, holders of Class 5 General Unsecured Claims are not prejudiced by substantive consolidation because even if substantive consolidation was not effected, there would be no unencumbered proceeds of assets at any of the Debtors available for distribution to General Unsecured Creditors.  Likewise, holders of Claims and Interests in Classes 6 and 9 would not be entitled to any distribution of property even if the Plan was not predicated on substantive consolidation.

OO.     <u>Releases, Exculpation, and Injunction</u>.  The Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code and sections 105, 524, and 1141 of the Bankruptcy Code to approve the releases of the Released Parties, the exculpation, and the injunction set forth in Article X of the Plan.  Section 105(a) of the Bankruptcy Code permits issuance of the injunction and approval of the limited releases set forth in Article X of the Plan if, as has been established here based upon the record in the Chapter 11 Cases, the Klein

Affidavit, and the evidence proffered at the Confirmation Hearing, such provisions (i) were integral to the agreement among the various parties in interest and are essential to the implementation of the Plan, as provided in section 1123 of the Bankruptcy Code, (ii) confer substantial benefits on the Debtors' estates and creditors by avoiding the cost, expense, and uncertainty of litigation over various claims asserted by parties in interest and by providing for a settlement of claims that results in a cash recovery to General Unsecured Creditors upon an election to sell one's Claim that would not otherwise be available in the absence of a global settlement and release, (iii) are fair, equitable, and reasonable, and (iv) are in the best interests of the Debtors, their Estates, and parties in interest.  Each of the Released Parties made a material contribution to the Chapter 11 Cases by foregoing certain rights, or by negotiating, implementing, and in some cases, funding, the Plan.  Creditors in all of the voting Classes have overwhelmingly supported the Plan, the releases have enabled diverse constituencies to reach a consensus that increases value, and no objections relating to the release have been raised after clear notice to affected parties.  Further, the exculpation provision in the Plan does not relieve any party of liability for an act or omission to the extent such act or omission is determined by a Final Order to have constituted gross negligence or willful misconduct, including, without limitation, fraud and criminal misconduct.  Based upon the record of these Chapter 11 Cases and the evidence proffered, adduced, and/or presented at the Confirmation Hearing, this Court finds that the releases of the Released Parties, the exculpation, and the injunction set forth in Article X of the Plan are consistent with the Bankruptcy Code and applicable law.

PP.     <u>Compromise and Settlement</u>.  Pursuant to Bankruptcy Rule 9019, in consideration for the benefits provided under the Plan, the provisions of the Plan, including, without limitation, the Claims Purchase, shall constitute a good faith compromise and settlement

of all Claims or controversies resolved pursuant to the Plan. All Plan distributions made to creditors holding Allowed Claims in any Class and all payments made to General Unsecured Creditors in connection with the Claims Purchase are intended to be and shall be final.

## ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:

1. Confirmation. All requirements for confirmation of the Plan have been satisfied. The Plan is CONFIRMED in its entirety pursuant to section 1129 of the Bankruptcy Code. The terms of the Plan, the Plan Supplement, and any other documents filed in connection with the Plan and/or executed or to be executed in connection with the transactions contemplated by the Plan, and all amendments and modifications thereof, are expressly incorporated into, and form an integral part of, this Order. A copy of the Plan in the form confirmed (without the Plan Supplement) is attached as Exhibit A to this Order.

2. Objections. All Objections that have not been withdrawn or resolved prior to the entry of this Order are overruled in all respects for the reasons set forth in the record of the Confirmation Hearing, which record is incorporated herein, and all withdrawn objections, if any, are deemed withdrawn with prejudice.

3. Omission of Reference to Particular Plan Provisions. The failure to specifically describe or include any particular provision of the Plan in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the Plan be approved and confirmed in its entirety.

4. Implementation. The Debtors and the Reorganized Debtors are authorized and directed to take all actions necessary, appropriate, or desirable to enter into, implement, and

consummate the contracts, instruments, releases, leases, agreements, or other documents created

or executed in connection with the Plan Documents. Without further order or authorization of

this Court, the Debtors, the Reorganized Debtors, and their successors are authorized and

empowered to make all modifications to all Plan Documents that are consistent with the Plan.

Execution versions of the Plan Documents, where applicable, shall constitute legal, valid,

binding, and authorized obligations of the respective parties thereto, enforceable in accordance

with their terms and, to the extent applicable, shall create, as of the Effective Date, all Liens and

security interests purported to be created thereby. In anticipation of the Effective Date, the

Debtors are hereby authorized, without further order of the Court and prior to the Effective Date,

to take actions consistent with or facilitative of the Restructuring Transactions and the Exit

Financing, and are authorized to perform all obligations under the Exit Financing documents

contained in the Plan Supplement.

    5.  <u>Modifications or Alterations to Plan</u>. To the extent the Plan has been

modified, supplemented, or altered subsequent to solicitation, such modifications, supplements,

and alterations constitute technical changes and/or changes with respect to particular Claims by

agreement with the holders of such Claims or Interests, and do not materially adversely affect or

change the treatment of any Claims or Interests. Accordingly, pursuant to Bankruptcy Rule

3019, such modifications or alterations, if any, do not require additional disclosure under section

1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy

Code, nor do they require that holders of Claims or Interests be afforded an opportunity to

change previously cast acceptances or rejections of the Plan.

    6.  <u>Plan Classification Controlling</u>. The classifications of Claims and

Interests for purposes of the distributions to be made pursuant to the Plan shall be governed

solely by the terms of the Plan. The classification set forth on the Ballots tendered or returned by the Debtors' creditors in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of such Claims and Interests under the Plan for distribution purposes; and (c) shall not be binding on the Debtors, the Reorganized Debtors, creditors, or interest holders for purposes other than voting on the Plan. All rights of the Plan Proponents to seek to reclassify Claims are expressly reserved.

7. <u>Binding Effect</u>. Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the provisions of the Plan shall bind (i) any holder of a Claim against, or Interest in, each Debtor and such holder's respective successors and assigns, whether or not the Claim or Interest is impaired under the Plan, whether or not such holder has accepted the Plan, and whether or not such holder is entitled to a distribution under the Plan, (ii) any and all non-Debtor parties to assumed executory contracts and unexpired leases with any of the Debtors, (iii) any parties that have objected to confirmation of the Plan, (iv) every other party in interest in the Chapter 11 Cases, (v) all parties receiving property under the Plan and the other Plan Documents (including, but not limited to, in connection with the Committee Settlement), and their respective heirs, executors, administrators, successors, or assigns.

8. <u>Substantive Consolidation for Plan Purposes Only</u>. Entry of this Order shall constitute the approval, pursuant to section 105(a) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors' Estates for voting, confirmation, and distribution purposes only as contemplated by Sections 3.1 and 5.1 of the Plan. On the Effective Date, all of the Debtors and their Estates shall, for Plan purposes only, be deemed merged and (i) all assets and liabilities of the Debtors shall be treated as though they

were merged, (ii) all guarantees of any Debtor of the payment, performance, or collection of obligations of any other Debtor shall be eliminated and canceled, (iii) all joint obligations of two or more Debtors, and all multiple Claims against such entities on account of such joint obligations, shall be considered as a single Claim against the substantively consolidated Debtors, and (iv) any Claim filed in the Chapter 11 Case of any Debtor shall be deemed filed against the substantively consolidated Debtors and a single obligation of the substantively consolidated Debtors on and after the Effective Date.

9.     <u>Late-Filed Ballots</u>.  Ballots filed after the Voting Deadline but prior to the Confirmation Hearing shall be deemed timely filed solely for purposes of participation in the Claims Purchase.

10.     <u>Distributions</u>.  All distributions pursuant to the Plan shall be made in accordance with Article VI of the Plan and such methods of distribution are approved.

11.     <u>Treatment Is in Full Satisfaction</u>. All Plan distributions made to creditors holding Allowed Claims in any Class and all payments made to creditors holding General Unsecured Claims in connection with the Claims Purchase are intended to be and shall be in full and final satisfaction of the Debtors' obligations under the Plan.  The classifications of Claims and Interests for purposes of the distributions to be made under the Plan shall be governed solely by the terms of the Plan.  The classifications set forth on the Ballots tendered to or returned by the Debtors' creditors and interest holders in connection with voting on the Plan (a) were set forth on the Ballots solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent and in no event shall be deemed to modify or otherwise affect the actual classification of such Claims and Interests under the Plan for distribution purposes; and (c) shall

not be binding on the Debtors, the Reorganized Debtors, or any holder of a claim against the Debtors for purposes other than voting on the Plan.

12.     Resolution of Claims.  The provisions of Article VII of the Plan, including, without limitation, the provisions governing procedures for resolving Disputed Claims, are fair and reasonable and are approved.

13.     Assumption and Rejection of Executory Contracts and Unexpired Leases. Entry of this Order shall, subject to and upon the occurrence of the Effective Date, constitute (a) the authorization and approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases (including any related guarantees) assumed pursuant to Section 8.1 of the Plan, (b) the extension of time within which the Debtors may assume, assume and assign, or reject the unexpired leases specified in Section 8.1 of the Plan through the date of entry of an order approving the assumption, assumption and assignment, or rejection of such unexpired leases, and (c) the authorization and approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the rejection of the executory contracts and unexpired leases rejected pursuant to Section 8.1 of the Plan.

14.     Cure Amounts.  Except as may otherwise be agreed to by the parties, the Cure Amounts listed on the Assumption Schedule shall be satisfied, in accordance with section 365(b) of the Bankruptcy Code, by the Debtors or the Reorganized Uno Companies upon the assumption thereof or as soon as practicable thereafter.  Unless objections to such Cure Amounts were timely asserted prior to the Confirmation Hearing, the non-Debtor parties to each executory contract or unexpired lease to be assumed pursuant to the Plan are hereby forever barred and permanently enjoined from asserting against the Debtors or the Reorganized Debtors any defaults which must be cured other than the Cure Amounts, and the Debtors and Reorganized

Debtors shall be deemed to have satisfied each element required for assumption under sections 365 and 1123(b)(2) of the Bankruptcy Code upon payment of such Cure Amounts, if any.

15. <u>Lease Charges</u>. Notwithstanding any other provision of the Plan, this Order, or any order establishing a Cure Amount, any accrued but unbilled charges not yet due as of the Debtors' filing of the Assumption Schedule which come due under an assumed lease prior to or after the Confirmation Date for charges including, but not limited to, common area maintenance, insurance, and tax reconciliations or year-end adjustments, shall be billed to and paid by (or, in the case of a credit balance, shall be given to) the Reorganized Debtors in compliance with the terms of such assumed and unexpired lease.

16. <u>No Liens on Unexpired Leases</u>. The Exit Financing does not create a Lien, other than at the Debtors' facility in Brockton, Massachusetts, on any unexpired lease of the Debtors or the Reorganized Debtors; *provided*, *however*, that the Liens of the New First Lien Facility lenders and the holders of the New Second Lien Notes may attach to the proceeds of such unexpired leases.

17. <u>Right to Conduct Audits</u>. Notwithstanding any other provision of the Plan or this Order, the Debtors or the Reorganized Debtors shall reserve the right to conduct audits of payments under unexpired leases assumed under the Plan and, notwithstanding any payments made in respect of Cure Amounts or otherwise, if such audit uncovers a discrepancy in favor of the Debtors or the Reorganized Debtors, the Debtors or the Reorganized Debtors shall retain the ability to seek a refund or offset to reflect such discrepancy.

18. <u>Retention of Right to Reject Executory Contracts or Unexpired Leases</u>. If there are any objections filed with respect to executory contracts or unexpired leases that cannot be resolved by the parties, the Debtors or the Reorganized Debtors shall retain their right to

reject any of the executory contracts or unexpired leases, including executory contracts or unexpired leases that are subject to a dispute concerning a Cure Amount.

19.     Resolution of Westchester Fire Insurance Company Objection.  In connection with resolving the informal objection of Westchester Fire Insurance Company (**"Westchester Fire"**), (a) upon confirmation of the Plan, New Uno shall execute, effective as of the Effective Date, a new indemnity agreement in favor of Westchester Fire (in substantially the same form as the current indemnity agreement) in respect of the outstanding bond executed by Westchester Fire in the face amount of $1,100,000 (the **"Bond"**), (b) as consideration for the continuation of the Bond, and in order to secure, among other things, the indemnification obligations of New Uno, the Debtors and the Reorganized Debtors acknowledge and confirm that irrevocable letter of credit No. NZS570184 in the face amount of $1,400,000 (the **"Westchester LOC"**) shall remain in place, and (c) upon the execution and delivery of the indemnity agreement by New Uno, and the payment of costs and expenses incurred by Westchester Fire in these Chapter 11 Cases, including, but not limited to attorneys' fees, in an amount not to exceed $7,500, Westchester Fire will consent to the reduction of the Westchester LOC to $1,100,000.

20.     Inclusiveness.  Unless otherwise specified on the Rejection Schedule or the Assumption Schedule, each executory contract and unexpired lease listed or to be listed therein shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed on such schedules.

21.     Bar Date for Filing Proofs of Claim Relating to Executory Contracts and Unexpired Leases Rejected Pursuant to the Plan.  Claims arising out of the rejection of an executory contract or unexpired lease pursuant to Section 8.1 of Plan must be filed with the Court and served upon the Debtors (or, on and after the Effective Date, the Reorganized Debtors) no later than thirty (30) days after the later to occur of (i) notice of entry of an order approving the rejection of such executory contract or unexpired lease (which order may be this Order), (ii) notice of entry of this Order, and (iii) notice of an amendment to the Rejection Schedule or the Assumption Schedule.  All such Claims not filed within such time will be forever barred from assertion against the Debtors, their Estates, the Reorganized Uno Companies, and their respective property.

22.     No "Change of Control".  The effect of confirmation of the Plan, the results thereof, and the transactions resulting therefrom or any other effect of the Chapter 11 Cases shall not be and are not a "change of control" and shall not trigger any such or similar provision of any of the executory contracts and unexpired leases assumed pursuant to the Plan.

23.     U.S. Foodservice.  (a) Nothing in the Plan or this Order shall be construed as discharging, releasing, or relieving the Debtors or their successors, including the Reorganized Debtors, from any of their obligations under that certain Master Distribution Agreement (**"MDA"**) with U.S. Foodservice, Inc. (**"U.S. Foodservice"**), approved by the Court by order, dated May 11, 2010, including that certain Irrevocable Letter of Credit (the **"Letter of Credit"**) granted to U.S. Foodservice under the MDA, (b) the Letter of Credit shall survive and remain unaffected by this Order or the occurrence of the Effective Date, and (c) notwithstanding anything contained in the Plan or this Confirmation Order, U.S. Foodservice shall retain all of its

rights under the Letter of Credit and shall not be enjoined or precluded from exercising such rights.

24.     <u>Vesting of Assets in the Reorganized Debtors</u>.  Pursuant to Section 10.1 of the Plan, except as otherwise provided in the Plan or any agreement, instrument, or other document incorporated in the Plan, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property in the Debtors' Estates, including Retained Causes of Action, and any property acquired by any of the Debtors pursuant to the Plan shall vest in the Reorganized Debtors free and clear of all Liens, Claims, charges, or other encumbrances (except for Liens, if any, expressly granted pursuant to the Plan).  From and after the Effective Date, the Reorganized Debtors may operate their business and may use, acquire, and dispose of property free of any restrictions of the Bankruptcy Code or the Bankruptcy Rules, subject to the terms and conditions of the Plan.  The vesting does not constitute a voidable transfer under the Bankruptcy Code or applicable nonbankruptcy law.

25.     <u>DIP Financing Claims</u>.  On the Effective Date, and except as otherwise provided for in the Plan, the DIP Financing Agreement, and the DIP Financing Order, (a) all outstanding DIP Financing Claims shall be indefeasibly paid and satisfied, in full, in Cash by the Debtors, (b) all commitments under the DIP Financing Agreement shall terminate, (c) all Letters of Credit outstanding under the DIP Financing Agreement shall either (i) be returned to the issuer undrawn and marked "cancelled" or rolled into the New First Lien Facility, (ii) be cash collateralized in an amount equal to 105% of the face amount of the outstanding letters of credit, or (iii) be collateralized by back-to-back letters of credit, in form and substance and from a financial institution acceptable to such issuer, and (d) all money posted by the Debtors in accordance with the DIP Financing Agreement and the agreements and instruments executed in

connection therewith shall be released to the applicable Reorganized Debtors.  Except as

otherwise provided for in the Plan, the DIP Financing Agreement, and the DIP Financing Order,

upon payment and satisfaction in full of all outstanding DIP Financing Claims, all Liens and

security interests granted to secure such obligations, whether in the Chapter 11 Cases or

otherwise, shall be terminated and shall be of no further force or effect.

26.     Exit Financing.  The Reorganized Debtors' entry into the Exit Financing

and the incurrence of the indebtedness thereunder on the Effective Date (including the payment

of all fees, including the Backstop Commitment Fee) is authorized without the need for any

further corporate action and without any further action by holders of Claims or Interests.  No

party shall have any claims against the New First Lien Facility lenders, the holders of the New

Second Lien Notes, or their professionals based upon any actions taken with respect to the Exit

Financing on or prior to the date of this Order.  The terms and conditions of the Exit Financing

are approved and ratified as being entered into in good faith and being critical to the success and

feasibility of the Plan.  As of the Effective Date, the security interests and Liens granted pursuant

to the Exit Financing shall constitute legal, valid, and duly perfected Liens against the Collateral

(as defined in the Exit Financing documentation) with the priority provided for in the Exit

Financing.  Notwithstanding any provisions in the Plan or this Order to the contrary, from and

after the Effective Date, the choice of law and jurisdiction provisions of the Exit Financing shall

be applied to the Exit Financing.

27.     Exemption from Transfer Taxes.  Pursuant to section 1146(a) of the

Bankruptcy Code, any issuance, transfer, or exchange of notes or equity securities under the

Plan, the creation of any mortgage, deed of trust, or other security interest, the making or

assignment of any lease or sublease, or the making or delivery of any deed or other instrument of

transfer from a Debtor to a Reorganized Debtor or any other Person pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment, and the appropriate state or local governmental officials or agents shall forego the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of such tax or governmental assessment.

28.     <u>Transfers by Debtors</u>.  All transfers of property of the Debtors' estates, including, without limitation, those effectuated in connection with the Restructuring Transactions and those set forth in the Master Restructuring Agreement, shall be free and clear of all Liens, charges, Claims, encumbrances, and other interests, except as expressly provided in the Plan or this Confirmation Order.

29.     <u>Committee Settlement</u>.  The Committee Settlement embodied in the Plan is fair, equitable, and reasonable, meets the standards under Bankruptcy Rule 9019, and is hereby approved.

30.     <u>No Liens on Claims Purchase Funds</u>.  Neither the Exit Financing nor any of the documents evidencing or relating to same shall create a Lien on the Claims Purchase Funds.

31.     <u>Securities Exempt from Registration</u>.  To the maximum extent provided by section 1145 of the Bankruptcy Code and applicable non-bankruptcy law, the issuance under the Plan of the New Common Stock and the New Second Lien Notes will be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration prior to the offering,

issuance, distribution, or sale of securities. The issuance of the New Common Stock and the New Second Lien Notes is or was in exchange for Claims against the Debtors, or principally in such exchange and partly for Cash or property within the meaning of section 1145(a)(1) of the Bankruptcy Code. Pursuant to section 1145(c) of the Bankruptcy Code, the resale of any equity and any other securities issuable pursuant to the Plan shall be exempt from registration under the Securities Act of 1933, as amended, and all rules and regulations promulgated thereunder and any state or local law requiring registration prior to the offering, issuance, distribution, or sale of securities, except for any restrictions set forth in section 1145(b) of the Bankruptcy Code and any restriction contained in the Plan Documents. Furthermore, the issuance of management securities pursuant to the Management Incentive Plan and related employment agreements (if any) shall be exempt from registration pursuant to Section 4(2) of the Securities Act.

32. <u>Extinguishment of Claims and Interests</u>. Except as provided in the Plan, the rights afforded in and the payments and distributions to be made under the Plan shall terminate all Interests and discharge all existing debts and Claims of any kind, nature or description whatsoever against or in the Debtors or any of their assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code. Except as provided in the Plan, upon the Effective Date, all existing Claims against the Debtors and Interests shall be, and shall be deemed to be, discharged and terminated, and all holders of such Claims and Interests shall be precluded and enjoined from asserting against the Reorganized Debtors, their successors or assignees, or any of their assets or properties any other or further Claim or Interest based upon any act or omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, whether or not such holder has filed a proof of claim or proof of interest and whether or not the facts or legal bases therefor were known or existed prior to the Effective Date.

33.     Discharge of Debtors.  Upon the Effective Date, in consideration of the distributions or payments to be made under the Plan and except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Interest and any affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtors, to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Deductible Claims, Interests, rights, or liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Interest in the Debtors.

34.     Injunction on Claims.  Except as otherwise expressly provided in the Plan, all Entities who have held, hold, or may hold Claims against or Interests in the Debtors are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Interest against any of the Reorganized Debtors, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against any Reorganized Debtor with respect to such Claim or Interest, (c) creating, perfecting, or enforcing any encumbrance of any kind against any Reorganized Debtor or against the property or interests in property of any Reorganized Debtor with respect to such Claim or Interest, (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to any Reorganized Debtor or against the property or interests in property of any Reorganized Debtor with respect to such Claim or Interest, (e) commencing or continuing in any manner any action or other proceeding of any kind on any Deductible Claim against any of the Reorganized Debtors or their insurers, and (f) pursuing any Claim released pursuant to the Plan.

35.     <u>Terms of Existing Injunctions or Stays</u>.  All injunctions or stays arising

under or entered during the Chapter 11 Cases under section 105 or 362 of the Bankruptcy Code,

or otherwise, that are in existence on the Confirmation Date shall remain in full force and effect

until the Effective Date, *provided*, *however*, that no such injunction or stay shall preclude

enforcement of parties' rights under the Plan and the related documents.

36.     <u>Exculpation</u>.  None of the Released Parties shall have or incur any liability

for any Claim, cause of action, or other assertion of liability for any act taken or omitted to be

taken in connection with, or arising out of, the Chapter 11 Cases, the formulation, dissemination,

confirmation, consummation, or administration of the Plan, property to be distributed under the

Plan, the Claims Purchase, or any other act or omission in connection with the Chapter 11 Cases,

the Plan, the Disclosure Statement, or any contract, instrument, document, or other agreement

related thereto; *provided*, *however*, that the foregoing shall not affect the liability of any Entity

that otherwise would result from any such act or omission to the extent such act or omission is

determined by a Final Order to have constituted willful misconduct or gross negligence.

37.     <u>Releases by the Debtors</u>.  Effective as of the Confirmation Date, but

subject to the occurrence of the Effective Date, to the extent permitted by applicable law, for

good and valuable consideration, the Debtors and the Reorganized Debtors shall and shall be

deemed to completely and forever release, waive, void, extinguish, and discharge all Released

Actions (other than the rights to enforce the Plan and any right or obligation hereunder, and the

securities, contracts, instruments, releases, indentures, and other agreements delivered hereunder

or contemplated hereby), whether liquidated or unliquidated, fixed or contingent, matured or

unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in

law, equity or otherwise, that are based in whole or in part on any act, omission, transaction,

event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized Debtors, the Chapter 11 Cases, or the Plan that may be asserted by or on behalf of the Debtors or Reorganized Debtors or their respective Estates against the Released Parties; *provided*, *however*, that all Released Actions shall be retained in connection with the defense against any Claim asserted against the Debtors, provided that the retention of such Released Actions shall not result in any affirmative recovery for the Debtors or the Reorganized Debtors nor affect the Claims Purchase; *provided*, *further*, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct, intentional fraud, or criminal conduct of any Entity as determined by a Final Order entered by a court of competent jurisdiction.

        38.    <u>Releases by the Holders of Claims and Interests</u>.  Effective as of the Confirmation Date, but subject to the occurrence of the Effective Date, to the extent permitted by applicable law, for good and valuable consideration, each holder of a Claim that (a) (i) votes to accept the Plan (or is deemed to accept the Plan) and (ii) agrees to provide releases of the Released Parties under the Plan, or (b) otherwise has its Claim purchased pursuant to the Claims Purchase set forth herein, shall be deemed to release, waive, void, extinguish, and discharge, unconditionally and forever, all Released Actions (other than the rights to enforce the Plan, and any right or obligation under the Plan, and the securities, contracts, instruments, releases, indentures, and other agreements or documents delivered hereunder or contemplated hereby), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, then existing or thereafter arising, in law, equity or otherwise, that are based in whole or in part on any act, omission, transaction, event, or other occurrence taking place on or prior to the Effective Date in any way relating to the Debtors, the Reorganized

Debtors, the Chapter 11 Cases, or the Plan, that otherwise may be asserted against the Released Parties; *provided, however*, that the foregoing shall not operate as a waiver of or release from any causes of action arising out of the willful misconduct, intentional fraud, or criminal conduct of any such person or entity as determined by a Final Order entered by a court of competent jurisdiction.

39.     <u>Retention of Jurisdiction</u>.  The Court shall retain, and continue to have, exclusive jurisdiction of all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code, including, without limitation:

(a) to resolve any matters related to the assumption, assumption and assignment, or rejection of any executory contract or unexpired lease to which a Debtor is a party or with respect to which a Debtor may be liable and to hear, determine and, if necessary, liquidate, any Claims arising therefrom, including those matters related to the amendment after the Effective Date of the Plan, to add any executory contracts or unexpired leases to the list of executory contracts and unexpired leases to be rejected;

(b) to enter such orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases, and other agreements or documents created in connection with the Plan;

(c) to determine any and all motions, adversary proceedings, applications, and contested or litigation matters that may be pending on the Effective Date or that, pursuant to the Plan, may be instituted by the Reorganized Uno Companies prior to or after the Effective Date (which jurisdiction shall be non-exclusive as to any non-core matters);

(d) to ensure that distributions to holders of Allowed Claims are accomplished as provided herein;

(e) to hear and determine any timely objections to Claims and Interests, including any objections to the classification of any Claim or Interest, and to allow, disallow, determine, liquidate, classify, estimate, or establish the priority of or secured or unsecured status of any Claim, in whole or in part;

(f) to resolve any Disputed Claims;

(g) to enter and implement such orders as may be appropriate in the event this Order is for any reason stayed, revoked, modified, reversed, or vacated;

(h) to issue such orders in aid of consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(i) to consider any modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, this Order;

(j) to hear and determine all applications for awards of compensation for services rendered and reimbursement of expenses incurred prior to the Effective Date under sections 330, 331, and 503(b) of the Bankruptcy Code and any disputes related to the post-Effective Date fees and out-of-pocket expenses of counsel to the Creditors' Committee incurred in connection with carrying out the provisions of the Plan;

(k) to hear and determine disputes arising in connection with or relating to the Plan or the interpretation, implementation, or enforcement of the Plan or the extent of any Entity's obligations incurred in connection with or released under the Plan;

(l) to issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with the consummation, implementation, or enforcement of the Plan, this Order, or any other order of the Bankruptcy Court;

(m) to determine any other matters that may arise in connection with or are related to the Plan, the Disclosure Statement, this Order, or any other contract, instrument, release, or other agreement or document created in connection with the Plan or the Disclosure Statement;

(n) to recover all assets of the Debtors and property of the Debtors' Estates, wherever located;

(o) to hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of tax under section 505(b) of the Bankruptcy Code);

(p) to determine the scope of any discharge of any Debtor under the Plan or the Bankruptcy Code;

(q) to hear any other matter or for any purpose specified in this Order that is not inconsistent with the Bankruptcy Code; and

(r) to enter a final decree closing the Chapter 11 Cases.

40.     Effectuating Documents and Further Transactions.  On or before the

Effective Date, and without the need for any further order or authority, the Debtors shall file with

the Court or execute, as appropriate, such agreements and other documents as may be necessary

or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The

Reorganized Debtors are authorized to execute, deliver, file, or record such contracts,

instruments, releases, indentures, and other agreements or documents and take such actions as

may be necessary or appropriate to effectuate and further evidence the terms and conditions of

the Plan and any securities issued pursuant to the Plan.

41.     Withholding and Reporting Requirements.  In connection with the

consummation of the Plan and all instruments issued in connection herewith and distributed

hereunder, the Debtors, the Reorganized Uno Companies, or any Disbursing Agent, as the case

may be, shall comply with all withholding and reporting requirements imposed by any federal,

state, local, or foreign taxing authority and all distributions hereunder shall be subject to any

such withholding and reporting requirements.  Notwithstanding the above, each holder of an

Allowed Claim that is to receive a distribution under the Plan shall have the sole and exclusive

responsibility for the satisfaction and payment of any tax obligations imposed by any

governmental unit, including income, withholding and other tax obligations, on account of such

distribution.  Any party issuing any instrument or making any distribution under the Plan has the

right, but not the obligation, to not make a distribution until such holder has made arrangements

satisfactory to such issuing or disbursing party for payment of any such tax obligations.

42.     Payment of Statutory Fees.  All fees payable pursuant to section 1930 of

title 28 of the United States Code shall be paid as and when due or otherwise pursuant to an

agreement between the Reorganized Debtors and the United States Department of Justice, Office

of the United States Trustee, until such time as a Chapter 11 Case for a Debtor is closed in accordance with the provisions of Section 13.17 of the Plan.

43. <u>Dissolution of the Creditors' Committee</u>. On the Effective Date, the Creditors' Committee shall dissolve automatically (except with respect to the resolution of the Professional Compensation and Reimbursement Claims and matters related to the Claims Purchase and General Unsecured Claims, for which counsel to the Creditors' Committee shall be entitled to reasonable fees and out-of-pocket expenses, to be paid in the ordinary course of business and without the necessity for any approval by the Court), and the members thereof shall be released and discharged from all rights, duties, responsibilities, and liabilities arising from, or related to the Chapter 11 Cases and under the Bankruptcy Code.

44. <u>Professional Compensation and Reimbursement</u>. All Entities seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date pursuant to sections 327, 328, 330, 331, and 503 or 1103 of the Bankruptcy Code must file their applications for allowance of such compensation or reimbursement no later than forty-five (45) days after the Effective Date or such other date as may be fixed by the Court. The Reorganized Debtors are authorized to pay compensation for professional services rendered and reimbursement of expenses incurred after the Confirmation Date in the ordinary course and without the need for Court approval.

45. <u>Preservation of Causes of Action / Reservation of Rights</u>. Except with respect to the Released Actions, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver, release, or the relinquishment of any rights of Causes of Action that the Debtors or the Reorganized Debtors may have or which the Reorganized Debtors may choose to assert on behalf of their respective Estates under any provision of the Bankruptcy Code or any

applicable nonbankruptcy law. Except with respect to Released Actions, nothing contained in the Plan or this Confirmation Order shall be deemed to be a waiver, release, or relinquishment of any Cause of Action, right of setoff, or other legal or equitable defense which the Debtors had immediately prior to the Petition Date, against or with respect to any Claim left unimpaired by the Plan. The Reorganized Debtors shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, and other legal or equitable defenses not waived or released under the Claims Purchase or the Plan and which they had immediately prior to the Petition Date fully as if the Chapter 11 Cases had not been commenced.

46. <u>Conditions to Effective Date</u>. The Plan shall not become effective unless and until the conditions set forth in Section 9.2 of the Plan are satisfied or waived pursuant to Section 9.3 of the Plan.

47. <u>Withdrawal of Plan</u>. The Plan Proponents reserve the right to revoke or withdraw the Plan prior to the Effective Date. If the Plan Proponents take such action, the Plan shall be deemed null and void. In such event, nothing contained in the Plan shall be deemed to constitute a waiver or release of any claims by the Debtors or any other Entity or to prejudice in any manner the rights of the Debtors or any other Entity in any further proceedings involving the Debtors.

48. <u>Reversal, Modification, or Vacatur of Order</u>. If any of the provisions of this Order are hereafter reversed, modified, or vacated by a subsequent order of the Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under, or in connection with, the Plan prior to receipt of written notice of such order by the Debtors. Notwithstanding any such reversal, modification, or vacatur of this Order, any such act or obligation incurred or undertaken pursuant to, and in

reliance on, this Order prior to the effective date of such reversal, modification, or vacatur shall be governed in all respects by the provisions of this Order, the Plan, all documents relating to the Plan and any amendments or modifications to any of the foregoing.

49.     Cure Objection Hearing.  A hearing with respect to any remaining Cure Objections shall be held at ____ _.m. on _____, 2010 (prevailing Eastern Time).

50.     Notice of Entry of Confirmation Order.  Pursuant to Bankruptcy Rules 2002(f)(7), 2002(k), and 3020(c), the Reorganized Debtors shall file and serve notice of entry of this Order in substantially the form annexed hereto as Exhibit B (the **"Notice of Entry of Confirmation Order"**) on all creditors and interest holders, the U.S. Trustee, and all other parties in interest entitled to receive notice in these Chapter 11 Cases, by causing the Notice of Entry of Confirmation Order to be delivered to such parties by first-class mail, postage prepaid, within ten (10) Business Days after entry of this Order.  The Notice of Entry of Confirmation Order shall also be posted on the website of the Debtors' Court-appointed voting and tabulation agent, Kurtzman Carson Consultants LLC, at: http://www.kccllc.net/uno.  Such notice is adequate under the particular circumstances and no other or further notice is necessary.

51.     Notice of the Effective Date.  As soon as practicable after the occurrence of the Effective Date, the Reorganized Debtors shall file notice of the occurrence of the Effective Date.

52.     Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

53.     Governing Law.  Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent an exhibit to the Plan or Plan Supplement provides

otherwise (in which case the governing law specified therein shall be applicable to such exhibit), the rights, duties, and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of New York without giving effect to its principles of conflict of laws that would require the application of the law of any other jurisdiction.

54. <u>Conflicts Between Order and Plan</u>. The provisions of the Plan and this Confirmation Order shall be construed in a manner consistent with each other so as to effect the purpose of each; *provided*, *however*, that if there is determined to be any inconsistency between any Plan provision and any provision of this Confirmation Order that cannot be so reconciled, then solely to the extent of such inconsistency, the provisions of this Confirmation Order shall govern and any provision of this Confirmation Order shall be deemed a modification of the Plan and shall control and take precedence. The provisions of this Confirmation Order are integrated with each other and are non-severable and mutually dependent.

55. <u>Final Order</u>. This Order is a Final Order and the period in which an appeal must be filed shall commence upon the entry hereof.

Dated: _____, 2010
      New York, New York

               _____
               UNITED STATES BANKRUPTCY JUDGE

**Exhibit A**

**Plan**

## Exhibit B

**Notice of Entry of Confirmation Order**

# UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x
                                             :

In re                                       :        **Chapter 11**

                                               :

**UNO RESTAURANT HOLDINGS**      :        **Case No. 10-10209 (MG)**

**CORPORATION,** *et al.,*             :

                         **Debtors.**       :        **(Jointly Administered)**

                                               :

-------------------------------------------------------------x

### NOTICE OF ENTRY OF ORDER CONFIRMING SECOND AMENDED JOINT CONSOLIDATED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE FOR UNO RESTAURANT HOLDINGS CORPORATION AND ITS AFFILIATED DEBTORS AND DEBTORS IN POSSESSION

**TO ALL CREDITORS, INTEREST HOLDERS, AND PARTIES IN INTEREST:**

        PLEASE TAKE NOTICE that an order (the **"Confirmation Order"**) confirming the Second Amended Joint Consolidated Plan of Reorganization Under Chapter 11 of the Bankruptcy Code for Uno Restaurant Holdings Corporation and Its Affiliated Debtors and Debtors in Possession (the **"Plan"**) [Docket No. ___] was entered in the above-captioned cases by the Honorable Martin Glenn, United States Bankruptcy Judge, and docketed by the Clerk of the Bankruptcy Court for the Southern District of New York (the **"Bankruptcy Court"**) on July __, 2010.  Unless otherwise defined in this notice, capitalized terms used in this notice shall have the meanings ascribed to them in the Plan and the Confirmation Order.

        PLEASE TAKE FURTHER NOTICE that the Confirmation Order and Plan establish certain deadlines by which holders of Claims must take certain actions.

        PLEASE TAKE FURTHER NOTICE that copies of the Confirmation Order, the Plan, and related documents are available for inspection in the office of the Clerk of the Bankruptcy Court at the Bankruptcy Court, Alexander Hamilton Custom House, One Bowling Green, New York, New York 10004, or can be viewed for free at the Debtors' claims agent's website at http://www.kccllc.net/uno or for a fee on the Court's website at www.nysb.uscourts.gov.  To access documents on the Court's website, you will need a PACER password and login, which can be obtained at http://www.pacer.psc.uscourts.gov.  To obtain a hard copy of the Confirmation Order or the Plan, please contact the Debtors' claims agent, Kurtzman Carson Consultants LLC, at **(877) 770-0502.**

PLEASE TAKE FURTHER NOTICE that the Plan and its provisions are binding on the Debtors, the Reorganized Debtors, any entity acquiring or receiving property or a distribution under the Plan, and any holder of a Claim against or Interest in the Debtors, including all governmental entities, and such holder's successors and assigns, whether or not the Claim or Interest of such holder is impaired under the Plan or whether or not such holder has voted to accept the Plan.

Dated: _____, 2010
      New York, New York

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for the Debtors*
*and Debtors in Possession, Co-Plan Proponent*


AKIN GUMP STRAUSS HAUER & FELD LLP
One Bryant Park
New York, New York 10036
Telephone: (212) 872-1000
Facsimile:  (212) 872-1002

*Attorneys for the Majority*
*Noteholder Group, Co-Plan Proponent*